1    D. Gill Sperlein, CA Bar No. 172887
RANDAZZA LEGAL GROUP, PLLC
2    345 Grove Street, 2nd Floor
San Francisco, CA 94102
3    Telephone: 702-420-2001
Facsimile: 305-437-7662
4    ecf@randazza.com

5    Marc J. Randazza, CA Bar No. 269535
RANDAZZA LEGAL GROUP, PLLC
6    4035 South El Capitan Way
Las Vegas, Nevada 89147
7    Telephone: 702-420-2001
Facsimile: 305-437-7662
8    ecf@randazza.com

9    *Attorneys for Plaintiff,*
*N.Y.*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **N.Y.**, through his guardians David and Leilanie Yu, | Case №.: 4:17-cv-03906-MMC |
| Plaintiff, | **CORRECTED[1] 42 U.S.C. § 1983 COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES** |
| vs. | |
| **SAN RAMON VALLEY UNIFIED SCHOOL DISTRICT; SAN RAMON VALLEY HIGH SCHOOL; RICK SCHMITT** in his personal and official capacities as Superintendent of the San Ramon Valley Unified School District; **DR. JASON REIMANN**, in his personal and official capacities as Director of Education Services of the San Ramon Valley Unified School District; **RUTH STEELE**, in her personal and official capacities as Principal of San Ramon Valley High School; **JAMIE KEITH** in her personal and official capacities as Assistant Principal of San Ramon Valley High School; . . . | **DEMAND FOR JURY TRIAL** |

---

[1]   Plaintiff's first name was inadvertently included in ¶ 54 of the Complaint filed on July 11, 2017 (Dkt. No. 1). Plaintiff files this "corrected" Complaint with his name replaced in this paragraph as "N.Y."

Complaint

| | |
|---|---|
| 1 | **DEARBORN RAMOS** in her personal and official capacities as Assistant ) |
| 2 | Principal of San Ramon Valley High School; **BERNIE PHELAN** in his ) |
| 3 | personal and official capacities as Assistant Principal of San Ramon ) |
| 4 | Valley High School; **JANET WILLFORD**, in her personal and ) |
| 5 | official capacities as Leadership Instructor of San Ramon Valley High ) |
| 6 | School; and **KERRI CHRISTMAN GILBERT** in her personal and official ) |
| 7 | capacities as Resident Substitute Teacher of San Ramon Valley High ) |
| 8 | School. ) |
| 9 | Defendants. ) |

## **INTRODUCTION**

1.     By all accounts N.Y.[2] is an outstanding student.   He has been involved in student government since elementary school and recently served as president of the junior class at San Ramon Valley High School.

2.     In February 2017, N.Y. ran for the student government position that would be the crowning achievement of his high school career – Associated Student Body (ASB) President.  His term would coincide with his senior year.

3.     In connection with his candidacy, N.Y. and four fellow students from SRVHS created a campaign video.  The video was a parody in which N.Y. portrayed a James Bond type character who saves a fellow student captured by kidnappers.

4.     Although the First Amendment affords political speech the highest level of speech protection and the video did not cause a material and substantial disruption to school activities, school administrators punished N.Y. because a few students claimed to be offended by the video.

---

[2]   Pursuant to Fed. R. Civ. P. 5.2(a)(3) Plaintiff identifies the minor Plaintiff by initials only.

RANDAZZA | LEGAL GROUP

5.   Defendants punished N.Y. despite the fact that by their own admission the video did not contain "hate speech."

6.   Also by their own admission, the guideline setting forth what constitutes permissible content for campaign videos is so vague that it allows school administrators unbridled discretion.

7.   N.Y. did not post the video himself and therefore did not have the ability to remove the video from YouTube.  However, immediately after a fellow student told him that a few other students found the video offensive, he asked the student who posted the video to remove it.

8.   The School's punishment was severe.  The school stripped him of the Junior Class President position and denied him the position as Associated Student Body (ASB) President despite the fact that he received the highest number of votes.   The school also expelled him from his student Leadership class. He remained expelled from that class for most of the Spring 2017 Semester.

9.   The school based its punishment on an unacceptably vague election rule prohibiting "inappropriate material."

10.   Not only was the rule vague on its face, but the School applied the rule to N.Y. in a discriminatory manner.

11.   N.Y. brings this action to vindicate his rights.

**JURISDICTION AND VENUE**

12.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1343(4) in that the controversy arises under the United States Constitution and under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 & 2202.  This Court has authority to award attorneys' fees pursuant to 42 U.S.C. § 1988.  Each of the acts, or threats of acts, alleged herein were done by Defendants, or their officers, agents, and employees, under color and pretense of the statutes, ordinances,

regulations, customs, and usages of San Ramon Valley High School (SRVHS) and the San Ramon Valley Unified School District (SRVUSD).

13.    Personal jurisdiction is proper over Defendants because they reside in this District and because the wrongful activity at issue occurred in this District.

14.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391.

**INTRADISTRICT ASSIGNMENT**

15.    This action arose in Contra Costa County in that the San Ramon Valley Unified School District and San Ramon Valley High School are located in Contra Costa County and a substantial part of the events or omissions which give rise to Plaintiff's claims occurred in Contra Costa County.  Accordingly, pursuant to Local Rules of Court 3-2(c) and (d), the Clerk shall assign the action to the Oakland division.

**THE PARTIES**

16.    Plaintiff N.Y., who brings this action by and through his guardians Leilanie Yu and David Yu, is a minor who just completed his junior year at San Ramon Valley High School.  He is a natural person and a citizen of the United States and the State of California, residing in Contra Costa County.

17.    Plaintiff is informed and believes and based thereon alleges that SAN RAMON VALLEY UNIFIED SCHOOL DISTRICT ("SRVUSD") is a public entity in the State of California duly organized under the laws of the State of California, and more specifically the provisions of the California Education Code, to provide, among other things, education to minors in public schools within the District. SRVUSD has at all times mentioned herein has had its principal place of business in Contra Costa County, California.   Defendant SRVUSD is responsible for enacting and enforcing its customs, policies, practices, and laws related to the suspension and student discipline complained about below.

