IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.Y.,<br><br>    Plaintiff,<br><br>  v.<br><br>SAN RAMON VALLEY UNIFIED SCHOOL DISTRICT, et al.,<br><br>    Defendants. | Case No. 17-cv-03906-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS; AFFORDING PLAINTIFF LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 48, 49 |

Before the Court are the following two motions to dismiss the operative complaint in the above-titled action: (1) "Motion to Dismiss Plaintiff's First Amended Complaint," filed March 2, 2018, by defendants San Ramon Valley Unified School District, Rick Schmitt, Jason Reitman, Ruth Steele, Jamie Keith, Dearborn Ramos, Bernie Phelan, and Jason Krolikowski (collectively, "Administration Defendants"); and (2) "Motion to Dismiss Plaintiff's First Amended Complaint," filed February 28, 2018, by defendants Kerri Christman Gilbert and Janet Willford. The motions have been fully briefed. Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

**BACKGROUND**

In his First Amended Complaint ("FAC"), plaintiff N.Y., who presently is a senior attending San Ramon Valley High School ("SRVHS"), alleges he was deprived of his constitutional rights in connection with a student election.

Plaintiff alleges that, in February 2017, when he was Junior Class President, he

---

[1] By order filed April 10, 2018, the Court took the matters under submission.

1    ran for Associated Student Body ("ASB") President.  (See FAC ¶¶ 1-2, 32.)  The rules
2    applicable to the election included the following provision:  "Please have discretion when
3    creating campaign signs and slogans, as any inappropriate material will be removed and
4    the candidate is subject to be pulled from the election."  († FAC ¶ 34.)

5    Plaintiff alleges that, "[i]n conjunction with running for office," he and other
6    students created a "short parody video" in which plaintiff "rescues a fellow student who
7    had been captured by a radical group with the intention of forcing him to participate in an
8    international video gaming competition."  (See FAC ¶ 36.)  According to plaintiff, two
9    students, "both of whom are practicing Muslim Afghan-Americans, volunteered to play the
10   antagonists."  (See FAC ¶ 37.)  Plaintiff alleges "the school administration found [the
11   video] 'inappropriate'," and, in light of such determination, "stripped [plaintiff] of his title as
12   Junior Class President" and "permanently expelled" him from the school's "Leadership
13   Class" (see FAC ¶ 60); additionally, plaintiff alleges, defendants "suppressed [plaintiff's]
14   election to ASB President," even though he had won "the most votes" (see FAC ¶¶ 60,
15   64).

16   Plaintiff alleges that, thereafter, he "filed an ex parte petition for writ of mandamus"
17   in state court, which was denied (see FAC ¶¶ 27-28), and that his counsel then
18   "informed" defendants that plaintiff "intended to file a lawsuit based on [d]efendants'
19   unconstitutional acts" (see FAC ¶ 63).  According to plaintiff, although defendant San
20   Ramon Valley Unified School District ("the District") thereafter "reinstated" plaintiff as
21   Junior Class President, allowed him to "return[ ] to the Leadership [C]lass," and
22   "confirmed" that plaintiff would serve as ASB President for the 2017-2018 school year
23   (see FAC ¶ 64), "the District, its employees, and its teachers engaged in and continue to
24   engage in retaliatory conduct" (see FAC ¶ 114).

25   Based on the above allegations, plaintiff alleges six causes of action.  The First
26   through Fifth Causes of Action are brought under 42 U.S.C. § 1983, and the Sixth Cause
27   of Action is brought under Title VI of the Civil Rights Act of 1964.  In particular, the First
28   Cause of Action alleges defendants violated the First Amendment by promulgating and

