IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.Y., through his guardians David and Leilanie Yu,<br><br>Plaintiff,<br><br>v.<br><br>SAN RAMON VALLEY UNIFIED SCHOOL DISTRICT, et al.,<br><br>Defendants. | Case No. 17-cv-03906-MMC<br><br>**ORDER GRANTING ADMINISTRATION DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART WILLFORD AND GILBERT'S MOTION TO DISMISS; AFFORDING PLAINTIFF LIMITED LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 68, 69 |

Before the Court are two motions: (1) "Motion to Dismiss Plaintiff's Second Amended Complaint," filed July 5, 2018, by defendants San Ramon Valley Unified School District, Rick Schmitt, Dr. Jason Reitman, Ruth Steele, Jamie Keith, Dearborn Ramos, Jason Krolikowski, and Bernie Phelan (collectively, "Administration Defendants"); and (2) "Motion to Dismiss Plaintiff's Second Amended Complaint," filed July 3, 2018, by defendants Janet Willford ("Willford") and Kerri Christman Gilbert ("Gilbert"). The motions have been fully briefed. Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

**BACKGROUND**

In the operative complaint, the Second Amended Complaint ("SAC"), plaintiff N.Y., who previously was a student attending San Ramon Valley High School ("SRVHS"),[2] alleges he was deprived of his constitutional rights in connection with a student election

---

[1] By order filed August 13, 2018, the Court took the matters under submission.

[2] Plaintiff has now graduated. (See SAC ¶ 141.)

conducted in 2017.

Specifically, plaintiff alleges, in February 2017, when he was Junior Class President, he ran for Associated Student Body ("ASB") President. (See SAC ¶¶ 1-2, 33.) The rules applicable to the election included the following provision: "Please have discretion when creating campaign signs and slogans, as any inappropriate material will be removed and the candidate is subject to be pulled from the election." (See SAC ¶ 35.)

Plaintiff alleges that, "[i]n conjunction with running for office," he and other students created a "short parody video" in which plaintiff "rescues a fellow student who had been captured by a radical group with the intention of forcing him to participate in an international video gaming competition." (See SAC ¶¶ 37, 39.) According to plaintiff, two students, "both of whom are practicing Muslim Afghan-Americans, volunteered to play the antagonists." (See SAC ¶ 38.) Plaintiff alleges "the school administration found [the video] 'inappropriate'," and, in light of such determination, "stripped [plaintiff] of his title as Junior Class President" and "permanently expelled" him from the school's "Leadership Class" (see SAC ¶ 61);[3] additionally, plaintiff alleges, defendants "suppressed his election to ASB President" (see id.), "even though he [had] received the highest number of votes" (see SAC ¶ 8).

Plaintiff alleges that, thereafter, he "filed an ex parte petition for writ of mandamus" in state court, which was "denied" (see SAC ¶¶ 27-28), and that his counsel then "informed" defendants that plaintiff "intended to file a lawsuit based on [d]efendants' unconstitutional acts" (see SAC ¶ 64). According to plaintiff, although San Ramon Valley Unified School District ("the District") thereafter "reinstated" plaintiff as Junior Class President, allowed him to "return[ ] to the Leadership [C]lass," and "confirmed" that plaintiff would serve as ASB President for the 2017-2018 school year (see SAC ¶ 65), defendants engaged in "harassment directed at him in retaliation for standing up for Free

---

[3]Plaintiff alleges the Leadership Class met "four times a week" and the students enrolled therein received "10 credits per year towards graduation." (See SAC ¶ 33.)

1 Speech" (see SAC ¶ 90).

2     Based on the above allegations, plaintiff alleges six Causes of Action, the First through Fifth under 42 U.S.C. § 1983 and the Sixth under Title VI of the Civil Rights Act of 1964. In particular, the First Cause of Action alleges defendants violated the First Amendment by promulgating and enforcing the above-quoted campaign provision prohibiting "inappropriate material" (see SAC ¶¶ 93-94); the Second Cause of Action alleges defendants violated the First Amendment by imposing disciplinary sanctions on plaintiff (see SAC ¶ 104); the Third Cause of Action alleges defendants violated the First Amendment by retaliating against plaintiff after he sought relief in court (see SAC ¶¶ 113, 116); the Fourth Cause of Action alleges defendants deprived plaintiff of due process by not providing him "adequate notice of what [they] considered to be inappropriate speech that would subject students to disciplinary actions" (see SAC ¶ 130); the Fifth Cause of Action alleges defendants imposed disciplinary sanctions on plaintiff based on his race and religion (see SAC ¶¶ 156-157); and, lastly, the Sixth Cause of Action alleges defendants, in violation of Title VI, discriminated against him on the basis of his race. (See SAC ¶¶ 171, 173-174.)

