.91617

MARK E. DAVIS—BAR NO. 79936
ADAM J. DAVIS—BAR NO. 275964
PATRICK MALLOY—BAR NO. 308249
**DAVIS & YOUNG, APLC**
1960 The Alameda, Suite 210
San Jose, CA  95126
Phone:  669.245.4200
Fax:      408.985.1814
Email: mdavis@davisyounglaw.com
Email: adavis@davisyounglaw.com
Email: pmalloy@davisyounglaw.com

Attorneys for Defendants
SAN RAMON VALLEY UNIFIED
SCHOOL DISTRICT; RICK SCHMITT;
DR. JASON REIMANN; RUTH
STEELE; JAMIE KEITH; DEARBORN
RAMOS; JASON KROLIKOWSKI, and
BERNIE PHELAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.Y., through his guardians David and Leilanie Yu,<br><br>                Plaintiff,<br><br>        vs.<br><br>SAN RAMON VALLEY UNIFIED SCHOOL DISTRICT; RICK SCHMITT; DR. JASON REIMANN; RUTH STEELE; JAMIE KEITH; DEARBORN RAMOS; JASON KROLIKOWSKI, BERNIE PHELAN; and JANET WOLFORD,<br><br>                Defendants. | Case No. **3:17-CV-03906-MMC**<br><br>**DEFENDANTS' JOINT REQUEST FOR JUDICIAL NOTICE REGARDING PLAINTIFF'S CONCURRENT COMPLAINT FILED IN CONTRA COSTA COUNTY SUPERIOR COURT**<br><br>**[FRE 201]** |

Request for Judicial Notice re: Plaintiff's Concurrent Complaint Filed in Contra Costa County Superior Court
{91617/00433488-1}

.91617

1   Defendants, and each of them, by and through their respective counsel of record,

2   hereby request this Court take judicial notice pursuant to Federal Rule of Evidence

3   201(b)(2) of the following facts:

4   1.   Complaint filed by Plaintiff in Contra Costa County Superior Court on

5   February 1, 2017; *John Doe v. San Ramon Valley Unified School District, et al.*, Case No.

6   C19-00271.   A true and correct copy of said Complaint has been attached hereto as

7   **Exhibit A**.

8   Pursuant to Federal Rules of Evidence 201, the Court may take judicial notice of a

9   Court document as it is capable of accurate and ready determination by resort to sources

10   whose accuracy cannot reasonably be questioned.   See Fed. R. Evid. 201(b)(2); see also

11   *Hott v. City of San Jose*, 92 F.Supp.2d 996, 998 (N.D. Cal. 2000); *Suzuki v. Hitachi Global*

12   *Storage Techs., Inc.*, 2007 U.S. Dist. LEXIS 51605, p. 14, fn. 3 (N.D. Cal. 2007).

13   For the above-stated reasons, judicial notice of Plaintiff's Contra Costa County

14   Superior Court Complaint is appropriate and necessary for the Court.

15

16   DATED:       March 29, 2019

17   DAVIS & YOUNG, APLC

18

19   By ___/s/ Mark E. Davis_____
         Mark E. Davis, Esq.

20       Adam J. Davis, Esq.
         Patrick Malloy, Esq.

21       Attorneys for Defendants
         SAN RAMON VALLEY UNIFIED

22       SCHOOL DISTRICT; RICK SCHMITT;
         DR. JASON REIMANN; RUTH

23       STEELE; JAMIE KEITH; DEARBORN
         RAMOS; JASON KROLIKOWSKI, and
         BERNIE PHELAN

24

25

26

27

28

Request for Judicial Notice re: Plaintiff's Concurrent Complaint Filed in Contra Costa County Superior Court
{91617/00433488-1}

# EXHIBIT "A"

Defendants' Joint Request for Judicial Notice (FRE 201)

1   Michael E. Cardoza, Esq. (SBN 52264)
    Jacqueline C. Murphy, Esq. (SBN 187732)
2   THE CARDOZA LAW OFFICES, INC.
    1407 Oakland Blvd., Suite 200
3   Walnut Creek, California 94596
    Telephone: (925) 274-2900
4   Facsimile: (925) 274-2910
    Email: jmurphy@cardolaw.com
5

**FILED**

**D. WAGNER**

6   Attorneys for Plaintiff
    John Doe

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9         COUNTY OF CONTRA COSTA – UNLIMITED JURISDICTION

10

11   JOHN DOE,                )   Case No.   **C 1 9 - 0 0 2 7 1**

12           Plaintiff,       )   **COMPLAINT FOR DAMAGES**

13      vs.                   )

14   SAN RAMON VALLEY UNIFIED SCHOOL )
    DISTRICT; RICK SCHMITT in his personal )
15   and official capacities as Superintendent of the )
    San Ramon Valley Unified School District; )
16   DR. JASON REIMANN, in his personal and )
    official capacities as Director of Education )
17   Services of the San Ramon Valley Unified )
    School District; RUTH STEELE, in her )
18   personal and official capacities as Principal of )
    San Ramon Valley High School; JASON )
19   KROLIKOWSKI, in his personal and official )
    capacities as Principal of San Ramon Valley )
20   High School; JAMIE KEITH in her personal )
    and official capacities as Assistant Principal of )
21   San Ramon Valley High School; DEARBORN )
    RAMOS in her personal and official capacities )
22   as Assistant Principal of San Ramon Valley )
    High School; BERNIE PHELAN in his )
23   personal and official capacities as Assistant )
    Principal of San Ramon Valley High School; )
24   JANET WILLFORD, in her personal )
    and official capacities as Leadership Teacher of )
25   San Ramon Valley High School; and KERRI )
    CHRISTMAN GILBERT in her personal and )
26   official capacities as Resident Substitute )
    Teacher of San Ramon Valley High School, )
27   Defendants.               )
                            )
28                                 )

PER LOCAL RULE, THIS
CASE IS ASSIGNED TO
DEPT. 39 FOR ALL
PURPOSES.

**Complaint for Damages**            **Page 1**

1    Plaintiff John Doe complains as follows:

2    **INTRODUCTION**

3    1.   By all accounts Plaintiff John Doe ("Plaintiff") is an outstanding student.  He has been
4    involved in student government since elementary school.

5    2.   In February 2017, while serving as Junior Class President, Plaintiff ran for the student
6    government position that would be the crowning achievement of his high school career —
7    Associated Student Body (ASB) President.  His term would coincide with his senior year.

