.91617

1  MARK E. DAVIS—BAR NO. 79936
   ADAM J. DAVIS—BAR NO. 275964
2  PATRICK MALLOY—BAR NO. 308249
   **DAVIS & YOUNG, APLC**
3  1960 The Alameda, Suite 210
   San Jose, CA  95126
4  Phone:  669.245.4200
   Fax:     408.985.1814
5  Email: mdavis@davisyounglaw.com
   Email: adavis@davisyounglaw.com
6  Email: pmalloy@davisyounglaw.com

7  Attorneys for Defendants
   SAN RAMON VALLEY UNIFIED
8  SCHOOL DISTRICT; RICK SCHMITT;
   DR. JASON REIMANN; RUTH
9  STEELE; JAMIE KEITH; DEARBORN
   RAMOS; JASON KROLIKOWSKI, and
10 BERNIE PHELAN

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15  N.Y., through his guardians David and        **Case No.:  3:17-CV-03906-MMC**
    Leilanie Yu,

16                                                **NOTICE OF MOTION AND**
            Plaintiff,                            **MEMORANDUM OF POINTS AND**
17                                                **AUTHORITIES IN SUPPORT OF**
        vs.                                       **DEFENDANTS SAN RAMON VALLEY**
18                                                **UNIFIED SCHOOL DISTRICT, RICK**
                                                  **SCHMITT, DR. JASON REIMANN,**
    SAN RAMON VALLEY UNIFIED SCHOOL               **RUTH STEELE, JAMIE KEITH,**
19  DISTRICT; et al.,                             **DEARBORN RAMOS, JASON**
                                                  **KROLIKOWSKI, AND BERNIE**
20          Defendant.                            **PHELAN'S MOTION TO DISMISS**
                                                  **PLAINTIFF'S FOURTH AMENDED**
21                                                **COMPLAINT**

22

23                                                [Fed. R. Civ. P. 12(b)(6)]

24                                                Date:     September 6, 2019
                                                  Time:     9:00 a.m.
25                                                Judge:    Hon. Maxine M. Chesney
                                                  Crtrm:    7, 19th Floor
26

27

28

.91617

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 6, 2019, at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 7 – 19th Floor of the above-entitled court, located at 50 Golden Gate Avenue, San Francisco, California, Defendants San Ramon Valley Unified School District, Rick Schmitt, Dr. Jason Reimann, Ruth Steele, Jamie Keith, Dearborn Ramos, Jason Krolikowski, and Bernie Phelan (the "Moving Defendants"), will and do hereby move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), for the dismissal of the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action in Plaintiff's Fourth Amended Complaint because these causes of action fail to allege sufficient facts or legal theories to state claims against the District, SCHMITT, REIMANN, STEELE, KEITH, RAMOS, KRILIKOWSKI and PHELAN upon which relief can be granted.

The motion is based on this notice of motion and motion and memorandum of points and authorities, all pleadings in this action, as well as any evidence or arguments that may be offered in the brief in reply or at a hearing on this motion.

.91617

# **TABLE OF CONTENTS**

I . INTRODUCTION ....................................................................................1

II . FACTUAL BACKGROUND.....................................................................2

    A.    2017-2018 ASB Election and the Campaign Video.................2

    B.    Allegations Specific to Defendants Dearborn Ramos, Jamie Keith, Bernie Phelan, and Ruth Steele. .............................................2

    C.    Plaintiff Reinstated to Status Quo By May 18, 2017...............3

    D.    Specific Allegations Against Dr. Jason Reimann....................4

    E.    Specific Allegations Against Jason Krolikowski.......................4

    F.    Facts Assumedly Pertinent to Plaintiff's Invasion of Privacy Claim   4

    G.    Examples Other Student Videos Alleged by Plaintiff...............5

III . ARGUMENT ........................................................................................5

    A.    Legal Standard for Motion to Dismiss ......................................5

    B.    Second and Third Cause of Action: First Amendment Standard of Law. ...................................................................................6

        1.    Standard Applicable to Campaign Video Created for Associated Student Body Election: "School-Sponsored Speech" ...6

        2.    *Hazelwood* Standard Applies to Campaign Video and Alleged Actions of Moving Defendants.....................................8

        "These activities may fairly be characterized as part of the school curriculum, whether or not they occur in a traditional classroom setting, so long as they are supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences." *Id.*....................................8

        3.    The Individual Moving Defendants Are Entitled to Qualified Immunity on Plaintiff's First Amendment Causes of Action.   10

    C.    Plaintiff's Fourth, Fifth and Sixth Causes of Action Under the Fourteenth Amendment and Title VI Fail Based on No Allegations that Moving Defendants Had Authority to Discipline Other Student Videos and No Allegation of Similarly Situated Individuals. ................12

        1.    Equal Protection and Due Process: Fourteenth Amendment   12

        2.    Similarly, Plaintiff's Sixth Cause of Action Arising Under Title VI of the Civil Rights Act of 1964 Fails as a Matter of Law.   14

Table of Contents/Table of Authorities
{91617/00449095-2}

.91617

D.    Plaintiff Failed to Allege Any Threats of Violence or Actual Violence on Part of These Moving Defendants............................................14

E.    Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress ................................................................16

     1.    Plaintiff's Ninth and Tenth Causes of Action Against the District Should Be Dismissed Without Leave to Amend Because of Immunity Granted by California Government Code § 815.     16

     2.    Plaintiff Failed to Allege Facts Sufficient to Show "Extreme or Outrageous Conduct" on Part of Moving Defendants...17

F.    Plaintiff Has Failed to Allege Sufficient Facts that Any of the Moving Defendants Have Engaged in Any Conduct that Would Constitute an "Invasion of Privacy."................................................................18

G.    Plaintiff Has Failed to Allege Sufficient Facts to Support a Prayer for Punitive Damages Against Moving Defendants ......................19

IV . CONCLUSION ......................................................................................20

.91617

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Al-Rifai v. Willows Unified Sch. Dist.*,
 469 F.App'x 647 (9th Cir. 2012)................................................................12

*Anderson v. Creighton*,
 483 U.S. 635 (1987)..............................................................................10, 11

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)....................................................................................6

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)..................................................................................5, 6