18.     Plaintiff is informed and believes and based thereon alleges that SAN RAMON VALLEY HIGH SCHOOL ("SRVHS") is a comprehensive public high school located in Contra Costa County, California.  It is part of the San Ramon Valley Unified School District.  Defendant SRVHS is responsible for enacting and enforcing its customs, policies, practices, and laws related to the suspension and other discipline complained about below.

19.     Plaintiff is informed and believes and based thereon alleges that Defendant RICK SCHMITT is a natural person and a citizen of the United States and the State of California.  Plaintiff sues Mr. Schmitt in both his personal capacity and in his official capacity as Superintendent of the San Ramon Valley Unified School District.

20.     Plaintiff is informed and believes and based thereon alleges that Defendant DR. JASON REIMANN is a natural person and a citizen of the United States and the State of California.  Plaintiff sues Dr. Reimann in both his personal capacity and in his official capacity as Director of Education Services of the San Ramon Valley Unified School District.

21.     Plaintiff is informed and believes and based thereon alleges that Defendant RUTH STEELE is a natural person and a citizen of the United States and the State of California.  Plaintiff sues Ms. Steele in both her personal capacity and in her official capacity as Principal of San Ramon Valley High School.

22.     Plaintiff is informed and believes and based thereon alleges that Defendant JAMIE KEITH is a natural person and a citizen of the United States and the State of California.  Plaintiff sues Ms. Keith in both her personal capacity and in her official capacity as Assistant Principal of San Ramon Valley High School.

23.     Plaintiff is informed and believes and based thereon alleges that Defendant DEARBORN RAMOS is a natural person and a citizen of the United States and the State of California.  Plaintiff sues Ms. Ramos in both her personal

1  capacity and in her official capacity as Assistant Principal of San Ramon Valley
2  High School.

3      24.   Plaintiff is informed and believes and based thereon alleges that
4  Defendant BERNIE PHELAN is a natural person and a citizen of the United States
5  and the State of California.  Plaintiff sues Mr. Phelan in both his personal capacity
6  and in his official capacity as Assistant Principal of San Ramon Valley High School.

7      25.   Plaintiff is informed and believes and based thereon alleges that
8  Defendant JANET WILLFORD is a natural person and a citizen of the United States
9  and the State of California.  Plaintiff sues Ms. Willford in both her personal
10  capacity and in her official capacity as Leadership Instructor of San Ramon
11  Valley High School.

12      26.   Plaintiff is informed and believes and based thereon alleges that
13  Defendant KERRI CHRISTMAN GILBERT is a natural person and a citizen of the
14  United States and the State of California.  Plaintiff sues Ms. Gilbert in both her
15  personal capacity and in her official capacity as Resident Substitute Teacher at
16  San Ramon Valley High School.

17                 **<u>PRIOR PROCEEDINGS</u>**

18      27.   On April 7, 2017, Plaintiff filed an *ex parte* petition for writ of
19  mandamus in the Superior Court of California for Contra Costa County, that case
20  being numbered MSN17-0585.  The court set a briefing schedule and hearing
21  date.

22      28.   Prior to the April 26, 2017 hearing, the court issued a tentative ruling
23  stating that N.Y. had not "met the requirements for writ relief" and that "the Court
24  cannot grant the petition as presented."  "However," the Court continued,
25  "it appears the District made its decisions without fully considering whether or not
26  Petitioner's First Amendment constitutional rights had been violated.  Thus, an
   issue to be resolved is whether the video constituted protected speech and

RANDAZZA | LEGAL GROUP

1   whether or not Respondent's disciplinary action violated Petitioner's 1st

2   Amendment constitutional rights."  No hearing was conducted and the Court

3   denied the Petition.

4       29.   Plaintiff is in the process of exhausting administrative remedies on his

5   state tort claims and will seek to amend this Complaint to include any claims that

6   he is unable to resolve at the administrative level.  However, Plaintiff finds it

7   necessary to file on his constitutional claims at this time in order that he may seek

8   to serve early discovery on third parties to prevent the spoliation of important

9   evidence.

10   **FACTS COMMON TO ALL CLAIMS**

11      30.   Plaintiff N.Y., is a resident of Contra Costa County, California.

12   He currently attends San Ramon Valley High School.  Prior to this semester, N.Y.

13   carried a 3.82 grade point average.  He has never been disciplined by the school

14   for any reason.  Specifically, he has never bullied any other student, nor has he

15   been accused of bullying any other student.  To the contrary, he received the

16   Safe School Ambassadors Appreciation Award for three consecutive years when

17   he was at Charlotte Wood Middle School ("CWMS") and was a member of the

18   anti-bullying intervention club from 2012 to 2015, an honor bestowed with the

19   recommendation of a teacher.

20      31.   In addition, N.Y. is active in many leadership, charitable, and other

21   extra-curricular activities including:

22
- Black belt in Tae Kwon Do (assisted in teaching class to less advanced students)
23
- Elected as 4th Grade Student Council Representative
- Elected as 5th Grade Student Council Representative
24
- Member of CJSF (California Junior Scholarship Federation) at
25     Charlotte Wood Middle School ("CWMS")
- "Strong Work Ethic" Student of the Month – 6th Grade at CWMS
26
- 4.0 Honor Roll of Excellence Award – 6th Grade at CWMS
- Top 10% "Science" Achievement Award – 6th Grade at CWMS