2

1  enforcing the above-quoted campaign rule prohibiting "inappropriate material" (see FAC
2  ¶¶ 92-93); the Second Cause of Action alleges defendants violated the First Amendment
3  by imposing disciplinary sanctions on plaintiff (see FAC ¶ 102); the Third Cause of Action
4  alleges defendants violated the First Amendment by retaliating against plaintiff after he
5  sought, and stated an intent to further seek, relief in court (see FAC ¶¶ 112, 118); the
6  Fourth Cause of Action alleges defendants deprived plaintiff of due process by not
7  providing him "adequate notice of what [the District] considered to be inappropriate
8  speech that would subject students to disciplinary action" (see FAC ¶ 124); the Fifth
9  Cause of Action alleges defendants imposed disciplinary sanctions on plaintiff based on
10 his "religion, political beliefs, and race" (see FAC ¶¶ 139, 144-45); and, lastly, the Sixth
11 Cause of Action alleges defendants, in violation of Title VI, discriminated against him on
12 the basis of his religion and race. (See FAC ¶¶ 152-53, 157-58.)

## DISCUSSION

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

3

as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

**A. Administration Defendants' Motion to Dismiss**

### 1. All Causes of Action: Standing To Seek Injunctive/Declaratory Relief

Plaintiff alleges he is entitled to injunctive and declaratory relief. The Administration Defendants argue plaintiff lacks standing to seek such relief.

To establish standing to seek injunctive relief or declaratory relief, a plaintiff must show "he is under threat of suffering 'injury in fact' that is concrete and particularized [and that] the threat must be actual and imminent, not conjectural or hypothetical." See Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009) (setting forth elements necessary to establish standing to seek injunctive relief); Coral Construction Co. v. King County, 941 F.2d 910, 929 (9th Cir. 1991) (holding plaintiff seeking declaratory relief must establish "an injury to himself that is distinct and palpable" and "not conjectural or hypothetical"). "Standing is determined by the facts that exist at the time the complaint is filed." Clark v. City of Lakewood, 259 F.3d 996, 1006 (9th Cir. 2001). At the pleading stage, a plaintiff, to avoid dismissal, must allege sufficient facts to support "the elements of standing." See Center for Biological Diversity v. Mattis, 868 F.3d 803, 816 (9th Cir. 2017).

#### a. First Cause of Action

In the First Cause of Action, plaintiff alleges the campaign rule prohibiting "inappropriate material" is unconstitutional. (See FAC ¶¶ 92-93.) The sole forms of relief plaintiff seeks as to this claim are "declaratory and injunctive relief." (See FAC at 24:8-13.)

At the pleading stage, to establish standing to seek equitable relief with respect to

4

the challenged campaign rule, plaintiff, at a minimum, would have to allege facts from which one could find defendants might again enforce the rule against him, e.g., an alleged intention to run as a candidate in a future student election in which the rule might be applicable. See City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983) (holding plaintiff's "standing to seek [an] injunction" depends on whether he is "likely to suffer future injury" from conduct sought to be enjoined). Plaintiff, however, alleges no such facts. Indeed, it does not appear plaintiff could do so, as, on July 11, 2017, the date on which he filed his initial complaint, the school's election for the 2017-2018 school year already had occurred and he was about to begin his final year of high school.

Accordingly, there being no allegations to support a finding plaintiff will be subjected to the challenged campaign rule in the future, and the sole relief plaintiff seeks in connection with the First Cause of Action being injunctive and declaratory relief pertaining to the challenged rule, the First Cause of Action is subject to dismissal.

### b. Second through Sixth Causes of Action

As to the Second through Sixth Causes of Action, plaintiff seeks both monetary and equitable relief. In particular, as to the latter, plaintiff seeks an injunction requiring defendants "to cease any form of retaliation against [plaintiff] based on the video in question" (see FAC, prayer ¶ A) and "to cease any form of retaliation against [plaintiff] for filing any complaint or for seeking to vindicate his constitutional rights" (see FAC, prayer ¶ B), as well as a declaration that such retaliation is unconstitutional (see FAC, prayer ¶ C).