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

3

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

By order filed June 1, 2018 ("June 1 Order"), the Court granted in part and denied in part defendants' motions to dismiss the First Amended Complaint ("FAC"). In so doing, the Court dismissed with leave to amend the following claims alleged therein: (1) the First, Fifth and Sixth Causes of Action in their entirety; (2) the Second and Fourth Causes of Action to the extent alleged against the District; and (3) the Third Cause of Action to the extent alleged against the District and Gilbert. Plaintiff thereafter filed the SAC, in which he has amended each of the dismissed claims, with the exception that he no longer asserts the Second through Fifth Causes of Action against the District.

By the instant motions, defendants seek an order dismissing certain of those amended claims. The Court next considers the challenged claims, in turn.

**A. First Cause of Action**

In the First Cause of Action, plaintiff alleges the campaign provision prohibiting "inappropriate material" is unconstitutional (see SAC ¶¶ 93-94), as to which claim plaintiff seeks "declaratory and injunctive relief" (see SAC at 24:11-12).

In its June 1 Order, the Court dismissed the First Cause of Action, as alleged in the FAC, for the reason that plaintiff failed to allege any facts to support a finding that, as of the date on which plaintiff commenced the above-titled action, there was any likelihood that the challenged rule would be applied to him in the future, and, consequently, plaintiff

lacked standing to seek the relief requested.  (See June 1 Order at 4:24 - 5:13.)

In the SAC, plaintiff fails to allege any facts to support a finding that there is now, or as of the date on which plaintiff commenced the instant action there was, any likelihood the rule could be applied to him again.  Plaintiff argues the following new allegation nonetheless is sufficient to cure the deficiency identified in the June 1 Order:

> Because each student affected by [the challenged] provision may graduate shortly after bringing an action challenging the provision, the provision falls into the unique species of cases covered by the well-established doctrine that when problems capable of repetition, yet evading review[,] are raised by plaintiffs who having during the course of the litigation, primarily through simple passage of time, lost for one reason or another some of the objective adverseness which characterized their initial posture, the suits begun by such plaintiffs will not necessary be defeated.  Thus, in spite of [p]laintiff's recent graduation he has standing to proceed with his facial challenge seeking to enjoin the enforcement of the [campaign provision].

(See SAC ¶ 97 (internal footnote omitted).)

The principle on which plaintiff relies pertains where a plaintiff has standing to seek injunctive relief at the commencement of the case and the defendant contends events occurring subsequent to the filing thereof have rendered the dispute moot, i.e., where "the duration of the challenged action . . . [is] too short to be fully litigated" and there is "a reasonable likelihood that the same party will be subject to the action again."  See N.A.A.C.P. v. City of Richmond, 743 F.2d 1346, 1350-51, 1353 (9th Cir. 1984) (holding, where dispute concerning plaintiff's asserted injury from application of city ordinance, specifically, preclusion from marching in parade, not capable of resolution before date of event, plaintiff had standing to contest constitutionality of ordinance given "reasonable likelihood" plaintiff would "be subject to the ordinance again").  Here, by contrast, plaintiff, as noted, has failed to allege any facts to support a finding that, at the commencement of the instant case, there remained any conduct to enjoin in connection with the 2017 election, nor has he alleged any facts to support a finding that the challenged campaign provision is likely to be applied to him in the future.  Consequently, the above-quoted added allegation does not cure the deficiency identified in the June 1 Order.