8    3.   In connection with his candidacy, Plaintiff and four fellow students from San
9    Ramon Valley High School (SRVHS) created a campaign video.  The video was a parody in
10   which Plaintiff portrayed a James Bond type character who saves a fellow student captured by
11   kidnappers.

12   4.   Although the First Amendment affords political speech the highest level of speech
13   protection and the video did not cause a material and substantial disruption to school
14   activities, school administrators punished Plaintiff for his protected speech.

15   5.   Defendants punished Plaintiff even though by their own admission the video did not
16   contain "hate speech."

17   6.   Creating a video as a campaign tool was not required nor was it forbidden.  Candidates
18   were given "discretion when creating campaign" materials and empowered to make a decision
19   as to what constituted appropriate content for their speech. The election rules seemed to allow
20   a candidate to express creativity and show something unique, which will set one apart
21   from the other candidates.

22   7.   Also, by their own admission, the guideline setting forth what constitutes permissible
23   content for campaign materials is so vague that it does not give a student of ordinary
24   intelligence a reasonable opportunity to know what is prohibited and allow school
25   administrators unbridled discretion to discipline students based on the content of their speech.

26   8.   Plaintiff did not post the video himself and therefore did not have the ability to remove
27   the video from YouTube. However, immediately after a fellow student told him that a few
28   other students found the video offensive, he asked the student who posted the video to remove

1  it.

2  9.  The Defendants' punishment of Plaintiff was severe. The school stripped him of his

3  position as Junior Class President and disqualified him in the election for Associated Student

4  Body (ASB) President even though he received the highest number of votes.  The school also

5  expelled him from his student Leadership class.  He remained expelled from that class for

6  most of the Spring 2017 Semester.

7  10. The school based its punishment on an unacceptably vague election rule prohibiting

8  "inappropriate material."

9  11. Not only was the rule vague on its face, but the School applied the rule to Plaintiff in a

10  discriminatory manner.

11  **PARTIES**

12  12. Plaintiff was at all times mentioned in this complaint a student at San Ramon Valley

13  High School and a resident of Contra Costa County, California.

14  13. Plaintiff is informed and believes and based thereon alleges that SAN RAMON

15  VALLEY UNIFIED SCHOOL DISTRICT ("SRVUSD) is a public entity in the

16  14. State of California duly organized under the laws of the State of California, and more

17  specifically the provisions of the California Education Code, to provide, among other things,

18  education to minors in public schools within the District. SRVUSD has at all times mentioned

19  herein has had its principal place of business in Contra Costa County, California. Defendant

20  SRVUSD is responsible for enacting and enforcing its customs, policies, practices, and laws

21  related to the suspension and student discipline complained about below.

22  15. Plaintiff is informed and believes and based thereon alleges that Defendant RICK

23  SCHMITT is a natural person and a citizen of the United States and the State of California.

24  Plaintiff sues Mr. Schmitt in both his personal capacity and in his official capacity as

25  Superintendent of the San Ramon Valley Unified School District.

26  16. Plaintiff is informed and believes and based thereon alleges that Defendant DR.

27  JASON REIMANN is a natural person and a citizen of the United States and the State of

28  California.  Plaintiff sues Dr. Reimann in both his personal capacity and in his official

1  capacity as Director of Education Services of the San Ramon Valley Unified School District.

2      17. Plaintiff is informed and believes and based thereon alleges that Defendant RUTH

3  STEELE is a natural person and a citizen of the United States and the State of California.

4  Plaintiff sues Ms. Steele in both her personal capacity and in her official capacity as Principal

5  of San Ramon Valley High School.

6      18. Plaintiff is informed and believes and based thereon alleges that Defendant JASON

7  KROLIKOWSKI is a natural person and a citizen of the United States and the State of

8  California.  Plaintiff sues Mr. Krolikowski in both his personal capacity and in his official

9  capacity as Principal of San Ramon Valley High School.

10     19. Plaintiff is informed and believes and based thereon alleges that Defendant JAMIE

11 KEITH is a natural person and a citizen of the United States and the State of California.

12 Plaintiff sues Ms. Keith in both her personal capacity and in her official capacity as Assistant

13 Principal of San Ramon Valley High School.

14     20. Plaintiff is informed and believes and based thereon alleges that Defendant

15 DEARBORN RAMOS is a natural person and a citizen of the United States and the State of

16 California.  Plaintiff sues Ms. Ramos in both her personal capacity and in her official capacity

17 as Assistant Principal of San Ramon Valley High School.

18     21. Plaintiff is informed and believes and based thereon alleges that Defendant BERNIE

19 PHELAN is a natural person and a citizen of the United States and the State of California.

20 Plaintiff sues Mr. Phelan in both his personal capacity and in his official capacity as Assistant

21 Principal of San Ramon Valley High School.

22     22. Plaintiff is informed and believes and based thereon alleges that Defendant JANET

23 WILLFORD is a natural person and a citizen of the United States and the State of California.

24 Plaintiff sues Ms. Willford in both her personal capacity and in her official capacity as

25 Leadership Teacher of San Ramon Valley High School.

26                    **RELEVANT FACTS**

27     23. Plaintiff, is a resident of Contra Costa County, California.  He recently

28 graduated from San Ramon Valley High School.  Plaintiff carried a 3.85 grade point average.

Complaint for Damages                     Page 4

He has never been disciplined by the school for any reason.  Specifically, he has never bullied any other student, nor has he been accused of bullying another student.  To the contrary, he received the Safe School Ambassadors Appreciation Award for three consecutive years when he was at Charlotte Wood Middle School (CWMS) and was a member of the anti- bullying intervention club from 2012 to 2015, an honor bestowed with the recommendation of a teacher.