*Bethel Sch. Dist. No. 403 v. Fraser*,
 478 U.S. 675 (1986)......................................................................................7

*C.R. v. Eugene Sch. Dist. 4J*,
 835 F.3d 1142 (9th Cir. 2016) .........................................................................7

*Cartwright v. Regents of the Univ. of Cal.*,
 2009 U.S. Dist. LEXIS 62953 (E.D. Cal. 2009)......................................19, 20

*Chavez v. U.S.*,
 683 F.3d 1102 (9th Cir. 2012)..................................................................6

*City of Cleburne v. Cleburne Living Center*,
 473 U.S. 432 (1985)..................................................................................12

*Davis v. Scherer*,
 468 U.S. 183 (1984)..................................................................................11

*Elder v. Holloway*,
 510 U.S. 510 (1994)..................................................................................11

*Flores v. Morgan Hill Unified Sch. Dist.*,
 324 F.3d 1130 (9th Cir. 2003)..................................................................12

*Grutter v. Bollinger*,
 539 U.S. 306 (2003)..................................................................................14

.91617

*Guardians Ass'n v. Civil Serv. Comm'n,*
   463 U.S. 582 (1983)..................................................................................14

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982)..................................................................................10

*Hazelwood School District v. Kuhlmeier,*
   484 U.S. 260 (1988) ............................................................................passim

*LaVine v. Blaine School Dist.,*
   257 F.3d 981 (9th Cir. 2001)......................................................................7

*Malley v. Briggs,*
   475 U.S. 335 (1986)..................................................................................10

*Mitchell v. Forsyth,*
   472 U.S. 511 (1985)..................................................................................11

*Morse v. Frederick,*
   551 U.S. 393 (2007)....................................................................................7

*Offril v. J.C. Penny Co.,*
   2009 U.S. Dist. LEXIS 1169, *5-6 (N.D. Cal. Jan 9, 2009)..............................5

*Rabkin v. Dean,*
   856 F.Supp. 543 (N.D. Cal. 1994)..............................................................15

*Robertson v. Dean Witter Reynolds, Inc.,*
   749 F.2d 530 (9th Cir. 1984)......  ...............................................................6

*Saucier v. Katz,*
   533 U.S. 194 (2001)..................................................................................10

*Somers v. Thurman,*
   109 F.3d 614 (9th Cir. 1997)......................................................................11

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*
   393 U.S. 503 (1969) ................................................................................6, 7

*United States v. Lopez-Flores,*
   63 F.3d 1468 (9th Cir. 1995)......................................................................12

**-iv-**

.91617

**California Cases**

*Cabesuela v. Browning-Ferris Industries,*
      68 Cal.App.4th 101 (1998)………………………………………………………………15

*Hernandez v. Hillsides, Inc.,*
      47 Cal.4th 272 (2009)………………………………………………………………18

*Hughes v. Pair,*
      46 Cal.4th 1035 (2009)………………………………………………………………17

*Lloyd v. City of Los Angeles,*
      172 Cal.App.4th 320 (2009)……………………………………………………16, 18

*Molien v. Kaiser Foundation Hospitals,*
      27 Cal.3d 916 (1980)………………………………………………………………17

*Shoyoye v. County of Los Angeles,*
      203 Cal.App.4th 947 (2012)………………………………………………………15

*Yurick v. Superior Court,*
      209 Cal.App.3d 1116 (1989)………………………………………………………17

**California Statutes and Jury Instructions**

Cal. Civil Code § 52.1………………………………………………………………15, 16

California Civil Jury Instruction No. 3066………………………………………………15

California Civil Jury Instruction No. 1800………………………………………………18

Cal. Gov. Code § 815………………………………………………………………16, 18

Cal. Gov. Code § 818………………………………………………………………19

Table of Contents/Table of Authorities
{91617/00449095-2}

.91617

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Despite its length (nearly seventy pages and eleven causes of action), Plaintiff's Fourth Amended Complaint fails as a matter of law due to both misapplied legal standards and insufficient factual allegations. The faulty foundation upon which Plaintiff has built his fifth attempt at a comprehensive pleading leaves his entire action arising under state and federal law subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).

First, "'school-sponsored speech' is governed by *Hazelwood [School District v. Kuhlmeier*, 484 U.S. 260 (1988)]." Under this correct application of law, Plaintiff's Second and Third Causes of Action arising under the First Amendment should be dismissed against all the Moving Defendants on their merits and/or based on qualified immunity.

Second, Plaintiff failed to allege sufficient facts against the Moving Defendants to sustain his Fourth, Fifth, and Sixth Causes of Action under the Fourteenth Amendment. Plaintiff was not suspended or expelled by the Moving Defendants, nor does he allege that any of the Moving Defendants had the ability to review the allegedly offensive videos from prior years (i.e. that Moving Defendants were even employed at the School when those videos were created or that they were similarly situated videos).

Third, Plaintiff's Seventh and Eighth Causes of Action arising under California Civil Code § 52.1 should be dismissed because Plaintiff failed to allege that any of the Moving Defendants "made threats of violence" or "acted violently against" Plaintiff.

Finally, Plaintiff's remaining three common law causes of action cannot be properly alleged against the District under Government Code § 815 (which abolished common law liability for California public entities) or the individual Moving Defendants because the conduct alleged by Plaintiff satisfied the standard of care as a matter of law. Plaintiff has further failed to allege how any of the Moving Defendants "violated his privacy."

For these reasons, the Moving Defendants respectfully present this motion to dismiss Plaintiff's Fourth Amended Complaint in its entirety under FRCP 12(b)(6).

.91617

## II.  FACTUAL BACKGROUND

### A.     2017-2018 ASB Election and the Campaign Video

In 2018, Plaintiff N.Y. graduated from San Ramon Valley High School.   (Plaintiff Fourth Amended Complaint [hereinafter "**4AC**"], **¶ 28**.) Prior to graduating, in February 2017, Plaintiff ran for the elected ASB president position which would apply to the following academic year.  (**4AC, ¶ 32**.)  Plaintiff's Fourth Amended Complaint acknowledges that Plaintiff agreed to abide by the provisions of the 2017-18 Leadership Election Package, which included the following admonishment: "Please have discretion when creating campaign signs and slogans, as any inappropriate material will be removed and the candidate is subject to be pulled from the election." (**4AC, ¶ 36**.)