RANDAZZA | LEGAL GROUP

Complaint

- Top 10% "Core" Achievement Award - 6th Grade at CWMS
- "Safe School Ambassadors" Appreciation Award - 6th Grade at CWMS
- "Successful Student" Student of the Month – 7th Grade at CWMS
- 4.0 Honor Roll of Excellence Award – 7th Grade at CWMS
- Top 10% "Core" Achievement Award – 7th Grade at CWMS
- Top 10% "Physical Education" Achievement Award – 7th Grade at CWMS
- "Safe School Ambassadors" Appreciation Award - 7th Grade at CWMS
- "Good Citizenship" Student of the Month – 8th Grade at CWMS
- Top 10% "English" Achievement Award – 8th Grade at CWMS
- Top 10% "Physical Education" Achievement Award – 8th Grade at CWMS
- Top 10% "Science" Achievement Award – 8th Grade at CWMS
- "Charlotte Wood Student of the Year All Around Excellence" Award, 8th Grade at CWMS
- "4.0 GPA for 3 years" Award, 8th Grade at CWMS
- "CAPER (Cooperation Achievement Progress Effort Responsibility)" Award (awarded only to students with Top 10% achievements
- "Student Ambassador for 3 years" Award, 8th Grade at CWMS (6th, 7th, and 8th grade)
- Anti-bullying intervention club (must be recommended by teachers to be selected)
- Recommended for Accelerated Biology for 9th Grade (required Letter of Recommendation from Science Teacher) - 8th Grade at CWMS
- Recommended for Advanced Geometry (required recommendation from Math Teacher) - 8th Grade at CWMS
- CWMS Leadership Student (7th and 8th grade)
- Ran for President for 8th grade
- Chaired and Led the Wheelchair Foundation Fundraising Project
- Received a Letter of Recommendation for medical school from Ken Behring, Philanthropist and Founder of Wheelchair Foundation
- Raised over $3200 to send 21 wheelchairs to Honduras and Costa Rica
- Attended WE day Charity event/Convention promoting Humanitarian Efforts
- Participated in the Capes 4 Heroes fundraiser / "build capes for kids with disabilities, kids with life threatening illnesses and kids who just need to feel empowered."
- Head of End of the Year BBQ Dance and other school dances
- Head of the Veteran's Assembly in honor of Marine Corporal Chachi Corral

- Delivered presents to students of Cambridge Elementary School (Concord) for Christmas
- Danville Little League Umpire (Since 7th Grade)
- 5th Year Senior Umpire for Danville Little League
- Asked to Umpire Championship Games for Danville Little League
- Umpired Majors upper division 13u
- Umpired Chachi Corral Tournament
- Umpired Joey Moore Tournament
- Umpired Brett Slinger Tournament
- Certified U.S. Soccer Federation Referee (2013-2014)
- Ran for President Freshmen Year at San Ramon Valley High School
- Won $200 from EBMUD (Water hyacinth science project)
- Third Place – Senior Division, Excellence in Water Research, Contra Costa County Science Fair
- 2015 Recipient, Certificate of Achievement for outstanding achievement in science and engineering innovation
- Accelerated Biology Student
- Ran for Sophomore President
- California Scholarship Federation (CSF) Member since Freshman Year
- HOSA (Health Occupation Students of America) Member since Sophomore Year
- Renaissance Award winner 9 times (3.5 GPA or higher per quarter)
- Awards Committee Leadership (Sophomore Year)
- Pitched for sponsorship of academic rewards for students
- Head of Staff Choice Awards where Teachers recognize students and honor them at a luncheon
- Glenview Aquatics Club Lifeguard
- Ran for Junior Class President (won)
- JV Volleyball player (Sophomore and Junior Year)
- Won athlete of the month Sophomore Year

32.    He has taken the following Advanced/AP/Honors classes:

- Accelerated Biology
- Geometry
- Chemistry Honors
- AP Environmental Science
- AP U.S. History
- Spanish IV Honors

33.    Prior to the unconstitutional acts of the Defendants, N.Y. served as Junior Class President for the 2016-2017 school year.  In conjunction with his office,

Complaint

N.Y. was enrolled in an elective Leadership Class.  The class meets four times a week and counts 10 credits per year towards graduation.

34.    In February of 2017, N.Y. decided to run for ASB President for the following academic year.

35.    N.Y. agreed to the provisions of the Leadership Election Package which included the following rules:

- Campaign signs and materials may be posted **beginning Monday at 6:00 AM**.  This includes posting anything on Twitter, Snapchat, Instagram, etc.
- There is a maximum budget of **$75** for campaigning materials. Please keep your receipts as we will check them
- You may only have 30 signs up on campus at any given time. Yes, we count.
- ***Please have discretion when creating campaign signs and slogans, as any inappropriate material will be removed and the candidate is subject to be pulled from the election.***

Emphasis in the original.

36.    At no time did the administration further explain or define "inappropriate material."  Nor do the campaign rules cross reference any other school policies, rules, or procedures.

37.    In conjunction with running for office, N.Y. participated in the creation of a short parody video in which N.Y. portrayed a James Bond type hero.  In the video, N.Y. rescues a fellow student who had been captured by a radical group with the intention of forcing him to participate in an international video gaming competition.

38.    Two of N.Y.'s fellow students at SRVHS, both of whom are practicing Muslim Afghan-Americans, volunteered to play the antagonists.

Complaint

39.     N.Y. and his fellow students produced the video off campus on Saturday, February 4, 2017.  The group did not use any school property or school equipment in conjunction with the production of the video.

40.     There was no script for the video.  Everyone participated in developing the story line and adlibbing dialogue.

41.     At the end of the day of filming, one of the other students took all of the raw footage with him.  The student edited the footage and at approximately 9:00 p.m. on February 6, 2017, he uploaded the final video to his (not the Plaintiff's) YouTube.  N.Y. did not see the final version of the video before it was uploaded to YouTube.

42.     The next morning, a fellow student sitting beside N.Y. told him that a couple of students found the video to be offensive.  N.Y. felt concerned, so he texted his fellow student and requested that he remove it from YouTube. The fellow student complied.  The video was online for about 12.5 hours, most of those through the night.  YouTube statistics showed that the video had been viewed a total of approximately 30 times.