Plaintiff, who, as noted, is presently in his final year at SRVHS, alleges defendants have retaliated against him, and continue to do so, by, for example, "operating a shadow government that takes on responsibilities that would normally be the purview of the president" and "failing to protect [plaintiff] against harassment from other students including incidents of vandalism and hate speech on [his] assigned parking space." (See FAC ¶ 114(j-k).) In light of such allegations, the Court finds plaintiff has sufficiently

//

alleged he has standing to seek the requested injunctive and declaratory relief.[2]

Accordingly, plaintiff's claims for injunctive and declaratory relief asserted in connection with the Second through Sixth Causes of Action are not subject to dismissal for lack of standing.

**2. Second through Fifth Causes of Action: "Person"**

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." See 42 U.S.C. § 1983.

The Administration Defendants contend plaintiff's § 1983 claims are subject to dismissal for the asserted reason that neither the District nor the individual Administration Defendants, to the extent they are sued in their respective official capacities, are "persons" within the meaning of § 1983.[3]

As to the District, the Court agrees. A California school district is a state agency. See Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 251 (9th Cir. 1992). "State agencies . . . are not 'persons' within the meaning of § 1983, and are therefore not amenable to suit under that statute." See Maldonado v. Harris, 370 F.3d 945, 951 (9th Cir. 2004).

Accordingly, to the extent alleged against the District, the Second through Fifth Causes of Action are subject to dismissal on the above-described ground.

As to the individual Administration Defendants, however, the Court finds otherwise. In support of their argument, the Administration Defendants cite to Will v.

---

[2] Although such claims for injunctive and declaratory relief may well be moot after plaintiff's graduation, the Administration Defendants have not sought dismissal on such grounds, and, consequently, the Court does not further address the issue at this time.

[3] Plaintiff seeks injunctive relief against the individual Administration Defendants in their respective official capacities and an award of damages against them in their respective individual capacities.

6

1  Michigan Dep't of State Police, 491 U.S. 58 (1989), in which the Supreme Court held that
2  that "neither a State nor its officials acting in their official capacities are 'persons' under
3  § 1983." See id. at 71. As further explained in Will, however, an exception exists when
4  "a state official in his or her official capacity [is] sued for injunctive relief." See id. at 71
5  n.10.[4]

Accordingly,to the extent alleged against the individual Administration Defendants, the Second through Fifth Causes of Action are not subject to dismissal on the asserted ground that said defendants are not "persons" under § 1983.

### 3. Second Cause of Action: Merits/Qualified Immunity

In the Second Cause of Action, plaintiff alleges defendants violated the First Amendment by imposing on him disciplinary sanctions because of his campaign video. The Administration Defendants argue that the imposition of disciplinary sanctions on plaintiff did not violate the First Amendment, or, alternatively, that the individual Administration Defendants are entitled to qualified immunity.

In support thereof, the Administration Defendants rely on Bethel School Dist. No. 403 v. Fraser, 478 U.S. 675 (1986) ("Fraser"), in which the Supreme Court held a school district did not violate the First Amendment by imposing disciplinary sanctions on a student who delivered a campaign speech containing "pervasive sexual innuendo" that "glorif[ied] male sexuality" and was "acutely insulting to teenage girl students," see id. at 683, as well as Ninth Circuit cases that have found school districts do not violate the First Amendment by imposing disciplinary sanctions on students who threaten violence, see Wynar v. Douglas County School Dist., 728 F.3d 1062, 1065 (9th Cir. 2013) (holding First Amendment not violated by expulsion of student who sent to other students "instant messages" in which he threatened to shoot specific students); LaVine v. Blaine School Dist., 257 F.3d 981, 983 (9th Cir. 2001) (holding First Amendment not violated by

---

[4]The Administration Defendants do not contend they are not "persons" for purposes of plaintiff's claims for damages.

7

expulsion of student who gave teacher "poem" in which he made references to bringing gun to school and killing classmates).