1 Accordingly, the First Cause of Action is subject to dismissal without further leave
2 to amend.

**B. Third Cause of Action**

In the Third Cause of Action, plaintiff alleges defendants, in violation of the First Amendment, retaliated against him after he filed a petition for a writ of mandate. With respect to Gilbert, a "Resident Substitute Teacher" (see SAC ¶ 26), plaintiff alleges said defendant engaged in retaliation when she "published a series of posts" on a "Facebook page for the parents of SRVUSD [students]" (see SAC ¶ 68). In particular, plaintiff alleges, after Gilbert learned that the District had "reversed the punitive actions taken against [plaintiff]" (see SAC ¶ 67), she posted on Facebook statements explaining that she "disagree[d]" with the District's decision (see SAC ¶ 68; see also ¶ 122).

In its June 1 Order, the Court dismissed the Third Cause of Action, as alleged in the FAC and to the extent asserted against Gilbert, in light of plaintiff's failure to allege facts to support a finding that Gilbert, in posting comments on Facebook, was acting under color of state law. (See June 1 Order at 11:22 – 12:28.)

In the SAC, plaintiff has amended to add allegations that Gilbert's postings on Facebook "discussed a meeting held at the school where a high-ranking District administrator was present," and that, as she did not "disclaim" in her postings that she was not speaking on behalf of SRVHS, her postings "were reasonably understood by readers as official action on behalf of the school." (See SAC ¶ 121.) Additionally, plaintiff has added the allegation that Gilbert's postings "suggest[ ] that she spoke from a position of authority" and "from the position of an insider." (See SAC ¶ 122.)

"[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." West v Atkins, 487 U.S. 42, 50 (1988). One "requirement[ ]" that must be met in order to show a defendant has acted under color of state law is that the defendant's challenged action was "performed while the [defendant] [was] acting, purporting, or pretending to act in the performance of his or her official duties." See Anderson v. Warner, 451 F.3d 1063, 1068-

1  69 (9th Cir. 2006) (internal quotation and citation omitted).

Here, plaintiff does not allege any facts to support a finding that Gilbert's official duties included posting comments on Facebook pages or otherwise speaking on behalf of the District. i.e., that Gilbert was acting in the performance of her official duties. Similarly, although plaintiff, as noted, now alleges Gilbert did not affirmatively "disclaim" in her posts that she was not speaking on behalf of the District, plaintiff does not allege any facts to support a finding that Gilbert ever purported to or pretended to be speaking on its behalf.

Lastly, the Court finds unpersuasive plaintiff's argument that, "[b]y commenting on events that she was privy to only because of her position, [Gilbert] acted under color of state law." (See Pl.'s Opp. at 8:4-5.) "[I]f [courts] were to consider every comment by a state employee to be state action, the constitutional rights of public employees to speak their minds as private citizens would be substantially chilled to the detriment of the marketplace of ideas." Naffe v. Frey, 789 F.3d 1030, 1038 (9th Cir. 2015) (internal quotation and citation omitted) (rejecting argument that defendant's internet postings constituted state action where, although defendant "drew on his experiences as a Deputy District Attorney to inform his blog posts and Tweets," he "did not claim to act in his official capacity"); see also City of San Diego v. Roe, 543 U.S. 77, 82 (2004) (noting "public employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers, operations which are of substantial concern to the public"; further noting, "[w]ere they not able to speak on these matters, the community would be deprived of informed opinions on important public issues.").

According, the Third Cause of Action, to the extent asserted against Gilbert, is subject to dismissal without further leave to amend.

## C. Fifth Cause of Action

In the Fifth Cause of Action, plaintiff alleges that defendants deprived plaintiff of equal protection by imposing disciplinary sanctions on the basis of his religion and race

7

1  (see SAC ¶ 145, 156), namely, "Catholic" and "Asian" (see SAC ¶ 85).[4]  In support

2  thereof, plaintiff alleges that other students created "videos" and "projects" that

3  "addressed subjects similar to those the [d]efendants condemned [p]laintiff for" and that

4  were "far more egregious" than plaintiff's video (see SAC ¶ 146), but that none of those

5  students received "any condemnation or sanctions" (see SAC ¶ 150).  In particular,

6  plaintiff alleges, the videos variously contained (1) "extensive imagery of kidnapping,

7  sexual assault and harassment, torture and . . . an inference that . . . a rival Catholic

8  school is a terrorist organization," (2) "drug use," and (3) "explicit sexual imagery of

9  rubbing nipples and performing a striptease while money is thrown."  (See SAC ¶ 146.)