24. In addition, Plaintiff is active in many leadership, charitable, and other extra-curricular activities including:

- Black belt in Tae Kwon Do (assisted in teaching class to less advanced students)
- Elected as 4th Grade Student Council Representative
- Elected as 5th Grade Student Council Representative
- Member of CJSF (California Junior Scholarship Federation) at Charlotte Wood Middle School (CWMS)
- "Strong Work Ethic" Student of the Month – 6th Grade at CWMS
- 4.0 Honor Roll of Excellence Award – 6th Grade at CWMS
- Top 10% "Science" Achievement Award – 6th Grade at CWMS
- Top 10% "Core" Achievement Award - 6th Grade at CWMS
- "Safe School Ambassadors" Appreciation Award - 6th Grade at CWMS
- "Successful Student" Student of the Month – 7th Grade at CWMS
- 4.0 Honor Roll of Excellence Award – 7th Grade at CWMS
- Top 10% "Core" Achievement Award – 7th Grade at CWMS
- Top 10% "Physical Education" Achievement Award – 7th Grade at CWMS
- "Safe School Ambassadors" Appreciation Award - 7th Grade at CWMS
- "Good Citizenship" Student of the Month – 8th Grade at CWMS
- Top 10% "English" Achievement Award – 8th Grade at CWMS
- Top 10% "Physical Education" Achievement Award – 8th Grade at CWMS
- Top 10% "Science" Achievement Award – 8th Grade at CWMS

1  • Charlotte Wood "Student of the Year All Around Excellence" Award, 8th Grade at
2     CWMS
3  • "4.0 GPA for 3 years" Award, 8th Grade at CWMS
4  • "CAPER (Cooperation Achievement Progress Effort Responsibility)"
5  • Award (awarded only to students with Top 10% achievements
6  • "Student Ambassador for 3 years" Award, 8th Grade at CWMS (6th, 7th, and 8th
7     grade)
8  • Anti-bullying intervention club (must be recommended by teachers to be selected)
9  • Recommended for Accelerated Biology for 9th Grade (required Letter of
10    Recommendation from Science Teacher)- 8th Grade at CWMS
11 • Recommended for Advanced Geometry (required recommendation from Math
12    Teacher) - 8th Grade at CWMS
13 • CWMS Leadership Student (7th and 8th grade)
14 • Ran for President for 8th grade
15 • Chaired and Led the Wheelchair Foundation Fundraising Project
16 • Received a Letter of Recommendation for medical school from
17 • Ken Behring, Philanthropist and Founder of Wheelchair Foundation
18 • Raised over $3200 to send 21 wheelchairs to Honduras and Costa Rica
19 • Attended WE  day Charity event/Convention promoting Humanitarian Efforts
20 • Participated in the Capes 4 Heroes fundraiser / "build capes for kids with disabilities,
21    kids with life threatening illnesses and kids who just need to feel empowered."
22 • Head of End of the Year BBQ Dance and other school dances
23 • Head of the Veteran's Assembly in honor of Marine Corporal Chachi Corral
24 • Delivered presents to students of Cambridge Elementary School (Concord) for
25    Christmas Danville Little League Umpire (Since 7th Grade)
26 • 5th Year Senior Umpire for Danville Little League
27 • Asked to Umpire Championship Games for Danville Little League
28 • Umpired Majors upper division 13u

- Umpired Chachi Corral Tournament
- Umpired Joey Moore Tournament
- Umpired Brett Slinger Tournament
- 2013-2014, Certified U.S. Soccer Federation Referee
- Ran for President Freshmen Year at San Ramon Valley High School
- Won $200 from EBMUD (Water hyacinth science project)
- Third Place – Senior Division, Excellence in Water Research, Contra Costa County Science Fair
- 2015 Recipient, Certificate of Achievement for outstanding achievement in science and engineering innovation
- Accelerated Biology Student
- Ran for Sophomore President
- California Scholarship Federation (CSF) Member since Freshman Year
- HOSA (Health Occupation Students of America) Member since Sophomore Year
- Renaissance Award winner 9 times (3.5 GPA or higher per quarter)
- Awards Committee Leadership (Sophomore Year)
- Pitched for sponsorship of academic rewards for students
- Head of Staff Choice Awards where Teachers recognize students and honor them at a luncheon
- Glenview Aquatics Club Lifeguard
- 2016-2017 Elected Junior Class President
- 2015-2017 JV Volleyball player
- 2015-2016 Recipient of Athlete of the Month
- Participated in Eagle Scout Community Project: Create benches for Stone Valley Middle School (2017) or Stone Valley Middle School (2017)

25. He has taken the following Advanced/AP/Honors classes:

- Accelerated Biology
- Geometry

- Chemistry Honors
- AP Environmental Science
- AP U.S. History
- AP Psychology
- Spanish IV Honors
- Prior to the unconstitutional acts of the Defendants, Plaintiff served as the elected Junior
- Class President for the 2016-2017 school year.  In conjunction with his office, Plaintiff was enrolled in an elective Leadership Class. The class meets four times a week and counts 10 credits per year towards graduation.
- In February of 2017, Plaintiff ran for the elected ASB President position for the
- following academic year.

26. Plaintiff read and understood the provisions of the Leadership Election Package which included the following rules:

- Campaign signs and materials may be posted **beginning Monday at 6:00 A.M.** This includes posting anything to Twitter, Snapchat, Instagram, etc.
- There is a maximum budget of $75 for campaigning materials. Please keep your receipts as we will check them
- You may only have 30 signs up on campus at any given time. Yes, we count.
- *Please have discretion when creating campaign signs and slogans, as any inappropriate material will be removed, and the candidate is [sic] subject to be pulled from the election.*  (Emphasis in the original.)

27. At no time did the administration further explain or define "inappropriate material." Nor do the campaign rules cross reference any other school policies, rules, or procedures.

28. In conjunction with running for office, Plaintiff participated in the creation of a short parody video in which Plaintiff portrayed a James Bond type hero.  In the video, Plaintiff rescues a fellow student who had been captured by a radical group with the intention of forcing him to participate in an international video gaming competition.

29. Two of Plaintiff's fellow students at SRVHS, both of whom are practicing Muslim Afghan-Americans, volunteered to play the antagonists. Plaintiff and his fellow students produced the video off campus Saturday, February 4, 2017. The group did not use any school property or school equipment in conjunction with the production of the video. There was no script for the video. The students participated in developing the storyline and adlibbing dialogue. At the end of the day of filming, one of the other students took all the raw footage with him. The student edited the footage and at approximately 9:00 p.m. on February 6, 2017, he uploaded the final video to his (not the Plaintiff's) YouTube account. Plaintiff did not see the final version of the video before it was uploaded to YouTube.

30. The next morning, a fellow student sitting beside Plaintiff, told him that a couple of students found the video to be offensive. Plaintiff felt concerned, so he texted his fellow student and requested that he remove the video from YouTube. The fellow student complied. The video was online for about 12.5 hours, most of those through the night. YouTube statistics showed that the video had been viewed a total of approximately 30 times.

31. To the best of Plaintiff's knowledge, no one downloaded or further distributed the video.

32. At 2:36 p.m. on Tuesday, February 7, Plaintiff received a text from Janet Willford, his Leadership teacher who also runs the Leadership Program. Ms. Willford inquired about the video and requested a link. Plaintiff explained that the video had been removed from YouTube and thus, there was no longer any active link.