As part of his campaign for ASB president, Plaintiff created a video [hereinafter "Campaign Video"] in which he portrayed a "James Bond type hero" and "features violence and kidnapping."  (**4AC, ¶ 39, 43**.)  The two students portraying the terrorist type antagonists were Plaintiff's fellow students and practicing Muslims.  (**4AC, ¶ 40**.)  The Campaign Video was recorded off campus and subsequently uploaded to YouTube on February 6, 2017.  (**4AC, ¶ 40, 44**.)   The ASB election "progressed without issue" from February 7—9, 2017.  (**4AC, ¶ 46, 51**.)

### B.     Allegations Specific to Defendants Dearborn Ramos, Jamie Keith, Bernie Phelan, and Ruth Steele.

After an initial interaction with co-defendant Janet Willford regarding Plaintiff's Campaign Video, Plaintiff claims that Dearborn Ramos and Jamie Keith "summoned N.Y. to the School's administrative offices." (**4AC, ¶ 51**.)

At their offices, Plaintiff claims that both Ms. Ramos and Ms. Keith:

- "interrogated N.Y. about the Parody" (**4AC, ¶ 51**.);
- "asked him to write a statement" (**4AC, ¶ 51**.);
- "threatened to severely punish N.Y." (**4AC, ¶ 52**.);
- "did not provide N.Y. an opportunity to eat lunch, drink water, or use the restroom" during a discussion that lasted from approximately 1:00 pm to 3:20

-2-

.91617

1    pm (**4AC, ¶ 54**).

2        Plaintiff also claims that Ms. Keith told Plaintiff that "he violated School rules and

3    expressed that a suspension would adversely affect his chances of being admitted to the

4    colleges and universities he hoped to attend." (**4AC, ¶ 52.**)

5        For Bernie Phelan, Plaintiff claims that Mr. Phelan "eventually joined the

6    interrogation" and discussed firearm use with Plaintiff. (**4AC, ¶ 53.**) Plaintiff also claims

7    that Mr. Phelan additionally did not provide him an opportunity to get water or go to the

8    restroom. (**4AC, ¶ 54.**)

9        Plaintiff claims that neither Ms. Keith, Ms. Ramos, nor Mr. Phelan contacted N.Y.'s

10   parents during this process. (**4AC, ¶ 55.**) Plaintiff did not allege any additional specific

11   allegations against Ms. Ramos or Mr. Phelan, most importantly no allegations involving

12   violence or threats of violence (including on the part of Ms. Keith).

13       For Ms. Keith, Plaintiff claims that she thereafter "informed N.Y. and his parents of

14   Defendants' decision to expel N.Y. from the Leadership Class" and stated "that Defendants

15   reached their decision because of the Parody…" (**4AC, ¶ 58.**) Plaintiff claims that Ms.

16   Keith presented Plaintiff with a District Suspension Notice "but did not fill-out [sic] the

17   student information or sign the form as the suspending official." (**4AC, ¶ 59.**)

18       Finally, only one specific allegation in the entirety of Plaintiff's lengthy Fourth

19   Amended Complaint refers to Ruth Steele: "…Defendant Steele informed N.Y. that the

20   decision to punish him (including removal as Junior Class President and expulsion from

21   Leadership Class) was final and not subject to review or appeal." (**4AC, ¶ 62.**)

22       **C.**   **Plaintiff Reinstated to Status Quo By May 18, 2017**

23       After a brief foray in state court and correspondence between attorneys for all

24   parties, "the District informed N.Y. that he would be permitted to return to the Leadership

25   Class and reinstated as Junior Class President, effective May 18, 2017." (**4AC, ¶ 69.**)

26   "The District also revealed that N.Y. 'received the most votes' in the Student Body

27   President election, and would be permitted to serve in the position during his senior year."

28   (**4AC, ¶ 69.**)

-3-

.91617

### D.   Specific Allegations Against Dr. Jason Reimann

Plaintiff alleges one specific, albeit equivocal, allegation purportedly against Dr. Jason Reimann.  Plaintiff claims that "an official from the District, <u>believed to be Defendant Reimann</u>, spoke with the Leadership Class about N.Y.  He claimed that Defendants reversed the decision to punish N.Y. for his speech because N.Y. filed suit against Defendants in an effort to vindicate his constitutional rights.   Defendant Reimann's statement implied that Defendants made the decision solely to avoid litigation, and not because Defendants erred in punishing N.Y. for exercising his right to free speech and expression guaranteed by federal and state law." (**4AC, ¶ 70.**)

Aside from this alleged speech to the Leadership Class (at which Plaintiff N.Y. appears to have been absent and speculating as to the identity of the speaker), the Fourth Amended Complaint does not contain any other allegations against Dr. Reimann.

### E.   Specific Allegations Against Jason Krolikowski

Plaintiff has also sued Jason Krolikowski, who it should be noted was not even an employee of the District at the time of the events that surround the Campaign Video. Nevertheless, Plaintiff claims that Mr. Krolikowski "did nothing to address" issues raised by N.Y. and "instead further ratified and enabled retaliation against N.Y." (**4AC, ¶ 75.**)

Plaintiff does not further elucidate how or what Mr. Krolikowski allegedly ratified and enabled at this juncture.   However, Plaintiff claims that Mr. Krolikowski "refused to investigate" alleged vandalism of Plaintiff's school parking spot and removed subsequent graffiti at Plaintiff's parking spot "without documentation or investigation." (**4AC, ¶ 79.**)

Finally, Plaintiff claims that Mr. Krolikowski somehow "deliberately isolated and undermined N.Y. in his capacity as Student Body President" by sending another student to an event in August 2017 instead of Plaintiff and "refused to assist N.Y. in obtaining feedback from the student body regarding a gender neutral bathroom initiative." (**4AC, ¶ 80.**)

### F.   Facts Assumedly Pertinent to Plaintiff's Invasion of Privacy Claim

After his May 18, 2017, total reinstatement, Plaintiff claims that a non-party, non-

-4-

.91617

1  District employee posted "personal information" about Plaintiff.   Plaintiff alleges that

2  "[s]ome of the information in Ms. Pearce's post appears to have come from someone within

3  the District." (**4AC, ¶ 74.**)

4  In support of this speculative claim, Plaintiff provides the following example: "N.Y.'s

5  attorney and the attorney for the District only discussed the fact that N.Y.'s parents were

6  considering further legal action.   Somehow, Defendants transmitted, or allowed it to be

7  transmitted to [sic], Ms. Pearce. (**4AC, ¶ 74.**)

8  Plaintiff does not cite any other examples or allegations regarding his "personal

9  information" being released, nor does he attribute the aforementioned example of

10 information to any specific Moving Defendant.