43.     To the best of N.Y.'s knowledge, no one downloaded or further distributed the video.

**Defendants' Unconstitutional Acts**

44.     At 2:36 p.m. on Tuesday, February 7, N.Y. received a text from Janet Willford, the SRVHS speech and debate teacher who runs the Leadership Program.  Ms. Willford inquired about the video and requested a link. N.Y. explained that the video had been removed and thus, there was no longer any active link.

45.     At 8:42 a.m. on Wednesday, February 8, Ms. Willford again texted N.Y., stating that she wanted to protect him, but that she needed to see the video to do so.  N.Y. and the other four students who created the video met with

Ms. Willford at school that day and agreed to bring a copy of the video the following day.

46.     Plaintiff is informed and believes and based thereon alleges that after receiving a copy of the video, Janet Willford reviewed the video with other members of the SRVHS administration, as well as, other students in the Leadership Program.

47.     On February 9th, just before 1:00 p.m., the administration summoned N.Y. to the school administrative offices.  Assistant Principal Dearborn Ramos and Assistant Principal Jamie Keith interrogated N.Y. about the video and asked him to write a statement.  N.Y. hesitated because he believed they were demanding an admission of wrong doing.

48.     Ms. Ramos belittled N.Y., called him "smug" and "unremorseful."  During the interrogation, Ms. Ramos and Ms. Keith interrogated N.Y., played the video and Ms. Keith pointed out suspension guidelines that N.Y. allegedly broke, although nothing in the video violated any of the guidelines.  She followed up by asking what college N.Y. wanted to attend and threatened that a suspension would have a significant affect in the admissions process in colleges.  She also criticized his driving in the video stating that N.Y. broke the law.  N.Y. understood this to be a thinly veiled reference to the stereotype that Asians are poor drivers.

49.     Later, Assistant Principal Bernie Phelan joined in the interrogation.  Mr. Phelan focused on the imitation guns used in the video and argued that if a student brought a photo of himself holding a firearm, even if for recreational purposes or hunting with his father, the school would have the School Resource Officer keep him for questioning and get a warrant to search his house for contraband.  Since no real guns were used in the video, this clearly was an effort to apply pressure by manufacturing charges.

RANDAZZA | LEGAL GROUP

50.    N.Y. had not eaten lunch and was not given an opportunity to eat lunch the entire time he was held.  His interrogators did not even offer him water and he was not allowed to leave to use the restroom.   In a tactic more appropriate for Guantanamo Bay, Assistant Principal Keith then ate her lunch in the interrogation room in front of N.Y.

51.    The intense interrogation and repeated suspension threats by the three assistant principals made N.Y. feel harassed, threatened, and intimidated. Hungry, tired, thirsty, and in need of a restroom, N.Y. eventually wrote the following statement:

> Me and my friends got together on a Saturday to make a video for my ASB campaign.  We all got together to make a James Bond type film.  We wanted something entertaining and to keep the people who viewed it laugh. There was no script. Everyone came up with their own lines and everyone consented to their roles.  After the video was released, there were a lot of kids that enjoyed the short film, but as soon as we got word that some people got offended by the video, we took it down immediately. We did not ever intend to hurt anybody's feeling or make them feel unsafe.  When I was younger I used to get bullied a lot. I don't really talk much about it now. I was beat by another student in a bathroom.  I have never wished or want anybody to experience the pain that I felt, whether it is physical or verbal.  I am sorry that this incident turned out the way that it did. I was not raised by my parents to stereotype, be a racist or offend other people.  My intent for the video was to portray me as a hero like James Bond saving the day. I personally didn't expect the turnout. I want to be able to apologize personally to anyone that was affected.  I understand that people didn't take it the way me and my friends wanted people to see it. I am sorry for all the trouble this has caused, for admin, other students, and especially my leadership teacher. This video does not depict my personal character nor ability to be a good student. I am not the type of person

RANDAZZA | LEGAL GROUP

who doesn't care or is selfish.  I hope that this decision
that I have made doesn't affect more people.

52.     At no point did the interrogators explain what possible punishment N.Y. faced or what procedures or guidelines would be used to determine a proper punishment.  He had no opportunity to discuss the matter with his parents.  In fact, the school never contacted his parents about the incident.  For reasons that remain unclear, the administrators contacted the parents of the other four students involved.

53.     The interrogation process with the Assistant Principals lasted almost three hours.  In violation of policy, N.Y. was detained past the end of the school day without notice to his parents.  Although the interrogation was completed at 3:00 p.m., N.Y. was detained in the administrative offices until approximately 3:20 p.m., ten minutes after the election results were scheduled to be posted and 20 minutes past school hours ended.

54.     While administrators detained N.Y. in the administrative offices, the school announced that another student won the ASB President election.  N.Y. later learned that the school administration had disqualified him from the election based solely on the video he and his four fellow students produced.  Therefore, N.Y.'s votes were simply disregarded.

55.     On Monday, February 13, 2017, at an in-person meeting, Assistant Principal Jamie Keith informed N.Y. and his parents that as a result of the video and upon the recommendation of Janet Willford, the school was expelling N.Y. from the Leadership class.