The Administration Defendants argue the holdings in the above-referenced cases are applicable to the instant case, for the asserted reason that the subject campaign video "was potentially racially and culturally insensitive," and, along with "depict[ing] guns and violence," contained "inappropriate sexual overtones." (See Administration Defs.' Mot. at 2:11-14.) At this stage of the proceedings, however, the Administration Defendants' argument is premature, for the reason that the Administration Defendants' characterization of the video is not based on the face of the FAC. As set forth above, plaintiff alleges the video was a "James Bond" parody in which he portrayed a character who "rescues" a student who was "captured" by "a radical group" that sought to force persons to participate in "an international video gaming competition" (See FAC ¶ 36.) Any finding that the video, as a matter of law, contained, or reasonably could be determined by the Administration Defendants to contain, racially and culturally inappropriate material and/or violent and sexual imagery cannot be made from the FAC's description of its content. See NL Industries, 792 F.2d at 898 (holding, for purposes of determining motion to dismiss, court must "accept all material allegations in the complaint as true and construe them in the light most favorable to [the plaintiff]")

Accordingly, to the extent alleged against the individual Administration Defendants, the Second Cause of Action is not subject to dismissal.

**4. Fourth Cause of Action: Merits/Qualified Immunity**

In the Fourth Cause of Action, plaintiff alleges that defendants, prior to imposing disciplinary sanctions on him, failed to give him adequate notice of the type of campaign activities that could subject him to discipline.

As noted, the rules applicable to the election included the following provision: "Please have discretion when creating campaign signs and slogans, as any inappropriate material will be removed and the candidate is subject to be pulled from the election." (See FAC ¶ 34.) According to plaintiff, defendants imposed "sanctions" on him after

1  concluding plaintiff violated the above-quoted rule. (See FAC ¶¶ 92, 120.)

2  "A conviction or punishment fails to comply with due process if the statute or
3  regulation under which it is obtained fails to provide a person of ordinary intelligence fair
4  notice of what is prohibited, or is so standardless that it authorizes or encourages
5  seriously discriminatory enforcement." F.C.C. v. Fox Television Stations, Inc., 567 U.S.
6  239, 253 (2012) ("Fox") (internal quotation and citation omitted). In the school context,
7  however, the Supreme Court has clarified that, "[g]iven [a] school's need to be able to
8  impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the
9  educational process, the school disciplinary rules need not be as detailed as a criminal
10 code which imposes criminal sanctions." See Fraser, 478 U.S. at 686.

11 Here, the Administration Defendants argue, plaintiff's due process deprivation
12 claim should be dismissed or, alternatively, that the individual Administration Defendants
13 are entitled to qualified immunity, for the asserted reason that the campaign rule plaintiff
14 was found to have violated did not, contrary to plaintiff's characterization thereof, fail to
15 provide adequate notice of the school's disciplinary rules. In support of such argument,
16 the Administration Defendants rely on Fraser, in which the Supreme Court held that a
17 student who gave a campaign speech containing "pervasive sexual innuendo" had
18 sufficient notice such conduct "would subject him to disciplinary sanctions," in light of a
19 school rule prohibiting "obscene" language and "prespeech admonitions" by two teachers
20 who had advised him it was "inappropriate" and that his delivery thereof might have
21 "severe consequences." See id. at 678, 686.

22 Although not clearly expressed, the Administration Defendants, in their opening
23 motion, appear to argue that the stated prohibition of "inappropriate material" constituted
24 sufficient notice to plaintiff of the type of material not allowed, and, in their reply, clarify
25 that said prohibition provided plaintiff with an "adequate warning" that he could not
26 "produc[e] a culturally insensitive campaign video." (See Administration Defs.' Reply at
27 6:9-11.)

28 Once again, however, the Administration Defendants' argument is premature at

the pleading stage, as, assuming a "[student] of ordinary intelligence," see Fox, 567 U.S. at 253, would be on notice that "inappropriate material" includes "culturally insensitive" campaign materials, the FAC, construed in the light most favorable to plaintiff, does not support a finding that the video here at issue was, as a matter of law, culturally insensitive.

Accordingly, to the extent alleged against the individual Administration Defendants, the Fourth Cause of Action is not subject to dismissal.