10  Additionally, plaintiff alleges, a previous ASB President posted a "tweet" that "mock[ed]

11  Catholics," and another student created and posted a "Pepe the Frog" poster in

12  connection with a "football match."[5]  (See id.)

13        In its June 1 Order, the Court dismissed the Fifth Cause of Action, as alleged in

14  the FAC, for the reason that plaintiff had not alleged facts to support a finding that the

15  other students referenced in the FAC were not members of at least one of the groups,

16  namely Catholics and Asians, in which plaintiff stated he was a member.  (See June 1

17  Order at 15:12 – 16:2.)

18        In the SAC, plaintiff has amended to add an allegation that "all the students

19  participating in the videos" on which plaintiff bases his claim are "Caucasian" (see SAC

20  ¶ 147), and that "many belonged to Willford's church and religion" (see id.), specifically,

21  "Community Presbyterian Church ('CPC')" (see SAC ¶ 144) and, impliedly, Presbyterian.

22  Plaintiff also alleges that the student who sent the above-referenced "tweet" is a

---

[4]Plaintiff also alleges that some "ABS officer positions" were not "elected by the student body," but, rather, were filled by appointments made by Willford, and that Willford, in making such appointments, "disproportionate[ly]" appointed Caucasians, females, and members of her church.  (See SAC ¶ 144.)  As plaintiff does not allege he sought an appointment, the Court does not understand plaintiff to be alleging his equal protection rights were violated by any such appointments.

[5]Plaintiff alleges that "Pepe the Frog . . . typically connotes racist, anti-Semitic or other bigoted theme[s]."  (See id.)

8

"Caucasian and a CPC member" (see SAC ¶ 146) and that the student who posted the "Pepe the Frog" poster is "Caucasian" (see SAC ¶¶ 85, 146).

Defendants do not argue that plaintiff has failed to cure the deficiency identified in the June 1 Order. Defendants do argue, however, that the Fifth Cause of Action is subject to dismissal for other reasons. As set forth below, the Court agrees.

First, defendants contend the other students and plaintiff are not similarly situated. In particular, relying on plaintiff's allegations that the other students' material was not created in connection with school elections (see SAC ¶¶ 146, 149), defendants point out that, in contrast to plaintiff's situation, the conduct of those students was not governed by the election rules. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (holding "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike") (quoting Equal Protection Clause). Although the Court does not discount the possibility that, for purposes of the Equal Protection Clause, plaintiff and students who violated school rules or policies other than those governing elections could be deemed similarly situated, plaintiff has not alleged sufficient facts to support a finding that any of the other students were subject to a rule or policy that, if violated, could result in discipline arguably comparable to that imposed on plaintiff.[6]

Second, as the Administration Defendants point out, to the extent plaintiff seeks monetary damages, he seeks them against defendants only in their "official capacities" (see SAC at 35:3-4), and, as the Administration Defendants further note, and plaintiff acknowledges in his opposition, claims for monetary relief are not cognizable under

---

[6]The videos and the poster were, according to plaintiff, approved by Willford or otherwise sanctioned by SRVHS (see SAC ¶ 146), thus suggesting the existence of a rule or policy, although the nature thereof is unidentified by plaintiff. As to the student who sent the "tweet," plaintiff does not allege that any defendant was aware of the content of the tweet during the time the sender was a student at SRVHS, or, if he or she was aware of it, that such conduct would have been governed by a school rule or policy.

9

§ 1983 when asserted against a state official in his or her official capacity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 and n.10 (1989) (holding, with exception of claims for injunctive relief, state officials "acting in their official capacities" may not be sued under § 1983); Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 251 (9th Cir. 1992) (holding California school districts are "state agenc[ies]" for purposes of § 1983).

Accordingly, the Fifth Cause of Action is subject to dismissal. As the deficiencies identified above were not previously identified by the Court, however, plaintiff will be afforded further leave to amend this claim.