33. At 8:42 a.m. on Wednesday, February 8, Ms. Willford again texted Plaintiff, stating that she wanted to protect him, but that she needed to see the video to do so. Plaintiff and the other four students who created the video met with Ms. Willford at school that day and agreed to bring a copy of the video the following day.

34. Plaintiff is informed and believes and based thereon alleges that on February 9th, despite Ms. Willford's offer to watch the video together so that PLAINTIFF and the other four students could explain, she surreptitiously conspired with Chad Chochran, the Video Production teacher to retrieve the copy of the video from the student who edited and uploaded

Complaint for Damages                         Page 9

1 | the video on YouTube early in the morning.

2 |     35. Plaintiff is informed and believes and based thereon alleges that after receiving a

3 | copy of the video, Janet Willford viewed the video with at least one other teacher, other

4 | members of the SRVHS administration, as well as, other students in the Leadership Program

5 | without Plaintiff's knowledge or permission from him or his parents.

6 |     36. On the same day, just before 1:00 p.m., the administration summoned Plaintiff to the

7 | school administrative offices. Assistant Principal Dearborn Ramos and Assistant Principal

8 | Jamie Keith interrogated Plaintiff about the video and asked him to write a statement. Plaintiff

9 | hesitated because he believed they were demanding an admission of wrong doing.

10 |     37. Ms. Ramos belittled Plaintiff, accused him of being "smug" and "unremorseful."

11 | During the interrogation, Ms. Ramos and Ms. Keith interrogated Plaintiff, they played the

12 | video, and Ms. Keith pointed out suspension guidelines Plaintiff allegedly violated, although

13 | nothing in the video violated any of the guidelines. Keith followed up by asking what college

14 | Plaintiff wanted to attend and threatened that a suspension would have a significant effect in

15 | the admissions process in colleges. In a thinly veiled reference to the stereotype that Asians

16 | are poor drivers, she criticized his driving in the video stating that Plaintiff broke the law.

17 |     38. Later, Assistant Principal Bernie Phelan joined in the interrogation. Mr. Phelan

18 | focused on the imitation guns used in the video and argued that if a student brought a photo of

19 | himself holding a firearm, even if for recreational purposes or hunting with his father, the

20 | school would have the School Resource Officer keep him for questioning and get a warrant to

21 | search his house for contraband. Since no real guns were used in the video, this clearly was an

22 | effort to apply pressure by manufacturing charges.

23 |     39. Plaintiff had not eaten lunch and was not given an opportunity to eat lunch the entire

24 | time he was held. His interrogators did not even offer him water and he was not allowed to

25 | leave to use the restroom. In a tactic more appropriate for Guantanamo Bay, Assistant

26 | Principal Keith then ate her lunch in the interrogation room in front of Plaintiff.

27 |     40. The three assistant principals harassed, threatened, and intimidated Plaintiff by

28 | engaging in intense interrogation techniques and making repeated suspension threats.

1  Hungry, tired, thirsty, and in need of a restroom. Plaintiff eventually wrote the following

2  statement:

> Me and my friends got together on a Saturday to make a video for my ASB
> campaign. We all got together to make a James Bond type film. We wanted
> something entertaining and to keep the people who viewed it laugh. There was no
> script. Everyone came up with their own lines and everyone consented to their
> roles. After the video was released, there were a lot of kids that enjoyed the short
> film, but as soon as we got word that some people got offended by the video, we
> took it down immediately. We did not ever intend to hurt anybody's feeling or
> make them feel unsafe. When I was younger, I used to get bullied a lot. I don't
> really talk much about it now. I was beat by another student in a bathroom. I have
> never wished or want anybody to experience the pain that I felt, whether it is
> physical or verbal. I am sorry that this incident turned out the way that it did. I
> was not raised by my parents to stereotype, be a racist or offend other people. My
> intent for the video was to portray me as a hero like James Bond saving the day. I
> personally didn't expect the turnout want to be able to apologize personally to
> anyone that was affected. I understand that people didn't take it the way me and
> my friends wanted people to see it. I am sorry for all the trouble this has caused,
> for admin, other students, and especially my leadership teacher. This video does
> not depict my personal character nor ability to be a good student. I am not the
> type of person who doesn't care or selfish. I hope that this decision that I have
> made doesn't affect more people.

14  41. At no point did the interrogators explain what possible punishment Plaintiff faced

15  or what procedures or guidelines would be used to determine a proper punishment. He had no

16  opportunity to discuss the matter with his parents. In fact, the school never contacted his

17  parents about the incident. For reasons that remain unclear, the administrators contacted the

18  parents of the other four students involved but not Plaintiff's parents.

19  42. While the interrogation process for Plaintiff's four fellow students lasted less than

20  an hour, the interrogation process for Plaintiff with the Assistant Principal lasted almost three

21  hours. In violation of District policy, Plaintiff was even detained past the end of the school

22  day without notice to his parents. Although the interrogation was completed at 3:00 p.m.,

23  Plaintiff was detained in the administrative offices until approximately 3:20 p.m., ten minutes

24  after the election results were scheduled to be posted and 20 minutes past school hours ended.

25  Unsure why Plaintiff continued to be kept in the administrative offices, Assistant Principal

26  Keith asked another administrator if she could release Plaintiff

27  43. While administrators detained Plaintiff in the administrative offices, the school

28

1  announced that another student won the ASB President election. Plaintiff later learned that the
2  school administration had disqualified him from the election based solely on the video he and
3  his four fellow students produced. Therefore, Plaintiff's votes were simply disregarded.

4      44. On Monday, February 13, 2017, at an in-person meeting, Assistant Principal
5  Jamie Keith informed Plaintiff and his parents that because of the video and upon the
6  recommendation of Janet Willford, the school was expelling Plaintiff from the Leadership
7  class.

8      45. At the February 13, 2017 meeting, Ms. Keith provided a copy of a SRVUSD
9  Suspension Notice.  She did not fill out the student information or sign the form as the
10  Suspending Official. She merely checked the following violations:

11  • Possessed, sold, or otherwise furnished any  firearm, knife, explosive, or other
12      dangerous object, unless, in the case of possession of an object of this type, the pupil
13      obtained written permission to possess the item from a certificated school employee,
14      which is concurred in by the principal or the designee of the principal.

15  • Disrupted school activities or otherwise willfully defied the valid authority of
16      supervisors, teachers, administrators, school officials, or other personnel engaged in
17      the performance of their duties. Possessed an imitation firearm.  As used in this
18      section, "imitation firearm" means a replica of a firearm that is so substantially similar
19      in physical properties to an existing firearm as to lead a reasonable person to conclude
20      that the replica is a firearm.