11 **G.      Examples Other Student Videos Alleged by Plaintiff**

12 In support of his Equal Protection Cause of Action, Plaintiff alleges that certain other

13 videos exist which could also arguably be considered "inappropriate" under the Campaign

14 Rules.  These alleged videos include a January 28, 2012, video (not composed as part of a

15 student's election campaign), a 2016 video published by a student who ran against N.Y.

16 (but not specified as a student election campaign video), and a 2017 video for a student

17 running for Senior Class President playing basketball against his female counterpart.

18 (**4AC, ¶ 91.**)

19 Tellingly, on the only arguably relevant video, Plaintiff does not allege whether the

20 student running for Senior Class President in 2017 (a) won the position he campaigned for

21 or (b) had been investigated by the Moving Defendants.  More importantly, Plaintiff failed to

22 allege that any of the Moving Defendants were either employed by the District at the time

23 of the other videos or had any involvement in their creation or review.

24 **III. ARGUMENT**

25 **A.      Legal Standard for Motion to Dismiss**

26 A complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) if it does not plead

27 "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

28 *Twombly*, 550 U.S. 544, 570 (2007).   Rule 12(b)(6) "requires more than labels and

-5-

.91617

1  conclusions, a formulaic recitation of the elements of a cause of action will not do." *Offril v.*

2  *J.C. Penny Co.,* 2009 U.S. Dist. LEXIS 1169, *5-6 (N.D. Cal. Jan 9, 2009) (citing *Bell Atl.*

3  *Corp. v. Twombly*).

4  A plaintiff's factual allegations "must be enough to raise a right to relief above a

5  speculative level." *Twombly*, 550 U.S. at 555, emphasis added.  Dismissal is appropriate if

6  the complaint lacks a cognizable theory or if there is an absence of sufficient facts alleged

7  under a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530,

8  534 (9th Cir. 1984).  "[A] court discounts conclusory statements, which are not entitled to

9  the presumption of truth, before determining whether a claim is plausible." *Chavez v. U.S.*,

10  683 F.3d 1102, 1108 (9th Cir. 2012).

11  In evaluating whether a complaint states a plausible claim for relief, courts rely on

12  "judicial experience and common sense" to determine whether the factual allegations,

13  which are assumed to be true, "plausibly give rise to an entitlement to relief." *Ashcroft v.*

14  *Iqbal*, 556 U.S. 662, 679 (2009).  Finally, Courts "are not bound to accept as true a legal

15  conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678.

16  As stated above, these Moving Defendants seek dismissal of Plaintiff's entire Fourth

17  Amended Complaint, as alleged against them, without leave to amend.

18  **B.     Second and Third Cause of Action: First Amendment Standard of Law.**

19  In his Fourth Amended Complaint, Plaintiff devotes significant attention to an

20  incorrect standard of law in relation to his Second and Third Causes of Action, as applied

21  to the facts of this case.  Specifically, the Campaign Video at issue, as well as the alleged

22  actions of the Moving Defendants, should be analyzed through the lens of the Supreme

23  Court opinion in *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988).

24  **1.     Standard Applicable to Campaign Video Created for Associated
Student Body Election: "School-Sponsored Speech"**

25

26  While public school students are protected by the First Amendment and do not

27  "shed their constitutional rights to freedom of speech or expression at the schoolhouse

28  gate" (see *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)), the

-6-

.91617

First Amendment rights of public school students "'are not automatically coextensive with the rights of adults in other settings'" and must be "'applied in light of the special characteristics of the school environment.'" *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 266 (1988), quoting *Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 682 (1986).

As quoted in Plaintiff's Fourth Amended Complaint, "[t]he Supreme Court has outlined four types of student speech that schools may restrict, each governed by its own lead case: (1) 'vulgar, lewd, obscene, and plainly offensive speech' is governed by *Fraser;* (2) 'school-sponsored speech' is governed by *Hazelwood* [*School District v. Kuhlmeier,* 484 U.S. 260 (1988)]; (3) 'speech promoting illegal drug use' is governed by *Morse v. Frederick,* 551 U.S. 393 (2007); and (4) 'speech that falls into [none] of these categories' is governed by *Tinker* [*v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503 (1969)]." *C.R. v. Eugene Sch. Dist. 4J,* 835 F.3d 1142, 1148-1149 (9th Cir. 2016).

In his Fourth Amended Complaint, Plaintiff makes a conclusory determination that the Campaign Video "is governed by the standards set forth in *Tinker,*" citing to various allegedly supportive cases in a footnote. (**4AC, ¶ 105, fn. 31.**) One of the cases Plaintiff cited in that footnote was *LaVine v. Blaine School Dist.,* 257 F.3d 981 (9th Cir. 2001).

The Ninth Circuit, while attempting to determine the correct standard of law to apply to the facts of *LaVine,* distinguished the facts from both the school assembly in *Fraser* and the school newspaper in *Hazelwood.* "...[N]o one could reasonably perceive James' poem to have the imprimatur of the school.  It was not an assignment, it was not published in a school publication and James showed it only to several students and his teacher, Ms. Bleecker." *LaVine, supra,* 257 F.3d at 989.

Here, Plaintiff alleges that he created the Campaign Video in the context of and for the purpose of garnering votes for the upcoming ASB President Election at SRVHS. Despite the fact that the Campaign Video itself was published off-campus, the public could "reasonably perceive [the Campaign Video] to have the imprimatur of the school" based on the fact that the Campaign Video was created in the context of and for the purpose of garnering votes for the impending ASB Presidential Election at SRVHS.