56.     At the February 13, 2017 meeting, Ms. Keith provided a copy of a SRVUSD Suspension Notice.  She did not fill out the student information or sign the form as the Suspending Official.  She merely checked the following violations:

    a.     Possessed, sold, or otherwise furnished any firearm, knife, explosive, or other dangerous object, unless, in the case of

possession of an object of this type, the pupil obtained written permission to possess the item from a certificated school employee, which is concurred in by the principal or the designee of the principal.

b.   Disrupted school activities or otherwise willfully defied the valid authority of supervisors, teachers, administrators, school officials, or other personnel engaged in the performance of their duties.

c.   Possessed an imitation firearm.  As used in this section, "imitation firearm" means a replica of a firearm that is so substantially similar in physical properties to an existing firearm as to lead a reasonable person to conclude that the replica is a firearm.

d.   Harassed, threatened, or intimidated a pupil who is a complaining witness or a witness in a school disciplinary proceeding for the purpose of either preventing that pupil from being a witness or retaliating against that pupil for being a witness, or both.

e.   Engaged in an act of bullying, including, but not limited to, bullying committed by means of an electronic act, as defined in subdivisions (f) and (g) of Section 32261, directed specifically toward a pupil or school personnel.

f.   Harassment, threats, or intimidation creating an intimidating or hostile educational environment (Ed Code 48900.4)

57.   Ms. Keith apparently intended the form as a threat, despite the fact that none of N.Y.'s actions violated any of the suspension guidelines, especially since they only apply to on campus behavior.  Ms. Keith alluded to the intent to make an example out of N.Y., stating that if the School did not punish N.Y., it would create bad optics for the administration.

58.   On Friday, March 10, 2017 at a meeting attended by N.Y., his parents, his attorney, and Defendants Willford and Steele, Principal Steele informed N.Y. that the decision to remove him from the position of Junior Class President was final.

59.   At the March 10th meeting, Defendant Willford admitted that the Leadership election guideline prohibiting "inappropriate material" was unclear.

In fact, she proposed that N.Y. create clearer election guidelines as part of his punishment.

60.     For creating a video that the school administration found "inappropriate," the school stripped N.Y. of his title as Junior Class President, suppressed his election to ASB President for the following year, and permanently expelled him from the Leadership Class.

61.     For several months, despite repeated requests, Defendants refused to reverse their decision.

62.     During this time, Defendants refused to release the actual election results despite repeated requests from N.Y., his parents, and his counsel.

63.     On May 15, 2017, N.Y.'s counsel informed the School District by letter that N.Y. intended to file a federal lawsuit based on Defendants' unconstitutional acts. The letter demanded returning N.Y. to the *status quo anti*, reimbursement for legal fees, damages, an apology, and "[i]mplementation of procedures designed to prevent future violations…".

64.     On May 16, 2017, the District informed N.Y. that effective May 18, 2017, N.Y. would be returned to the Leadership class and reinstated as Junior Class President. Further, the District confirmed that N.Y. "received the most votes" and that he will "serve in the position of ASB Class President" for the 2017-2018 school year. The school refused N.Y.'s other demands.

65.     Although the Defendants seemed to accept responsibility on the surface, they continued to castigate N.Y., both directly and by encouraging surrogates to retaliate against N.Y. on their behalf.

66.     Plaintiff is informed and believes and based thereon alleges that on Thursday, May 18, 2017 an official from the School District believed to be Dr. Jason Reimann, spoke with the Leadership class about N.Y. Kerri Christman Gilbert, an employee of San Ramon High School, was also present. The message delivered

RANDAZZA | LEGAL GROUP

to the students was that the only reason the District reversed the punitive actions taken against N.Y. was because N.Y. was suing the District, implying that the decision was only about avoiding litigation rather than admitting the school errored and acted inappropriately.  The presentation was specifically designed to align the student body against N. Y.

67.   Plaintiff is informed and believes and based thereon alleges that on May 23, 2017 at 10:31am, Ms. Gilbert published the following on the Facebook page for the parents of SRVHS:

> Then we will agree to disagree.  It is not about content it's about breaking the rules of the contract.  What message does it send to the rest of the kids who followed the rules.  How about the kids who have been working towards becoming asb president their senior year.
>
> It sends the message that they can skirt the rules and get away with it.  What kind of kids are we raising that look for a way to get around what is stated.  I was there when the kids were informed and they were outraged and rightfully so.  When he takes over he's going to have a heck of a time earning their respect.  And respect is not granted it's earned.  Next school year ought to be interesting.

68.   Plaintiff is informed and believes and based thereon alleges that Janet Willford contacted a leadership teacher at California High School ("Cal High") and discussed having N.Y. address the Muslim Union of Cal High to publicly apologize for the video.  Cal High has a significantly higher population of Muslim students than SRVHS, and Ms. Willford's intention was to publicly shame N.Y.  The contact with the teacher from another school, on a matter that should have been handled only by the administration, only served to bring further unwarranted attention to the matter and to stoke the flames of racial tension.

69.     On May 18, 2017, Karen Pearce, a close personal friend of Janet Willford wrote on Facebook.

> San Ramon Valley Unified School District just caved in to legal bullying by parents of a junior who ran for SRVHS ASB President using a racially offensive "joke" video as his campaign tactic.

> He and his friend dressed up like Muslim terrorists and had fake guns.  I saw the video and was so outraged.

> These kids agree to a campaign contract with clear consequences for breaking it…you will not get an office. I know it well bc my daughter is the current ASB president.   Initially the boy was not allowed to be president.  Parents sued. Parents refused to have their son apologize or take any responsibility for a dreadful decision.

> AND I heard from students that parents changed their (losing) lawsuit to a freedom of speech suit and asked for big $$$. DISTRICT caved!!!! Gave in rather than stand up for all the principles they expect our kids to learn and exhibit.  Boy returns tomorrow as new ASB President.  UNBELIEVABLE!!

> As a mom who expects (forces) her kids to abide by their contracts…As a mom who saw the ASB kids have to enforce their ASB contract on their friends this year…

> As a parent who expects my kids to accept responsibility for

> poor choices and apologize…

> As a citizen in a country where racial slurs (even in jest) are NOT OK…

> I am outraged.

> SRVUSD--think about the precedent you just set.  You pretty much tied the hands of your principals, teachers and safety staff. Get caught drinking--just sue. Don't like your grade--sue.  Apparently things like right and wrong don't matter here anymore.

> There is a Board meeting on Tuesday.  It would be awesome to have a strong show of support and speakers to speak on our Leadership program's behalf.