### 5. Fifth Cause of Action: Merits/Qualified Immunity

In the Fifth Cause of Action, plaintiff alleges that defendant Janet Willford deprived plaintiff of equal protection by imposing disciplinary sanctions on the basis of his religion and race (see FAC ¶ 145), namely, "Catholic" and "Asian" (see FAC ¶ 84), as well as on the basis of his "political beliefs" (see FAC ¶ 145).[5] Plaintiff also alleges that the other individual Administration Defendants "knew or should have known" said defendant was "motivated by animus towards [plaintiff] based on his religion, political beliefs, and race," but nonetheless "ratified" her actions. (See FAC ¶¶ 143-45).

As discussed below, plaintiff fails to sufficiently allege an equal protection claim against Janet Willford. Further, irrespective of such deficiency, plaintiff fails to allege facts to support his conclusory allegation that the individual Administration Defendants "ratified" her alleged decision to impose disciplinary sanctions based on plaintiff's religion, race and/or political beliefs. See Iqbal, 556 U.S. at 678 (holding courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation and citation omitted).

Accordingly, to the extent alleged against the individual Administration Defendants, the Fifth Cause of Action is subject to dismissal.

### 6. Sixth Cause of Action: Merits

In the Sixth Cause of Action, plaintiff alleges that Janet Willford, by assertedly

---

[5] Plaintiff's political beliefs are not further identified in the FAC.

1    imposing disciplinary sanctions on the basis of "religion" and "race," violated Title VI, and
2    that the individual Administration Defendants "knew or should have known" that she was
3    "motivated by animus towards [plaintiff] based on his religion, and race," but nonetheless
4    "ratified" her actions  (See FAC ¶¶ 157-158).

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  See 42 U.S.C. § 2000d.

As the Administration Defendants correctly observe, Title VI does not include protection against discrimination on the basis of religion. See id.  With respect to discrimination on the basis of race, Title VI "proscribes only those racial classifications that would violate the Equal Protection Clause," and, consequently, where, as here, a plaintiff's claim that he was deprived of equal protection on account of his race fails, a Title VI claim based on the same facts likewise fails. See Grutter v. Bollinger, 539 U.S. 306, 343 (2003) (internal quotation, citation and alteration omitted).

Accordingly, the Sixth Cause of Action is subject to dismissal.

## B. Gilbert/Willford Motion to Dismiss

The Court next considers the motion filed jointly by defendants Kerri Christman Gilbert ("Gilbert"), a "Resident Substitute Teacher of [SRVHS]" (see FAC ¶ 26), and Janet Willford ("Willford"), the "Leadership Instructor of [SRVHS]" (see FAC ¶ 25).

### 1. Gilbert

As against Gilbert, plaintiff alleges a single cause of action, specifically, the Third Cause of Action, by which plaintiff, as noted, alleges a claim for retaliation under § 1983.

"To state a claim under § 1983, a plaintiff . . . must show that the alleged deprivation was committed by a person acting under color of state law." See West v. Atkins, 487 U.S. 42, 48 (1988).  Although, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law," see id. at 50, "acts of state officials in the ambit of their personal

11

pursuits are not state action, see Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996 (internal quotation and citation omitted).

Plaintiff bases his claim against Gilbert on the following allegations, which the Court assumes true for purposes of the instant motion. On May 18, 2017, a person plaintiff "believe[s] to be" defendant Jason Reitman "spoke with the Leadership class about [plaintiff]" and advised those present, including Gilbert, that the District had "reversed the punitive actions taken against [plaintiff]" because plaintiff "was suing the District." (See FAC ¶ 66.) Five days later, Gilbert posted on "the Facebook page for the parents of SRVHS" the following comment:

> Then we will agree to disagree. It is not about content it's about breaking the rules of the contract. What message does it send to the rest of the kids who followed the rules. How about the kids who have been working toward becoming asb president their senior year. It sends the message that they can skirt the rules and get away with it. What kind of kids are we raising that look for a way to get around what is stated. I was there when the kids were informed and they were outraged and rightfully so. When he takes over he's going to have a heck of time earning their respect. And respect is not granted it's earned. Next school year ought to be interesting.