### D. Sixth Cause of Action

In the Sixth Cause of Action, plaintiff alleges that Willford, by assertedly "recommend[ing] to the administration that [plaintiff] be disqualified from the election for ASB president" (see SAC ¶168), engaged in discrimination on the basis of race, in violation of Title VI of the Civil Rights Act of 1964.[7] Plaintiff also alleges that the other defendants "knew or should have known" that Willford's actions were "motivated by animus towards [plaintiff] based on his race" but nonetheless "ratified" her actions. (See SAC ¶¶ 174-75.)

Title VI "proscribes only those racial classifications that would violate the Equal Protection Clause"; consequently, where a plaintiff's claim that he was deprived of equal protection on account of his race fails on its merits, a Title VI claim based on the same facts likewise fails. See Grutter v. Bollinger, 539 U.S. 306, 343 (2003) (internal quotation, citation and alteration omitted).[8]

---

[7] Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." See 42 U.S.C. § 2000d. Plaintiff alleges SRVUSD receives federal financial assistance. (See SAC ¶ 164.)

[8] To the extent the Administration Defendants argue they cannot be sued for monetary damages in their respective official capacities, the Court disagrees. Although plaintiffs' claims against defendants in their official capacities are, in effect, claims against the SRVUSD, Congress "expressly abrogated States' sovereign immunity against suits brought in federal court to enforce Title VI." See Alexander v. Sandoval, 532 U.S. 275, 280 (2001).

10

Accordingly, as plaintiff's equal protection claim is subject to dismissal, the Sixth Cause of Action likewise is subject to dismissal, with leave to amend.

**E. Punitive Damages**

The SAC includes a prayer for punitive damages. (See SAC, prayer ¶ E.) Willford argues such request, to the extent asserted against her, should be dismissed.[9] Specifically, relying wholly on California law, Willford contends plaintiff has not alleged facts sufficient "to establish the required element of malice." (See Willford/Gilbert Mot. at 10:19-22.)

In that regard, in support of his remaining claims against Willford, plaintiff alleges said defendant imposed sanctions on him for violating the "inappropriate material" campaign provision even though she acknowledged to him that the provision was "unclear" (see SAC ¶ 60), and that, after plaintiff filed a petition for a writ of mandamus, she allegedly retaliated against him by, inter alia, "encouraging students to express hostility toward [plaintiff]" and "disseminating through social media additional information from [plaintiff's] private school records" (see SAC ¶ 116).

Assuming, arguendo, such allegations would not support a finding of malice, the standards for awarding punitive damages under § 1983 are set by federal, rather than state, law, and the Supreme Court has rejected the argument that, for purposes of § 1983, an award of punitive damages must be based on a finding of "malicious intent." See Smith v. Wade, 461 U.S. 30, 51-55 (1983). Rather, such an award can be based on a finding of "reckless or callous indifference to the federally protected rights of others." See id. at 56.

As Willford has not argued that the allegations in the SAC cannot meet the "reckless or callous indifference" standard, see id., the Court declines to dismiss the punitive damages allegations at the pleading stage.

---

[9] Although Gilbert also challenges plaintiff's prayer for punitive damages, the Court does not address such argument herein, as the sole claim plaintiff alleges against Gilbert, specifically, the Third Cause of Action, will be dismissed without leave to amend.

11

**CONCLUSION**

For the reasons stated above, the Administration Defendants' motion to dismiss is hereby GRANTED, and Willford and Gilbert's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

1. The First Cause of Action is DISMISSED without further leave to amend.

2. The Third Cause of Action, to the extent alleged against Gilbert, is DISMISSED without further leave to amend.

3. The Fifth and Sixth Causes of Action are DISMISSED with leave to amend.

4. To the extent Willford and Gilbert's motion seeks an order dismissing the prayer for punitive damages as asserted against Willford, the motion is DENIED.

If plaintiff wishes to file a Third Amended Complaint for purposes of curing the deficiencies set forth above with respect to the Fifth and/or Sixth Causes of Action, such pleading shall be filed no later than October 1, 2016. Plaintiff may not, however, add any new claims or new defendants without first obtaining leave of court. See Fed. R. Civ. P. 15(a)(2).

**IT IS SO ORDERED.**

Dated: September 14, 2018

MAXINE M. CHESNEY
United States District Judge