21  • Harassed, threatened, or intimidated  a pupil who is a complaining witness or a
22      witness in a school disciplinary proceeding for the purpose of either preventing that
23      pupil from being a witness or retaliating against that pupil for being a witness, or both

24  • Engaged in an act of bullying, including, but not limited to, bullying committed by
25      means of an electronic act, as defined in subdivisions (f) and (g) of Section 32261,
26      directed specifically toward a pupil or school personnel.

27  • Harassment, threats, or intimidation creating an intimidating or hostile educational
28      environment (Ed Code 48900.4)

- Ms. Keith apparently intended the form as a threat, even though none of Plaintiff's
- actions violated any of the suspension guidelines, especially since they only apply to on campus behavior. Ms. Keith alluded to the intent to make an example out of Plaintiff, stating that if the School did not punish Plaintiff, it would create bad optics for the administration.

46. On Friday, March 10, 2017 at a meeting attended by Plaintiff, his parents, his attorney, and Defendants Willford and Steele, Principal Steele informed Plaintiff that the decision to remove him from the position of Junior Class President was final.

47. At the March 10th meeting, Defendant Willford admitted that the Leadership election guideline prohibiting "inappropriate material" was unclear. In fact, she proposed that PLAINTIFF create clearer election guidelines as part of his punishment.

48. For creating a video that the school administration found "inappropriate," the school stripped Plaintiff of his title as Junior Class President, suppressed his election to ASB President for the following year, and permanently expelled him from the Leadership Class. Defendants sanctioned Plaintiff for purportedly violating rules governing election materials for students running for leadership positions at SRVHS. Specifically, they claimed that Plaintiff violated the following rule set forth in the election packet: "Please have discretion when creating campaign signs and slogans, as any inappropriate material will be removed and the candidate is [sic] subject to be pulled from the election."

49. For several months, despite repeated requests, Defendants refused to reverse their decision.

50. During this time, Defendants refused to release the actual election results despite repeated requests from Plaintiff, his parents, and his counsel.

51. On May 15, 2017, Plaintiff's counsel informed the School District by letter that Plaintiff intended to file a lawsuit based on Defendants' unconstitutional acts. The letter demanded returning Plaintiff to the status quo anti, reimbursement for legal fees, damages, an apology, and "[i]mplementation of procedures designed to prevent future violations…".

52. On May 16, 2017, the District informed Plaintiff that effective May 18, 2017, Plaintiff

1   would be returned to the Leadership class and reinstated as Junior Class President. Further, the

2   District confirmed that Plaintiff "received the most votes" and that he will "serve in the position

3   of ASB Class President" for the 2017-2018 school year. The school refused Plaintiff's other

4   demands.

5       53. Although the Defendants seemed to accept responsibility on the surface, they continued

6   to castigate Plaintiff, both directly and by encouraging surrogates to retaliate against Plaintiff on

7   their behalf.

8       54. Plaintiff is informed and believes and based thereon alleges that on Thursday, May 18,

9   2017 an official from the School District believed to be Dr. Jason Reimann, spoke with the

10  Leadership class about Plaintiff Kerri Christman Gilbert, the resident substitute teacher of San

11  Ramon Valley High School, was also present. The message delivered to the students was that

12  the only reason the District reversed the punitive actions taken against Plaintiff was because

13  Plaintiff was suing the District, implying that the decision was only about avoiding

14  litigation rather than admitting the school errored and acted inappropriately. The presentation

15  was specifically designed to align the student body against Plaintiff.

16      55. Plaintiff is informed and believes and based thereon alleges that between May 23, 2017

17  and June 30, 2017, Ms. Gilbert published a series of posts concerning the topic on the Facebook

18  page for the parents of SRVUSD including the following:

19      Then we will agree to disagree. It is not about content it's about breaking the
       rules of the contract. What message does it send to the rest of the kids who
20     followed the rules. How about the kids who have been working towards
       becoming asb president their senior year. It sends the message that they can skirt
21     the rules and get away with it. What kind of kids are we raising that look for a
       way to get around what is stated. I was there when the kids were informed and
22     they were outraged and rightfully so. When he takes over he's going to have a
       heck of a time earning their respect. And respect is not granted it's earned. Next
23     school year ought to be interesting.

24      56. Plaintiff is informed and believes and based thereon alleges that Defendant Willford

25  contacted a leadership teacher at California High School (Cal High) and discussed having

26  Plaintiff address the Muslim Union of Cal High to publicly apologize for the video. Cal High

27  has a significantly higher population of Muslim students than SRVHS, and Defendant Willford's

28  intention was to publicly shame Plaintiff. The contact with the teacher from another school, on a

1    matter that should have been handled only by the administration, only served to bring further

2    unwarranted attention to the matter and to stoke the flames of racial tension.

3        57. On May 18, 2017, Karen Pearce, a close personal friend of Defendant Willford wrote the

4    following on Facebook:

> San Ramon Valley Unified School District just caved in to legal bullying by
> parents of a junior who ran for SRVHS ASB President using a racially offensive
> "joke" video as his campaign tactic.  He and his friend dressed up like Muslim
> terrorists and had fake guns.  I saw the video and was so outraged.  These kids
> agree to a campaign contract with clear consequences for breaking it…you will
> not get an office.  I know it well be my daughter is the current ASB
> president.Initially the boy was not allowed to be president.  Parents sued.  Parents
> refused to have their son apologize or take any responsibility for a dreadful
> decision.  AND I heard from students that parents changed their (losing) lawsuit to
> a freedom of speech suit and asked for big $$$.  DISTRICT caved!!!!  Gave in
> rather than stand up for all the principles they expect our kids to learn and exhibit.
> Boy returns tomorrow as new ASB President.  UNBELIEVABLE!!  As a mom
> who expects (forces) her kids to abide by their contracts…As a mom who saw the
> ASB kids have to enforce their ASB contract on their friends this year…As a
> parent who expects my kids to accept responsibility for poor choices and
> apologize…As a citizen in a country where racial slurs (even in jest) are NOT
> OK…I am outraged.  SRVUSD--think about the precedent you just set.  You
> pretty much tied the hands of your principals, teachers and safety staff.  Get
> caught drinking--just sue.    Don't like your grade--sue.  Apparently
> things like right and wrong don't matter here anymore.  There is a Board meeting
> on Tuesday.  It would be awesome to have a strong show of support and speakers
> to speak on our Leadership program's behalf.  The reinstatement of this student is
> a blatant disrespect to rules, in general, and his video that mocked Muslims was
> sufficient to disqualify the student from the campaign.  This situation is not just a
> HS thing.  The outcome is precedent for all sorts of unfair behavior.
> #thisiscrazy #srvusd #srvhs #upside_down #charactermatters
> doing the right thing isn't always easy but it's always right.