-7-

.91617

Simply put, Plaintiff would not have created the Campaign Video at issue in the absence of the ASB Presidential Election at SRVHS.  There can be no dispute that, at the very least, the Moving Defendants had a reasonable basis to believe that student speech composed in the context of an ASB election would constitute "school-sponsored speech" under *Hazelwood*.

**2.** ***Hazelwood* Standard Applies to Campaign Video and Alleged Actions of Moving Defendants.**

"The question whether the First Amendment requires a school to tolerate particular student speech—the question we addressed in *Tinker*—is different from the question whether the First Amendment requires a school affirmatively to promote particular student speech." *Hazelwood, supra,* 484 U.S. at 270-271.

In *Hazelwood*, the Supreme Court of the United States held that a school district could lawfully exercise authority over "school-sponsored publications, theatrical productions, and other expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school." *Id.* at 271.

"These activities may fairly be characterized as part of the school curriculum, whether or not they occur in a traditional classroom setting, so long as they are supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences." *Id.*

"Educators are entitled to exercise greater control over this second form of student expression to assure that participants learn whatever lessons the activity is designed to teach, that readers or listeners are not exposed to material that may be inappropriate for their level of maturity, and that <u>the views of the individual speaker are not erroneously attributed to the school</u>." *Id.,* emphasis added.

"[W]e hold that educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Id.* at 273.

-8-

.91617

1    Here, Plaintiff cannot dispute that he created and/or participated in the Campaign

2   Video at issue in order to garner votes for the 2017-2018 ASB Presidential Election.  The

3   2017-2018 ASB Presidential Election was governed by Campaign Rules delineated in the

4   Leadership Election Package, which included reference to and specifically envisioned

5   campaign materials posted on social media ("This includes posting anything on Twitter,

6   Snapchat, Instagram, etc."). **(4AC, ¶ 36.)** The Campaign Rules also advised students of

7   the following: "Please have discretion when creating campaign signs and slogans, as any

8   inappropriate material will be removed and the candidate is subject to be pulled from the

9   election." **(4AC, ¶ 36.)**

10    Furthermore, as alleged in Plaintiff's Fourth Amended Complaint, the SRVHS

11   Leadership Class is an elective, "cocurricular activity" taught by Defendant Janet Willford

12   which meets four times per week and in which students receive ten hours of credit towards

13   graduation. **(4AC, ¶ 30, 31.)**

14    Plaintiff's Fourth Amended Complaint describes the pedagogical goal of the

15   Leadership Class as "intended to help students in elected and appointed roles develop the

16   skills necessary to fulfill their duties and develop their leadership skills." **(4AC, ¶ 31.)**

17    Based on the foregoing, Plaintiff cannot withstand a motion to dismiss on his causes

18   of action arising under the First Amendment.  Plaintiff claims that:

19    (1) he created the Campaign Video for the SRVHS ASB Presidential Election;

20    (2) "the Student Body President position was the highest elected office within the

21   School's student government" **(4AC, ¶ 32.);**

22    (3) that these Moving Defendants allegedly punished him by removing him from

23   Leadership Class and ASB Presidential Election as a result of the Campaign Video; and

24    (4) the pedagogical goal of the Leadership Class as "intended to help students in

25   elected and appointed roles develop the skills necessary to fulfill their duties and develop

26   their leadership skills."

27    Taken together, *Hazelwood* should apply to the facts of this case.  Plaintiff's sole

28   claim that *Tinker* should apply would be that his alleged speech occurred off-campus.

-9-

.91617

However, this fact is immaterial.  Plaintiff's Campaign Video was composed in the context of the Leadership Class and the ASB Election, school-sponsored "cocurricular" classes by Plaintiff's own description.  Much in the same way that Plaintiff could have completed an assignment for class off-campus, the location of the creation and publishing of the Campaign Video matters much less than its intended audience and effect: "[a]ll students in grades 9 through 11" voting for Plaintiff in the ASB President election.  (**4AC, ¶ 33**.)

Simply put, the Supreme Court of the United States has specifically authorized these Moving Defendants to exercise authority over school-sponsored activities, "so long as their actions are reasonably related to legitimate pedagogical concerns," which Plaintiff himself has identified as "intended to help students in elected and appointed roles develop the skills necessary to fulfill their duties and develop their leadership skills."

### 3. The Individual Moving Defendants Are Entitled to Qualified Immunity on Plaintiff's First Amendment Causes of Action.

The individual Defendants are entitled to qualified immunity on the First Amendment claims for monetary damages because they were (a) government officials performing discretionary functions and (b) did not knowingly violate any clearly established right.

State officials performing discretionary functions are shielded from liability for monetary damages if they can show that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); see also *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Saucier v. Katz*, 533 U.S. 194 (2001).

Qualified immunity exists fundamentally to protect state officials in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To defeat a defense of qualified immunity, plaintiff must allege a constitutional right that was well-established at the time of the incident.  The contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing

.91617

1   violates that right.  *Anderson, supra*, 483 U.S. at 640.  "This is not to say that an official
2   action is protected by qualified immunity unless the very action in question has previously
3   been held unlawful (internal citation omitted); but it is to say that in light of pre-existing law
4   the unlawfulness must be apparent."  *Id*, quoting *Malley, supra*, at 344-345; *Mitchell v.*
5   *Forsyth*, 472 U.S. 511, 528 (1985).

6          Whether the law was clearly established is a question of law for the court.  *Elder v.*
7   *Holloway*, 510 U.S. 510, 516 (1994).  "A plaintiff who seeks damages for violation of
8   constitutional or statutory rights may overcome the defendant official's qualified immunity
9   only by showing that those rights were clearly established..."  *Elder, supra*, 510 U.S. at
10  515, quoting *Davis v. Scherer*, 468 U.S. 183, 197 (1984).    Where the general legal
11  principle has not been established, the law changed, the legal standard had been stated
12  only in broad and amorphous terms, or the conduct at issue was not clearly proscribed,
13  qualified immunity is appropriate.  *Somers v. Thurman*, 109 F.3d 614 (9th Cir. 1997).