> The reinstatement of this student is a blatant disrespect to rules, in general, and his video that mocked Muslims was sufficient to disqualify the student from the campaign.  This situation is not just a HS thing.  The outcome is precedent for all sorts of unfair behavior.
>
> #thisiscrazy   #srvusd   #srvhs   #upside_down #charactermatters
>
> doing the right thing isn't always easy but it's always right.

70.  She continued her tirade on Instagram:

> Raising kids just got harder thanks to SRVUSD and the parents of a SRVHS  student who used a racially insensitive video against Muslims as his campaign for ASB President.   Parents didn't like that the campaign contract he signed dictated that he wasn't allowed into office so they brought multiple suits against the District AND refused to have their son apologize/take responsibility for a poor decision. SRVUSD caved and are forcing the leadership class and school to have this boy as their role model and leader next year.  What kind of example is this SRVUSD??? How do you hope to uphold all the other behavior and conduct contracts with students?? Kids make mistakes --I get it.  But it's the authority figures(parents, school, District) that need to teach accountability. Parents--this is what your tax dollars are supporting.  I feel so bad for this boy and the life lesson his parents are choosing…don't like something--sue.
>
> I hope the local media follows this.  It's just not right.  Please share.  I have to believe good will win!!!@ktvujuliehaener @eastbaytimes
>
> #thisiscrazy   #srvusd   #srvhs   #upside_down #charactermatters

71.  Some of the information in Ms. Pearce's post could only have come from someone within the School District.  For example, the fact that the Yu's were considering further legal action was only transmitted from N.Y.'s attorney to the attorney for the San Ramon Valley Unified School District as set forth at Paragraph 63 above.  Somehow that information was transmitted to Ms. Pearce.

RANDAZZA | LEGAL GROUP

72. Ms. Pearce's social media posts created media frenzy and communities' uproar. Neighborhood discussions on sites like social media site Nextdoor.com got so heated that Nextdoor.com had to completely shut down the threads. N.Y. and his family received threatening messages and were target of hate speech based on the Defendants' unsubstantiated claims that N.Y. had engaged in racist stereotyping.

73. Plaintiff is informed and believes and based thereon alleges that Janet Willford encouraged Karen Pearce to make publish these statements.

74. Ms. Willford's existing animus towards N.Y. is evidenced by the fact that the other students involved in the production and distribution of the video, including the students who developed the characters that Ms. Willford claims to be offended by, the student who edited the video, and the student who actually posted the video, were only required to make a video displaying the proper way to stay within school guidelines when making campaign videos as their punishment. This option was never offered to N.Y. who only learned about the punishment video from his fellow students. Also, as mentioned elsewhere herein, the school contacted the parents of those students while it did not contact N.Y.'s parents.

75. Plaintiff is informed and believes and based thereon alleges that on May 24th, N.Y.'s Spanish teacher encouraged her students to e-mail the Superintendent in protest of the school's decision to reinstate N.Y. so that "all [their] voices are heard."

76. On May 29th, N.Y.'s photography teacher e-mailed his class that, "[t]he last week has brought a lot of negative attention to our school. We've made international news and not for good reasons…Integrity is doing the right thing when no one is looking" – a statement that indirectly condemns N.Y.

Complaint

77.   Plaintiff is informed and believes and based thereon alleges that many SRVHS teachers excused the absences of students who participated in a walkout to protest the School Board's decision to reinstate N.Y., in tacit support of taking retaliatory action against N.Y.

78.   Over one hundred and forty SRVUSD teachers, staff, and employees signed a letter that was presented to the District Board on June 13, 2017. The letter, which contains numerous misstatements of law and fact, admonishes the School Board for reversing the decision to punish N.Y. for the campaign video.

79.   Further, there is evidence that Janet Willford has a history of animus directed towards N.Y. even in advance of the video incident.  When viewed in totality, her actions demonstrate a consistent pattern of favoritism and treating N.Y. as if he did not belong in the Leadership Class or in a leadership position.

80.   At the end of his sophomore year, N.Y. was elected to the position of Junior Class President.  In front the entire leadership class, Willford brought up the fact that N.Y. had lost elections for leadership positions three years in a row before attaining this achievement, intentionally embarrassing him.

81.   Traditionally, incoming Junior Class Officers (still in their sophomore year) are invited to the Junior Class Prom so that they can see first-hand what their job will be the following year.  Ms. Willford invited all the incoming Junior Class Officers who were Caucasian, including the candidate that N.Y. defeated in the Junior Class President election, well in advance of the event, but excluded N.Y.  Two days prior to the event, N.Y. finally received his invitation with the explanation that Ms. Willford "forgot" to include him on the list.  He was unable to attend at that late date, because his parents had already made plans for him to be away.

82.    At the beginning of the year, Ms. Willford established and used a group chat to discuss Junior Class Leadership topics with the Junior Class Officers. She added all the other officers but again "forgot" to add N.Y. to the group chat, even though he was Junior Class President.  N.Y. was not even aware the group chat existed until he casually asked the vice-president how she had received a copy of a prom invitation design.  This was in January, half way through the year.

83.    It is unclear why Ms. Willford targeted N.Y. the way she did.  It may have been mere favoritism for students who were friends of Ms. Willford and her family. Alternatively, it may have been something more nefarious such as racism, since N.Y. is Asian and the other officers are Caucasian.

84.    Plaintiff is informed and believes and based thereon alleges that Ms. Willford maintains a close and personal friendship with the family of G.W., the student who benefited from N.Y.'s disqualification by being named incoming ASB President.  Ms. Willford is also a close friend of Karen Pearce, the woman who appeared on TV interviews and published the Facebook and Instagram postings condemning N.Y., initiating and supporting a smear campaign against N.Y. and his parents, and encouraging people to pressure the School Board to reconsider the reinstatement of N.Y.  They all attend and are heavily involved in the same local Presbyterian Church.   Ms. Willford's father-in-law is a church deacon. Ms. Pearce held various volunteer positions in the Women's Ministry program at the church before joining its staff in January 2016 as Director of Connection. G.W. is an active member of the church's Student Life Group and is the church's current High School Intern.  G.W.'s father organized sporting events for Men on the Mountain, church's annual men's conference.