(See FAC ¶ 67.)

Gilbert argues that her Facebook posting does not constitute action taken under color of state law. The Court agrees.

The FAC includes no factual allegations from which it could be inferred that Gilbert's official responsibilities included posting comments on the "Facebook page for the parents of SRVHS." Indeed, nothing in the FAC suggests that Gilbert's alleged comments reflected anything other than her personal opinion that the District's decision was unwise. Under such circumstances, plaintiff fails to allege Gilbert's comments constituted state action. See Van Ort, 92 F.3d at 838 (holding defendant employed by government agency does not act under color of state law when "pursuing his own goals and [is] not in any way subject to control by his public employer") (internal quotation, citation and alteration omitted).

According, to the extent alleged against Gilbert, the Third Cause of Action is subject to dismissal.

12

**2. Willford**

Plaintiff asserts each of his six causes of action against Willford.

### a. First Cause of Action: Standing

As discussed above, the First Cause of Action is subject to dismissal for lack of standing.

### b. Second Through Sixth Causes of Action: 11th Amendment

Willford argues that, to the extent plaintiff's claims are brought against her in her "official capacity" (see FAC ¶ 25), she is entitled to immunity under the Eleventh Amendment. The Court disagrees.

The Eleventh Amendment "prohibits a private party from suing a nonconsenting state or its agencies in federal court," see Hason v. Medical Board, 279 F.3d 1167, 1170 (9th Cir. 2002), and, as noted above, a California school district is a state agency, see Belanger, 963 F.2d at 251. Nonetheless, "the Eleventh Amendment does not bar suits for prospective injunctive relief brought against state officers in their official capacities, to enjoin an alleged ongoing violation of federal law." See Hason, 279 F.3d at 1171. Here, to the extent plaintiff's claims are brought against Willford in her official capacity, the relief plaintiff seeks is solely injunctive in nature, and, consequently, the Eleventh Amendment is not a bar to such claims.

### c. Second Through Fifth Causes of Action: "Person"

Willford argues that, to the extent plaintiff's § 1983 claims are brought against her in her official capacity, she is not a "person" for purposes of § 1983. The Court, for the reasons stated above with respect to the Administration Defendants, disagrees. See Will, 491 U.S. at 71 n.10.

### d. Second Cause of Action: Qualified Immunity

Willford argues that she is entitled to qualified immunity as to the Second Cause of Action, by which, as noted, plaintiff alleges he was sanctioned because of his campaign video. In support of such argument, Willford asserts that "there is no clearly established right for a student to make a racially insensitive and violent video for a school student

13

government election, which in no way addressed the student's qualifications, ideas or positions regarding anything." (See Gilbert/Willford Mot. at 7:11-13.)

Whatever merit Willford's argument may have at a later stage of the proceedings, it is, at the pleading stage, premature, as any finding that, as a matter of law, the video either contained or was reasonably determined by Willford to contain racially insensitive and violent images, and/or lacked any relevance to campaign issues, cannot be made from the limited description of the video as set forth in the FAC.

Accordingly, to the extent alleged against Willford, the Second Cause of Action is not subject to dismissal.

### e. Fourth Cause of Action: Merits/Qualified Immunity

Willford argues that plaintiff has failed to state a due process deprivation claim against her, or, alternatively, that she is entitled to qualified immunity. Although, much like the Administration Defendants, Willford's opening motion does no more than note the existence of the campaign rule prohibiting "inappropriate material," she does, in her reply, clarify that her argument is based on a theory that such rule provided plaintiff with adequate notice that he could not distribute a "racially insensitive and violent campaign video." (See id. at 7:18-19.)

This argument, as discussed above with regard to the Administration Defendants' motion, is premature at the pleading stage, as, assuming a "[student] of ordinary intelligence," see Fox, 567 U.S. at 253, would be on notice that "inappropriate material" includes "racially insensitive and violent" campaign materials, the FAC's allegations, construed in the light most favorable to plaintiff, cannot be read to support a finding that, as a matter of law, the video was in fact racially insensitive and violent.