19       58. Karen Pearce continues to state on Facebook the following:

> Raising kids just got harder thanks to SRVUSD and the parents of a SRVHS
> student who used a racially insensitive video against Muslims as his campaign
> for ASB President.  Parents didn't like that the campaign contract he signed
> dictated that he wasn't allowed into office so they brought multiple suits against
> the District AND refused to have their son apologize/take responsibility for a
> poor decision.  SRVUSD caved and are forcing the leadership class and school
> to have this boy as their role model and leader next year.  What kind of example
> is this SRVUSD???  How do you hope to uphold all the other behavior and
> conduct contracts with students??  Kids make mistakes --I get it.  But it's the
> authority figures  (parents, school, District) that need to teach accountability.
> Parents--this is what your tax dollars are supporting.  I feel so bad for this boy
> and the life lesson his parents are choosing…don't like something--sue.  I hope
> the local media follows this.  It's just not right.  Please share.  I have to believe
>
> good will win!!!@ktvujuliehaener @eastbaytimes
> #thisiscrazy #srvusd #srvhs #upside_down #charactermatters

28       59. Some of the information in Ms. Pearce's post could only have come from someone

1   within the School District.  For example, the fact that the Plaintiff's parents were considering

2   further legal action was only transmitted from Plaintiff's attorney to the attorney for the San

3   Ramon Valley  Unified School District.  Somehow that information was transmitted to Ms.

4   Pearce.

5       60. Ms. Pearce's social media posts created media frenzy and communities' uproar.

6   Neighborhood discussions on sites like social media site. Nextdoor.com got so heated that

7   Nextdoor.com had to completely shut down the threads. Plaintiff and his family received

8   threatening messages and were targets of hate speech based on the Defendants' unsubstantiated

9   claims that Plaintiff had engaged in racist stereotyping. Plaintiff is informed and believes and

10   based thereon alleges that Defendant Willford encouraged Karen Pearce to make publish these

11   statements.

12      61. Defendant Willford's existing animus towards Plaintiff is evidenced by the fact that the

13   other students involved in the production and distribution of the video, including the students

14   who developed the characters that Defendant Willford claims to be offended by, and the student

15   who actually edited and posted the video, were only required to make a video displaying the

16   proper way to stay within school guidelines when making campaign videos as their punishment.

17   This option was never offered to Plaintiff who only learned about the punishment video from his

18   fellow students. Also, the school contacted the parents of those students while it did not contact

19   Plaintiff's parents.

20      62. Plaintiff is informed and believes and based thereon alleges that on May 24th, Geraldine

21   Herron, Plaintiff's Spanish teacher encouraged her students to e-mail the Superintendent in

22   protest of the school's decision to reinstate Plaintiff so that "all [their] voices are heard."

23      63. On May 18th, Plaintiff's History teacher, Heidi Stepp contacted Karen

24      64. Pearce, other friends, politicians, the Council on American Islamic Relations (CAIR),

25   and the media to foment outrage against Plaintiff and to have the school board reinstate the

26   unconstitutional sanctions against him.

27      65. On May 29th, Andrew Williams, Plaintiff's photography teacher e-mailed his class

28

1  that, "[t]he last week has brought a lot of negative attention to our school. We've made

2  international news and not for good reasons...Integrity is doing the right thing when no one is

3  looking" – a statement that indirectly condemns Plaintiff.

4      66. Plaintiff is informed and believes and based thereon alleges that many SRVHS teachers

5  excused the absences of students who participated in walkout to protest the School Board's

6  decision to reinstate Plaintiff, in tacit support of taking retaliatory action against PLAINTIFF

7      67. Over one hundred and forty SRVUSD teachers, staff, and employees signed a letter that

8  was presented to the District Board on June 13,2017. The letter, which contains numerous

9  misstatements of law and fact, admonishes the School Board for reversing the decision to punish

10 Plaintiff for the campaign video.

11     68. Further, there is evidence that Defendant Willford has a history of animus directed

12 towards Plaintiff even in advance of the video incident. When viewed in totality, her actions

13 demonstrate a consistent pattern of favoritism towards Caucasian students, especially students

14 who were members of her church and treating Plaintiff, who is Asian and belongs to a different

15 religion, as if he did not belong in the Leadership Class or in a leadership position.

16     69. At the end of his sophomore year, Plaintiff was elected to the position of Junior Class

17 President. In front of the entire leadership class, Defendant Willford brought up the fact that

18 PLAINTIFF had lost three previous campaigns for student leadership positions, intentionally

19 embarrassing him.

20     70. Traditionally, incoming Junior Class Officers (still in their sophomore year) are invited to

21 the Junior Class Prom so that they can see first-hand what their job will be the following year.

22 Defendant Willford invited all the incoming Junior Class Officers who were Caucasian,

23 including the candidate that Plaintiff defeated in the Junior Class President election, also a

24 Caucasian. well in advance of the event, but excluded Plaintiff. Two days prior to the event,

25 Plaintiff finally received his invitation with the explanation that Defendant Willford "forgot" to

26 include him on the list. He was unable to attend at that late date, because his parents had already

27 made plans for him to be away.

28     71. At the beginning of the year, Defendant Willford established and used a group chat to

1   discuss Junior Class Leadership topics with the Junior Class Officers. She added all the other

2   officers but again "forgot" to add Plaintiff o the group chat, even though he was Junior Class

3   President. Plaintiff was not even aware the group chat existed until he casually asked the Vice

4   President how she had received a copy of a prom invitation design that Plaintiff created. This

5   was in January, half way through the year. Defendant Willford targeted Plaintiff the way she did

6   because Plaintiff is an Asian Catholic while the other leadership members, who mostly attend her

7   Presbyterian Church, are Caucasian.

8       72. Defendant Willford maintains a close and personal friendship with the family of G.W. the

9   student who benefited from Plaintiff's disqualification by being named incoming ASB President.