14         Here, Plaintiff claims that the Moving Defendants violated his constitutional rights by
15  conducting an investigation that briefly resulted in his removal from Leadership Class and
16  the ASB Presidential Election.  Plaintiff alleges that the Moving Defendants engaged in
17  these actions based on the Campaign Video in which he participated for the ASB Election.

18         As discussed above, the Supreme Court of the United States has explicitly
19  authorized public school district educators to exercise discretionary authority over school-
20  sponsored speech, so long as their actions relate to a legitimate pedagogical concern.
21  *See Hazelwood*.  In exercising their discretionary authority to investigate and recommend
22  consequences for the Campaign Video, these Moving Defendants acted completely within
23  the confines of the Supreme Court's directive in *Hazelwood*.

24         Moreover, despite the fact that the Campaign Video was filmed and posted off-
25  campus, the Campaign Video was inarguably created for the purpose of garnering votes
26  for the ASB Presidential Election, an event that could result in Plaintiff's future participation
27  in the Leadership Class (which, Plaintiff's own description, is "intended to help students in
28  elected and appointed roles develop the skills necessary to fulfill their duties and develop

-11-

.91617

1  their leadership skills").

2  Thus, the alleged actions of the Moving Defendants do not violate any clearly

3  established rights and, arguably, comply fully with the explicit holding of *Hazelwood*.  As

4  such, the Moving Defendants should be entitled to qualified immunity.

5  **C.    Plaintiff's Fourth, Fifth and Sixth Causes of Action Under the**
6  **Fourteenth Amendment and Title VI Fail Based on No Allegations that**
   **Moving Defendants Had Authority to Discipline Other Student Videos**
7  **and No Allegation of Similarly Situated Individuals.**

8  Plaintiff's Fourth, Fifth, and Sixth Causes of Action should be dismissed because

9  Plaintiff has failed to properly describe conduct by these Moving Defendants against

10  students "similarly situated" to him, i.e. those subject to the Campaign Rules at issue.

11  **1.    Equal Protection and Due Process: Fourteenth Amendment**

12  "The Equal Protection Clause of the Fourteenth Amendment commands that no

13  State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which

14  is essentially a direction that all persons similarly situated should be treated alike." *City of*

15  *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting Equal Protection

16  Clause).  An equal protection claim is cognizable where a defendant's enforcement of a

17  rule "results in members of a certain group being treated differently from other persons

18  based on membership in that group," unless "the distinction made between the groups is

19  justified." *See United States v. Lopez-Flores*, 63 F.3d 1468, 1472 (9th Cir. 1995)

20  Furthermore, "[t]o establish a § 1983 equal protection violation, the plaintiffs must

21  show that the defendants, acting under color of state law, discriminated against them as

22  members of an identifiable class and that the discrimination was intentional." *Flores v.*

23  *Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003).

24  Plaintiff has not alleged any facts to suggest that any of the Moving Defendants,

25  either individually or collaboratively, discriminated against him with an impermissible

26  motive or acted with animus based on gender, race, or religion in violation of the Equal

27  Protection clause of the Fourteenth Amendment.  *Al-Rifai v. Willows Unified Sch. Dist.*, 469

28  F.App'x 647, 649 (9th Cir. 2012).

-12-

.91617

1    Rather, Plaintiff points to his brief removal from his ASB leadership position, alleged
2    actions taken by co-defendant Willford, and alleged forms of "ratification" from the Moving
3    Defendants, though Ms. Keith is the only individual specified: Defendant Jamie Keith's
4    response to Plaintiff presenting Keith with several other videos which had no bearing on
5    the election at issue.

6    However, Plaintiff's allegations do not adequately describe actions taken or not
7    taken <u>by these Moving Defendants</u> against students "similarly situated" to him.   For
8    instance, Plaintiff bemoans separate punishment afforded to the other individuals who
9    participated in the creation of Plaintiff's election video.  Since none of the individuals were
10   running for election themselves, the Moving Defendants literally could not have "punished"
11   these students in the same way as Plaintiff, i.e. by removing them from an ASB elected
12   position that none of them held in the first place.

13   Moreover, despite Plaintiff's lengthy description of other potentially offensive videos
14   composed by various students at the high school, Plaintiff does not allege that these
15   Moving Defendants were (a) employed by the District at the time these alleged videos were
16   created or (b) that the videos were created in the context of a school election.

17   Again, Plaintiff's very brief alleged "punishment" included a temporary removal from
18   his elected ASB position and participation in the leadership course after the District
19   became aware of his video.   Plaintiff's Fourth Amended Complaint makes conclusory
20   allegations about the District's knowledge of the alleged inappropriate videos produced by
21   other students, but does not adequately allege that (a) any of these Moving Defendants
22   had any authority over the videos (or were even employed by the District during the time
23   period the videos were produced) or (b) that he was similarly situated to these alleged
24   other students (i.e. that the other videos were subject to the same Campaign Rules).

25   Finally, though Plaintiff has alleged that he cannot be "suspended or expelled"
26   without Due Process, he has not alleged that he actually was "suspended or expelled," as
27   those terms are defined by the California Education Code (See Cal. Ed. Code §§ 48900,
28   48910).   Rather, Plaintiff was briefly removed from a "cocurricular" course before being

-13-

.91617

1  reinstated.   Regardless, the Campaign Rules had provided notice that removal from the
2  course was possible for violation of the Campaign Rules.

3      As such, Plaintiff's claims under the Due Process and Equal Protection clauses of
4  the Fourteenth Amendment against these Moving Defendants fail as a matter of law and
5  should be dismissed without leave to amend.

### 2.    Similarly, Plaintiff's Sixth Cause of Action Arising Under Title VI of the Civil Rights Act of 1964 Fails as a Matter of Law.

8      Title VI prohibits discrimination based on "race, color, or national origin [not religion]
9  …under any program or activity receiving Federal financial assistance."   42 U.S.C. §
10  2000d.   Title VI bars intentional discrimination.   *Guardians Ass'n v. Civil Serv. Comm'n*,
11  463 U.S. 582, 607-608 (1983).

12      Because the Title VI statutory prohibition on discrimination is based on the Equal
13  Protection Clause, the constitutional analysis of intentional discrimination should be applied
14  under Title VI. *Grutter v. Bollinger*, 539 U.S. 306, 343-344 (2003).