85.    Ms. Willford knew G.W. would serve as ASB President if she disqualified N.Y., but because Ms. Willford operates so autonomously, it is difficult to discern prior to discovery whether she let her personal relationship with G.W.

and her family and her preference for G.W. to serve as next year's ASB President influence her decision to disqualify N.Y. and overturn a legitimate election. Certainly, it was inappropriate for Ms. Willford to be the one to make the decision to disqualify N.Y.

86.    After the Board reversed SRVHS's decision to punish N.Y. for his political speech, Superintendent Schmitt reached out to the Yu Family to arrange a meeting "to make sure [N.Y.] [was] doing OK and to provide support." However, when the Yus requested to have their attorney present and asked to discuss the issues which were causing N.Y. not to be "OK." The Superintendent, through counsel, unilaterally cancelled the meeting and refused to meet with the Yus.

87.    Having no other means for protecting themselves, the Yus bring this action to recover damages for the Defendants unconstitutional acts and to prevent further harassment directed at him in retaliation for standing up for Free Speech.

### FIRST CLAIM FOR RELIEF
**Violation of the First Amendment to the United States Constitution**
***(Against all Defendants except Kerri Christman Gilbert)***

88.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint.

89.    Plaintiff has a federally protected right and privilege to be free from deprivation of his freedom of speech, expression, and association under the First Amendment to the United States Constitution as incorporated and applicable to the state by the Fourteenth Amendment to the United States Constitution.

90.    The Defendants are aware or should be aware that despite pedagogical concerns, neither students nor teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.

RANDAZZA | LEGAL GROUP

91.    Defendants punished Plaintiff based on his speech protected by the First Amendment by stripping him of his office as Junior Class President for nearly four months, disqualifying him from the position as next year's ASB President despite having received a majority of the vote thereby casting a cloud over the leadership role he will take on at the beginning of the 2017-2018 school year, and expelling him from the Leadership Class for nearly a full semester.

92.    The production, distribution, and display of the video occurred off campus.

93.    The protected speech did not cause a material and substantial disruption to school activities or to the work of the school, nor was it reasonably likely to do so.

94.    As such, Defendants' acts violate Plaintiff's First Amendment rights.

95.    Defendants' actions deprived N.Y. of his right to an education, specifically but not limited to the right to attend the leadership class from which he was expelled during the majority of the Spring 2017 Semester.

96.    As a further direct result of Defendants' actions, Plaintiff suffered damages including but not limited to, the chilling of his First Amendment Rights, emotional damages, harm to reputation, embarrassment, humiliation, stress and/or mental anguish, and all other damages directly and/or consequentially associated with the deprivation of one's civil rights, including attorneys' fees and costs associated with vindicating his civil rights.

**SECOND CLAIM FOR RELIEF**
**Violation of the First Amendment to the United States Constitution by Retaliation**
***(Against all Defendants)***

97.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint.

98.    As argued above, N.Y.'s parody campaign video is First-Amendment-protected speech.

99.    N.Y.'s petitioning the state court for a writ of mandate is also activity protected by the First Amendment.

100.    Although the District agreed to reinstate N.Y., the District, its employees, and its teachers engaged in retaliatory conduct, including without limitation:

    a.  encouraging students to express hostility toward N.Y. by telling those students that the only reason the District reinstated N.Y. was because N.Y. and his parents threatened to file a lawsuit;

    b.  encouraging students to contact the Superintendent to protest against N.Y.;

    c.  signing a petition to the School Board condemning N.Y. for engaging in First Amendment Activity and condemning the School Board for reinstating N.Y.;

    d.  encouraging students to leave class to protest the School District's decision to reinstate N.Y. by excusing the absences of those students;

    e.  showing the subject video, a copy of which was obtained by demanding a copy from the students involved, to members of the Muslim community, in an effort to further provoke community backlash; and

    f.  disseminating through social media additional information from N.Y.'s private school records including discussing his attendance.

101.    The District's retaliatory conduct has denied N.Y. of various benefits and privileges.  The actions of District and its failure to prevent the acts of its administrators, teachers, and employees have created such a toxic environment

at the school and in the community, that if not prevented and corrected will make it impossible for N.Y. to continue as a student at SRVHS or to take the post of ASB President for the 2017-2018 academic year.

102.   The retaliatory acts will negatively impact the right of N.Y. to attend the school of his choice.

103.   The motivation for the retaliatory adverse actions taken by the District, its administrators, teachers, and employees is to punish N.Y. for engaging in First Amendment protected activity including ideas N.Y. conveyed in his James Bond parody campaign video and his right to petition the government.

104.   As a direct result of Defendants' actions, Plaintiff suffered damages including but not limited to, the chilling of his First Amendment Rights, emotional damages, harm to reputation, embarrassment, humiliation, stress and/or mental anguish, and all other damages directly and/or consequentially associated with the deprivation of one's civil rights, including attorneys' fees and costs associated with vindicating his civil rights.

## THIRD CLAIM FOR RELIEF
**Interference with the Rights Secured by the Constitution or Laws of the State of California, to wit violation of Article 1, §2 of the California Constitution and violation of Cal. Educ. Code Sec. 48950(a)**
*(Against all Defendants except Kerri Christman Gilbert)*

105.   Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint.

106.   Defendants punished Plaintiff based upon conduct protected by the United States Constitution.

107.   The California Education Code is even more protective of student speech than the First Amendment of the U.S. Constitution, specifically providing that, "[a] school district operating one or more high schools, a charter school, or a private secondary school shall not make or enforce a rule subjecting a high

school pupil to disciplinary sanctions solely on the basis of conduct that is speech or other communication that, when engaged in outside of the campus, is protected from governmental restriction by the First Amendment to the United States Constitution or Section 2 of Article I of the California Constitution.  Cal. Educ. Code § 48950.