Accordingly, to the extent alleged against Willford, the Fourth Cause of Action is not subject to dismissal.

### f. Fifth Cause of Action: Merits

As noted, plaintiff, in support of the Fifth Cause of Action, alleges Willford discriminated against him in violation of the Equal Protection Clause, by imposing

disciplinary sanctions on the basis of his religion, race, and political beliefs.  (See FAC ¶ 145.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Equal Protection Clause).  An equal protection claim is cognizable where a defendant's enforcement of a rule "results in members of a certain group being treated differently from other persons based on membership in that group," unless "the distinction made between the groups is justified."  See United States v. Lopez-Flores, 63 F.3d 1468, 1472 (9th Cir. 1995).

Willford contends plaintiff has failed to allege any facts to support a finding that she afforded more favorable treatment to similarly situated persons who were not members of the groups in which plaintiff states he is a member.  The Court agrees.

In support of his claim, plaintiff alleges Willford has not imposed any sanctions on students who produced "similar videos." (See FAC ¶ 139.)  In particular, according to plaintiff, videos created by other students contained, respectively, "sexual assault and harassment, torture and . . . an inference that . . . a rival Catholic school is a terrorist organization," as well as "drug use," and "explicit sexual imagery of rubbing nipples and performing a striptease while money is thrown."  (See FAC ¶ 139.)  Additionally, plaintiff alleges, a previous ASB President sent a "tweet" that "mock[ed] Catholics," and another student created and posted a "Pepe the Frog" poster in connection with a sporting event.[6] (See id.)  Plaintiff does not allege, however, facts to support a finding that any of those students were not members of the groups in which plaintiff states he is a member.

//

---

[6]Plaintiff alleges that "Pepe the Frog . . . typically connotes racist, anti-Semitic or other bigoted theme[s]."  (See id.)

Accordingly, to the extent alleged against Willford, the Fifth Cause of Action is subject to dismissal.[7]

### g. Sixth Cause of Action: Merits

In the Sixth Cause of Action, plaintiff, as noted, alleges Willford violated Title VI by imposing disciplinary sanctions on the basis of his religion and race. (See FAC ¶¶ 156, 158). As also noted, Title VI proscribes only "classifications that would violate the Equal Protection Clause," and, consequently, where, as here, a plaintiff's claim that he was deprived of equal protection is not sufficiently pleaded, a Title VI claim based on the same facts likewise fails. See Grutter, 539 U.S. at 343 (internal quotation, citation and alteration omitted).

Accordingly, to the extent alleged against Willford, the Sixth Cause of Action is subject to dismissal.

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss are hereby GRANTED in part and DENIED in part, as follows:

1. The First, Fifth and Sixth Causes of Action are DISMISSED as to all defendants.

2. To the extent alleged against the District, the Second and Fourth Causes of Action are DISMISSED.

3. To the extent alleged against the District and Gilbert, the Third Cause of Action is DISMISSED.

4. In all other respects, the motions are DENIED.

---

[7] At least some of the alleged speech by other students occurred in connection with school-sponsored events other than elections. To the extent defendants contend plaintiff is, as a matter of law, unable to establish that students whose speech is made in connection with non-election activities are similarly situated to students who engage in campaign speech, the Court is not necessarily persuaded. Nevertheless, should plaintiff amend his equal protection claim, plaintiff may wish to clarify how students whose speech is made in connection with non-election activities are, for purposes of the Equal Protection Clause, similarly situated to students whose speech is made in connection with student elections.

16

If plaintiff wishes to file a Second Amended Complaint for purposes of curing any of the deficiencies identified above, such pleading shall be filed no later than June 20, 2016. Plaintiff may not, however, add any new claims or new defendants without first obtaining leave of court. See Fed. R. Civ. P. 15(a)(2).

**IT IS SO ORDERED.**

Dated: June 1, 2018

MAXINE M. CHESNEY
United States District Judge