10  That family contacted Defendant Willford and expressed concern about the video. Defendant

11  Willford is also a close friend of Karen Pearce, the woman who appeared on TV interviews and

12  published the Facebook and Instagram postings condemning Plaintiff, initiating and supporting a

13  smear campaign against Plaintiff and his parents, and encouraging people to pressure the School

14  Board to reconsider the reinstatement of Plaintiff. They all attend and are heavily involved in the

15  same local Presbyterian Church. Ms. Willford's father-in-law is a church deacon. Ms. Pearce

16  held various volunteer positions in the Women's Ministry program at the church before joining

17  its staff in January 2016 as Director of Connection. G.W. is an active member of the church's

18  Student Life Group and is the church's current High School Intern. She also 'liked' Ms. Pearce's

19  Instagram post condemning Plaintiff and supporting the smear campaign. G.W.'s father

20  organized sporting events for Men on the Mountain, church's annual men's conference.

21      73. Defendant Willford knew G.W. would serve as ASB President if she disqualified

22  Plaintiff, and she let her personal relationship with G.W. and her family and her preference for

23  G.W. to serve as next year's ASB President influence her decision to disqualify Plaintiff and

24  overturn a legitimate election. We do know that the family contacted Defendant Willford after

25  learning about the video. Certainly, it was not prudent for Defendant Willford to be the one to

26  make the decision to disqualify Plaintiff and thereby place the child of her friend in position to

27  ascend to the presidency. After the Board reversed SRVHS's decision to punish Plaintiff for his

28  political speech, Superintendent Schmitt reached out to the Yu Family to arrange a meeting "to

1   make sure [Plaintiff was] doing OK and to provide support." However, when Plaintiff's parents

2   requested to have their attorney present and asked to discuss the issues which were causing

3   Plaintiff not to be "OK" the Superintendent, through counsel, unilaterally cancelled the meeting

4   and refused to meet with the Plaintiff's parents. The unconstitutional acts directed at Plaintiff

5   and the continue actions of the Defendants towards him have caused a great deal of stress.

6   Plaintiff has lost weight. Recently, he had to be admitted to the hospital for elevated heart rate

7   caused by the stress brought on by the unlawful acts of defendants.

8                                    **JURISDICTION AND VENUE**

9       74. At all relevant times, Defendants' conduct complained of herein occurred in the

10  County of Contra Costa, California.

11                                     **FIRST CAUSE OF ACTION**
       **VIOLATION OF CALIFORNIA CONSTITUTUTION, ARTICLE I, §§1 AND 2**
12                                **(Plaintiff Against All Defendants)**

13      75. Plaintiff hereby realleges and incorporates each and every allegation set forth in

14  paragraphs 1 through 74 as though fully set forth herein.

15      76. Pursuant to the California Constitution, Article I, §1, all people have the right to

16  pursue and obtain "safety, happiness, and privacy."

17      77. Pursuant to the California Constitution, Article I, §2, all people have the right to free

18  speech on all subjects.

19      78. Defendants' conduct, as stated herein, constitutes a violation of Plaintiff's right to free

20  speech and privacy in violation of the California Constitution, Article I, §§1 and 2 in that

21  Defendants prohibited the viewing of a video made by Plaintiff wherein Plaintiff expressed

22  his own personal views and ideas and Defendants disseminated private information relating to

23  Plaintiff to other members of the community.

24      79. As a proximate result of the aforementioned acts of Defendants, Plaintiff was injured,

25  and sustained the injuries and damages described herein.

26      80. The aforementioned acts of Defendants were done by them knowingly, intentionally,

27  and maliciously, for the purpose of harassment, oppression, and inflicting injury upon

28  Plaintiff, and in reckless, wanton, and callous disregard of Plaintiff's safety, security, and

**Complaint for Damages**                    Page 19

1  Civil Rights. By reason thereof. Plaintiff claims exemplary and punitive damages from

2  Defendants in an amount according to proof at trial.

3      81. As a result of Defendants' conduct, Plaintiff is entitled to recover all damages

4  provided for the violation of these rights and his injuries, including but not limited to,

5  general and special damages according to proof.

6      WHEREFORE, Plaintiff prays for damages against Defendants, and each of them, as

7  set forth below.

8                    **SECOND CAUSE OF ACTION**
                     **INVASION OF PRIVACY**
9               **(Plaintiff Against All Defendants)**

10     82. Plaintiff hereby realleges and incorporates each and every allegation set forth in

11 paragraphs 1 through 81 as though fully set forth herein.

12     83. Pursuant to Cal. Civ. Code §1798, et. seq., Cal. Bus. & Prof. Code §22584, and Cal.

13 Ed. Code §§49073.6, et. seq. and 49073.6, Defendants were prohibited from disseminating

14 personal and private information relating to Plaintiff to third parties.

15     84. Defendant invaded Plaintiff's right to privacy by publicizing personal and private

16 information relating to Plaintiff.

17     85. The invasion was offensive and objectionable to Plaintiff and to a reasonable

18 person of ordinary sensibilities in that Defendant's conduct consisted of providing personal

19 and private information relating to Plaintiff to the public.

20     86. The intrusion was into a thing which was private and entitled to be private in that

21 Defendant's conduct involved an unconsented release of Plaintiff's personal and private

22 information to the public.

23     87. As a proximate result of the aforementioned acts of Defendants, Plaintiff was injured,

24 and sustained the injuries and damages described herein.

25     88. The aforementioned acts of Defendants were done by them knowingly, intentionally,

26 and maliciously, for the purpose of harassment, oppression, and inflicting injury upon

27 Plaintiff, and in reckless, wanton, and callous disregard of Plaintiff's safety, security, and

28

Complaint for Damages                    Page 20

1  Civil Rights.  By reason thereof, Plaintiff claims exemplary and punitive damages from

2  Defendants in an amount according to proof at trial.

3      89. As a result of Defendants' conduct, Plaintiff is entitled to recover all damages

4  provided for the violation of these rights and his injuries, including but not limited to,

5  general and special damages according to proof.

6      WHEREFORE, Plaintiff prays for damages against Defendants, and each of them, as

7  set forth below.

8                          **THIRD CAUSE OF ACTION**
   **VIOLATION OF EDUCATIONAL CODE, §§48907 AND 48950**
9                    **(PLAINTIFF AGAINST ALL DEFENDANS)**

10     90. Plaintiff hereby realleges and incorporates each and every allegation set forth in

11  paragraphs 1 through 89 as though fully set forth herein.

12     91. Pursuant to Ed. Code. §48907, Plaintiff, as a student of a public school, had a right to

13  engage in the exercise of free speech at SRVHS.