15      Similar to his claims under the Equal Protection clause of the Fourteenth
16  Amendment, Plaintiff has failed to allege *any* intentional discriminatory conduct against him
17  on the part of these Moving Defendants.   Rather, Plaintiff's Sixth Cause of Action focuses
18  on the lack of punishment doled out on other students who (a) were not subject to the
19  same Campaign Rules and (b) not subject to oversight by the Moving Defendants.

20      As the Court noted in its Order on Defendants' prior motion to dismiss, Title VI
21  "proscribes only those racial classifications that would violate the Equal Protection Clause";
22  consequently, where a plaintiff's claim that he was deprived of equal protection on account
23  of his race or religion fails on its merits, a Tile VI claim based on the same facts likewise
24  fails. *Grutter*, 539 U.S. at 343 (2003) (internal quotation, citation and alteration omitted).

### D.    Plaintiff Failed to Allege Any Threats of Violence or Actual Violence on Part of These Moving Defendants.

27      Plaintiff's Seventh and Eighth Causes of Action arising under California Civil Code §
28  52.1 fail as a matter of law because Plaintiff has not alleged that any of the defendants

-14-

.91617

1   engaged in acts of violence or threatened any acts of violence against him as a result of

2   his Campaign Video.

3       To establish a claim under California Civil Code § 52.1 (also referred to as the

4   "Bane Act"), Plaintiff must allege that one of the individual defendants either (a) made

5   threats of violence against him or (b) acted violently against him to prevent him from

6   exercising a state or federal right.  California Civil Jury Instruction No. 3066; *Rabkin v.*

7   *Dean*, 856 F.Supp. 543, 552 (N.D. Cal. 1994) (It is "clear that [section 52.1] is meant to

8   protect against violence or the threat of violence.").

9       The Bane Act provides that speech alone is not sufficient to constitute a violation

10  unless it involves a credible threat of violence.  California Civil Code § 52.1(j).  This

11  limitation would foreclose a claim based on threats, intimidation, or coercion involving a

12  nonviolent consequence.  *See Cabesuela v. Browning-Ferris Industries*, 68 Cal.App.4th

13  101, 111 (1998) ("[I]t is clear that to state a cause of action under section 52.1 there must

14  first be violence or intimidation by threat of violence.").

15      "The Legislature enacted section 52.1 to stem a tide of hate crimes." *Jones v. Kmart*

16  *Corp.*, 17 Cal.4th 329, 338 (1998).  "The statutory framework of section 52.1 indicates that

17  the Legislature meant the statute to address interference with constitutional rights involving

18  more egregious conduct than mere negligence." *Shoyoye v. County of Los Angeles,* 203

19  Cal.App.4th 947, 958 (2012).

20      Here, Plaintiff's Seventh and Eighth Causes of Action arise under the Bane Act for

21  alleged interference with Plaintiff's rights under the California Constitution and Education

22  Code.  However, Plaintiff has failed to allege any facts that any of the individual defendants

23  or any District employees (a) made threats of violence against him or (b) engaged in acts

24  of violence against him, as required under the Bane Act.

25      Instead, Plaintiff alleges that the Moving Defendants violated the Bane Act by

26  "interrogating him, expelling him from Leadership Class, stripping him of his position as

27  Junior Class President, preventing him from assuming the position of Student Body

28  President, and by stripping the Student Body Position of the rights and privileges

-15-

.91617

1  historically afforded to the student elected to the position."  (**4AC, ¶ 174**.) Accordingly,

2  Plaintiff's Fourth Amended Complaint fails to allege *any* threats of violence or acts of

3  violence on the part of the Moving Defendants.

4      For these reasons, Plaintiff's Seventh and Eighth Causes of Action arising under

5  California Civil Code § 52.1 should be dismissed without leave to amend.

6      E.    <u>Intentional Infliction of Emotional Distress and Negligent Infliction of</u>
<u>Emotional Distress</u>

7

8      Plaintiff has failed to allege sufficient facts against these Moving Defendants to

9  sustain causes of action for intentional and negligent infliction of emotional distress.

10  Moreover, the District is immune from these common law causes of action under California

11  Government Code § 815.

12      **1.**    **Plaintiff's Ninth and Tenth Causes of Action Against the District**
**Should Be Dismissed Without Leave to Amend Because of**

13                   **Immunity Granted by California Government Code § 815.**

14      "The Government Claims Act (§ 810 et seq.) establishes the limits of common law

15  liability for public entities, stating: '*Except as otherwise provided by statute*: [¶] (a) A public

16  entity is *not liable* for an injury, whether such injury arises out of an act or omission of the

17  public entity or a public employee or any other person.'" California Government Code §

18  815(a), italics added.

19      Government Code § 815 abolishes all common law or judicially declared forms of

20  liability for public entities.  *Lloyd v. City of Los Angeles*, 172 Cal.App.4th 320, 329 (2009).

21      Briefly, Plaintiff has alleged two common law causes of action for intentional

22  infliction of emotional distress and negligent infliction of emotional distress.  Neither of

23  these causes of action arise under statutory law.

24      For this reason, the District is immune from liability based on Government Code §

25  815, and Plaintiff's Ninth and Tenth Causes of Action against the District should be

26  dismissed without leave to amend.

27  ///

28  ///

-16-

.91617

### 2. Plaintiff Failed to Allege Facts Sufficient to Show "Extreme or Outrageous Conduct" on Part of Moving Defendants.

A defendant's conduct is "outrageous" in the context of an intentional infliction of emotional distress claim when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal.4th 1035, 1050-1051 (2009). Moreover, "it is generally held that there can be no recovery for mere profanity, obscenity, or abuse, without circumstances of aggravation, or for insults, indignities, or threats which are considered to amount to nothing more than mere annoyances." *Yurick v. Superior Court*, 209 Cal.App.3d 1116, 1128 (1989).

In his fifth attempt at a pleading, Plaintiff has alleged essentially no facts at all against Ruth Steele, Dr. Jason Reimann, or Jason Krolikowski. Those facts which are alleged, in a most generous reading, reflect conduct that would not rise to the level of "outrageous" conduct that is so "extreme as to exceed all bounds of that usually tolerated in a civilized community."