108.   Consequently, N.Y.'s speech is also protected under California law.

109.   The Defendants knew or should have known Plaintiff has certain civil rights, including the freedom of speech, expression and association secured under Article 1, §2 of the California Constitution and Cal. Educ. Code § 48950.

110.   As a direct and proximate result of their actions, the Defendants, while acting under color of law, deprived Plaintiff of certain civil rights secured under Article 1, §2 of the California Constitution, by wrongfully chilling and infringing upon Plaintiff's freedom of speech, expression, and association without due process of law.

111.   As a direct and proximate result of the Defendants' actions, Plaintiff suffered damages, a result of the violation of his Civil Rights, including but not limited to the chilling of his constitutional rights, emotional damages, embarrassment, harm to reputation, humiliation, stress and/or mental anguish and all other damages directly and/or consequentially associated with the deprivation of one's civil rights.

### FOURTH CLAIM FOR RELIEF
**Violation of the 14th Amendment to the
United States Constitution – Right to Due Process
*(Against all Defendants except Kerri Christman Gilbert)***

112.   Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint.

113.    The policies and conduct of the Defendants constitute a violation of the First and Fourteenth Amendments of the U.S. Constitution.

114.   Fundamental Due Process requires that school disciplinary rules must be sufficiently explicit to inform those who are subject to them what conduct on their part will render them liable to their penalties and not so vague that people of common intelligence must necessarily guess at their meaning and differ as to their applications.

115.   Fundamental Due Process and ordinary notions of fair play further require that the school give adequate notice of the school disciplinary rules so as to allow a student and his parent to govern his or her conduct and or action in a fashion that would comport with the school restrictions.

116.   Prior to February 4, 2017, when Plaintiff and his four fellow students produced and distributed the video that Defendants censured, the School did not give proper and adequate notice of what it considered to be inappropriate speech that would subject students to disciplinary actions.

117.   Plaintiff is entitled to Due Process notice of school policies, rules and/or procedures which could subject him to disciplinary action, so as to enable him to adequately govern his conduct accordingly.

118.   Like all citizens, Defendants are deemed to know the applicable law governing their behavior, authority, duties and procedures.

119.   Plaintiff has a federally protected right and privilege to be free from deprivation of life, liberty, or property without Due Process of the law under the Fourteenth Amendment to the United States Constitution.

120.   The Defendants knew or should have known Plaintiff has a federally protected right and privilege to be free from deprivation of life, liberty, or property without Due Process of the law, under the Fourteenth Amendment to the United States Constitution.

121.   The Defendants knew or should have known that they could not craft, adopt, pass, ratify and/or enforce "secret" and/or unwritten standards for

1  regulating election materials to which Plaintiff was not provided Due Process

2  notice.

3       122.   Defendants decided in an act of deliberate indifference to the

4  rights of Plaintiff to arbitrarily and capriciously take action to circumvent the

5  written disciplinary policies, rules, and procedures of SRVHS and SRVUSD.

6       123.   As a direct and proximate result of their actions, the Defendants,

7  under color of law, deprived Plaintiff of certain civil rights secured under the 1st

8  and 14th Amendments of the United States Constitution, by wrongfully censoring

9  his United States Constitutional freedom of speech, expression, and association

10 without Due Process of law.

11      124.   As a direct and proximate result of the Defendants actions, Plaintiff

12 was deprived of a liberty interest and suffered damages, as a result of the

13 violation of his Civil Rights, including but not limited to the chilling of his

14 constitutional rights, emotional damages, embarrassment, harm to reputation,

15 humiliation, stress and/or mental anguish and all other damages directly and or

16 consequentially associated with the deprivation of one's civil rights, including

17 attorneys' fees and costs associated with vindicating his civil rights.

18      125.   Plaintiff had no adequate and/or available post deprivation

19 remedy.

20                              **<u>LEAVE TO AMEND</u>**

21      Plaintiffs find it necessary to file on their constitutional claims immediately

22 in order to prevent the continued and irreparable harm the Defendants are

23 causing Plaintiff.  Plaintiff will present the full nature and extent of that harm in a

24 subsequently filed motion for injunctive relief.  Plaintiff would like to present

25 additional state tort claims, but prior to presenting these matters to this Court,

26 Plaintiffs are bound to comply with the California Tort Claims Act.  Assuming, the

State denies their claims, Plaintiffs expressly reserve leave to amend in order to present those claims to this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment for Plaintiff and against Defendants as follows:

A.   An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction requiring them to cease any form of retaliation against N.Y. based on the video in question;

B.   An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction requiring them to cease any form of retaliation against N.Y. for filing any complaint or for seeking to vindicate his constitutional rights;

C.   An order declaring that Defendants' complained about conduct is unconstitutional and violates the First and Fourteenth Amendments of the U.S. Constitution and Article 1, §2 of the California Constitution;

D.   An order declaring that the section of the student election rules allowing for punishment of students who post "inappropriate material" is unconstitutional on its face because it violates students' rights to freedom of speech and due process;

E.   Prejudgment and post-judgment interest at the rate allowed by law;

1   F.    Costs of suit, including attorneys' fees and costs pursuant to 42 U.S.C.

2         § 1988;

3   G.    Actual, Nominal, and Punitive Damages to be determined at trial;

4   H.    Such other declaratory relief consistent with the injunction as

5         appropriate; and

6   I.    All other relief to which Plaintiff may be entitled.

7                              **JURY DEMAND**

8       Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal

9   Rules of Civil Procedure.

10

11                              Respectfully submitted,

12  Dated: July 13, 2017        RANDAZZA LEGAL GROUP, PLLC

13                              By:    */s/ D. Gill Sperlein*
                                       D. GILL SPERLEIN
14                                     MARC. J. RANDAZZA

15
                                       *Attorneys for Plaintiff,*
16                                     *N.Y.*

17

18

19

20

21

22

23

24

25

26

- 31 -