14     92. Pursuant to Ed. Code. §48950, Defendants were prohibited from disciplining Plaintiff

15  for engaging in "speech or other communication that, when engaged in outside of the campus,

16  is protected from governmental restriction by the First Amendment to the United States

17  Constitution or Section 2 of Article I of the California Constitution."

18     93. Defendants violated Ed. Code §§48907 and 48950 by prohibiting the viewing of a

19  video made by Plaintiff wherein Plaintiff expressed his own personal views and ideas and by

20  retaliating against and punishing Plaintiff for making said video and by engaging in the

21  conduct described herein.

22     94. As a proximate result of the aforementioned acts of Defendants, Plaintiff was injured,

23  and sustained the injuries and damages described herein.

24     95. The aforementioned acts of Defendants were done by them knowingly, intentionally,

25  and maliciously, for the purpose of harassment, oppression, and inflicting injury upon

26  Plaintiff, and in reckless, wanton, and callous disregard of Plaintiff's safety, security, and

27  Civil Rights.  By reason thereof, Plaintiff claims exemplary and punitive damages from

28  Defendants in an amount according to proof at trial.

1   96. As a result of Defendants' conduct, Plaintiff is entitled to recover all damages

2   provided for the violation of these rights and his injuries, including but not limited to,

3   general and special damages according to proof, costs of suit, and attorney fees under Ed.

4   Code §48950.

5       WHEREFORE, Plaintiff prays for damages against Defendants, and each of them, as

6   set forth below.

7                          **FOURTH CAUSE OF ACTION**
                    **VIOLATION OF CALIFORNIA CIVIL CODE §51**
8                        **(Plaintiff Against All Defendants)**

9   97. Plaintiffs hereby reallege and incorporate each and every allegation set forth in

10  paragraphs 1 through 96 as though fully set forth herein.

11  98. Pursuant to Cal. Civ. Code §51 it is unlawful to discriminate against any person on the

12  basis of race and/or religion.

13  99. Defendants' conduct, as stated herein, was motivated by animus towards Plaintiff

14  because of his race and/or religion.  This constitutes a violation of Cal. Civ. Code §51.

15  100.    As a proximate result of the aforementioned acts of Defendants, Plaintiff was

16  injured, and sustained the injuries and damages described herein.

17  101.    The aforementioned acts of Defendants were done by them knowingly,

18  intentionally, and maliciously, for the purpose of harassment, oppression, and inflicting injury

19  upon Plaintiff, and in reckless, wanton, and callous disregard of Plaintiff's safety, security,

20  and Civil Rights.  By reason thereof, Plaintiff claims exemplary and punitive damages from

21  Defendants in an amount according to proof at trial.

22  102.    As a result of Defendants' conduct, Plaintiff is entitled to recover all damages

23  provided for the violation of these rights and his injuries, including but not limited to,

24  general and special damages according to proof.

25      WHEREFORE, Plaintiff prays for damages against Defendants, and each of them, as

26  set forth below.

27                          **FIFTH CAUSE OF ACTION**
                **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
28                       **(Plaintiff Against all Defendants)**

1    103.    Plaintiff hereby realleges and incorporates each and every allegation set forth
2  in paragraphs 1 through 102 as though fully set forth herein.

3    104.    As a proximate result of the Defendants' conduct as stated herein, Plaintiff
4  Suffered humiliation, mental anguish, and severe emotional and physical distress, and has
5  been injured in mind and body all to Plaintiff's damage. As a result of Defendant's conduct,
6  Plaintiff suffered and continues to suffer general and special damages according to proof.

7    105.    Defendants' conduct, as stated herein, was done by them knowingly,
8  intentionally, and maliciously, for the purpose of harassment, oppression, and inflicting injury
9  upon Plaintiff, and in reckless, wanton, and callous disregard of Plaintiff's safety, security,
10  and Civil Rights. By reason thereof, Plaintiff claims exemplary and punitive damages from
11  Defendants in an amount according to proof at trial.

12    106.    As a result of Defendants' conduct, Plaintiff is entitled to recover all damages
13  provided for the violation of these rights and his injuries, including but not limited to,
14  general and special damages according to proof.

15    WHEREFORE, Plaintiff prays for damages against Defendants, and each of them, as
16  set forth below.

17               **SIXTH CAUSE OF ACTION**
       **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
18             **(Plaintiff Against all Defendants)**

19    107.    Plaintiff hereby realleges and incorporates each and every allegation set forth
20  in paragraphs 1 through 106 though fully set forth herein.

21    108.    Defendants owed a duty of care to Plaintiff not to interfere with his right to
22  exercise free speech and not to disseminate Plaintiff's personal and private information to
23  third parties.

24    109.    Defendants knew, or should have known, that interfering with Plaintiff's
25  ability to exercise free speech and disseminating his personal and private information to third
26  parties would cause Plaintiff severe emotional distress.

27    110.    As a proximate result of the Defendants' conduct, as stated herein, Plaintiff
28      suffered

1 | humiliation, mental anguish, and severe emotional and physical distress, and has been injured

2 | in mind and body all to Plaintiff's damage.  As a result of Defendant's conduct, Plaintiff

3 | suffered and continues to suffer general and special damages according to proof.

4 |     111.      As a result of Defendants' conduct, Plaintiff is entitled to recover all damages

5 | provided for the violation of these rights and his injuries, including but not limited to,

6 | general and special damages according to proof.

7 |     WHEREFORE, Plaintiff prays for damages against Defendants, and each of them, as

8 | set forth below.

9 | **PRAYER**

10 | Wherefore Plaintiff prays for damages as follows:

11 | FIRST, SECOND, FOURTH, AND FIFTH CAUSES OF ACTION:

12 |     1.      For special damages;

13 |     2.      For general damages;

14 |     3.      For costs;

15 |     4.      For punitive damages against Defendants according to proof;

16 |     5.      For such other and further relief as the Court deems appropriate.

17 | THIRD CAUSE OF ACTION:

18 |     1.      For special damages;

19 |     2.      For general damages;

20 |     3.      For costs;

21 |     4.      For punitive damages against Defendants according to proof;

22 |     5.      For attorneys' fees;

23 |     6.      For such other and further relief as the Court deems appropriate.

24 | \\\

25 | \\\

26 | \\\

27 | \\\

28 | \\\

1   SIXTH CAUSE CAUSE OF ACTION:

2       1.    For special damages;

3       2.    For general damages;

4       3.    For costs;

5       4.    For such other and further relief as the Court deems appropriate.

6

7   Dated:  February 7, 2019             THE CARDOZA LAW OFFICES, INC.

8                           By: _____

9                             Jacqueline C. Murphy, Esq.

                                Attorney for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28