Additionally, the facts alleged against Ms. Ramos, Ms. Keith, and Mr. Phelan reflect individuals engaging in their discretionary roles as school administrators. At worst, their alleged conduct would fall below the "mere profanity, obscenity, or abuse" envisioned by the Court in *Yurick*. Plaintiff's Ninth Cause of Action should be dismissed without leave.

Similarly, none of the sparse allegations against any of the Moving Defendants would rise to the level of any negligent conduct. More importantly, the doctrine of "negligent infliction of emotional distress" is not a separate tort or cause of action. It simply allows certain persons to recover for emotional distress only on a negligence cause of action even though they were not otherwise harmed or injured. See *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 928 (1980).

Here, the allegations against the individual Moving Defendants do not give rise to any separate negligence cause of action (which has not even been *alleged* against the Moving Defendants). In the absence of any sufficient allegations or underlying negligence claim, Plaintiff's Tenth Cause of Action should be dismissed without leave to amend.

-17-

.91617

**F.** **Plaintiff Has Failed to Allege Sufficient Facts that Any of the Moving Defendants Have Engaged in Any Conduct that Would Constitute an "Invasion of Privacy."**

Plaintiff's Fourth Amended Complaint fails to include any allegations that would sustain a common law cause of action for "invasion of privacy."

As an initial matter, as stated in the preceding section, Government Code § 815 abolishes all common law or judicially declared forms of liability for public entities. *Lloyd, supra*, 172 Cal.App.4th at 329.  For this reason, Plaintiff's cause of action for invasion of privacy as alleged against the District fails as a matter of law.

Additionally, to sustain a claim of invasion of privacy, Plaintiff must allege that (1) he had a reasonable expectation of privacy in some area of his life, (2) that one of the specific Moving Defendants intentionally intruded in that private area of Plaintiff's life, (3) that one of the specific Moving Defendants' intrusion would be highly offensive to a reasonable person, (4) Plaintiff was harmed, and (5) that one of the specific Moving Defendants' conduct was a substantial factor in causing Plaintiff's harm.  California Civil Jury Instruction No. 1800; *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 295 (2009).

"Plaintiffs must show more than an intrusion upon reasonable privacy expectations. Actionable invasions of privacy also must be 'highly offensive' to a reasonable person, and 'sufficiently serious' and unwarranted as to constitute an 'egregious breach of the social norms.'" *Hernandez, supra*, 47 Cal.4th at 295, internal citation omitted.

Here, Plaintiff's Fourth Amended Complaint focuses primarily on two social media posts by a non-District employee, non-party to this lawsuit: Karen Pearce.  Of note, neither of these posts mentions Plaintiff or his parents by name.

Moreover, the information contained in the two social media posts (which were not composed by any of the Moving Defendants) appears to exclusively contain public information that was covered extensively by the local media during the same time period.

In short, Plaintiff's final cause action fails for at least three reasons: (1) he has failed to allege any specific actions or violations of his privacy interests by any of the Moving Defendants, (2) the two social media posts by a non-employee, non-party private individual

-18-

.91617

do not mention Plaintiff by name, and (3) any of the allegedly private information contained in the social media posts appears in local periodical postings during the same time period. Finally, the information contained in the social media posts is recited almost verbatim by Plaintiff in his many iterations of his state and federal pleadings (all public documents despite his use of pseudonym).

For all of these reasons, Plaintiff's Eleventh Cause of Action fails as a matter of law and should be dismissed without leave to amend.

### G.   Plaintiff Has Failed to Allege Sufficient Facts to Support a Prayer for Punitive Damages Against Moving Defendants

Finally, if the Court is not inclined to completely dismiss Plaintiff's Fourth Amended Complaint against these Moving Defendants, Plaintiff's prayer for punitive damages against the District and the remaining Moving Defendants should be dismissed.

"Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant." Cal. Government Code § 818.

Moreover, while a jury may be permitted to assess punitive damages in an action under § 1983, plaintiffs must allege that the defendant's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Cartwright v. Regents of the Univ. of Cal.*, 2009 U.S. Dist. LEXIS 62953, p. 33 (E.D. Cal. 2009).

Here, Plaintiff's Second through Fifth Causes of Action arise under 42 U.S.C. § 1983. As discussed thoroughly above, the Moving Defendants had a reasonable and justifiable basis under the Supreme Court's directive in *Hazelwood* to believe that they could lawfully investigate and decide upon consequences for Plaintiff's participation in and construction of the Campaign Video.

Specifically, Plaintiff has not alleged that the Moving Defendants were motivated by any "evil motive or intent." Additionally, Plaintiff has failed to allege that any of the Moving Defendants acted with "reckless or callous indifference to [his] federally protected rights."

-19-

.91617

1  Irrespective of these technical omissions, Plaintiff's Fourth Amended Complaint cannot

2  sustain a prayer for punitive damages against any of the Moving Defendants for the simple

3  fact that they have not violated any of his federally protected rights as a matter of law.

4  Even if there is a question of which standard should apply (i.e. *Hazelwood* or

5  *Tinker*), to the extent that the parties are even arguing this issue at the pleading stage

6  should be sufficient for the application of qualified immunity to each of the non-legal

7  scholar Moving Defendants.

8  For these reasons, if the Court is not inclined to dismiss the pleading in its entirety,

9  Plaintiff's prayer for punitive damages against these Moving Defendants should be stricken

10  as inadequately plead and improper.

## IV. CONCLUSION

12  For the foregoing reasons, these Moving Defendants respectfully request that the

13  Court grant this motion and dismiss Plaintiff's Fourth Amended Complaint in its entirety

14  without leave to amend.

Respectfully submitted,

DATED:  July 29, 2019

DAVIS & YOUNG, APLC

By ____/s/ Mark E. Davis_____
    Mark E. Davis
    Adam J. Davis
    Patrick Malloy
    Attorneys for Defendants
    San Ramon Valley Unified School
    District; Rick Schmitt; Dr. Jason
    Reimann; Ruth Steele; Jamie Keith;
    Dearborn Ramos; Jason Krolikowski
    and Bernie Phelan