1

2

3

4          IN THE UNITED STATES DISTRICT COURT

5          FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7    N.Y.,                                      Case No. 17-cv-03906-MMC

8                    Plaintiff,            **ORDER GRANTING IN PART AND
                                           DENYING IN PART MOTIONS TO**
9           v.                             **DISMISS FOURTH AMENDED
                                           COMPLAINT; AFFORDING PLAINTIFF**
10   SAN RAMON VALLEY UNIFIED              **LIMITED LEAVE TO AMEND**
     SCHOOL DISTRICT, et al.,
11                                         Re: Dkt. Nos. 123, 124
                  Defendants.

12

13         Before the Court are two motions:  (1) "Motion to Dismiss Plaintiff's Fourth

14   Amended Complaint," filed July 29, 2019, by defendants San Ramon Valley Unified

15   School District ("District"), Rick Schmitt ("Schmitt"), Jason Reimann ("Reimann"), Ruth

16   Steele ("Steele"), Jason Krolikowski ("Krolikowski"), Jamie Keith ("Keith"), Dearborn

17   Ramos ("Ramos"), and Bernie Phelan ("Phelan") (collectively, "Administration

18   Defendants"); and (2) "Motion to Dismiss Plaintiff's Fourth Amended Complaint," filed

19   July 29, 2019, by defendant Janet Willford ("Willford").  The motions have been fully

20   briefed.  Having read and considered the papers filed in support of and in opposition to

21   the motions, the Court rules as follows.[1]

22                                    **BACKGROUND**

23         In the operative complaint, the Fourth Amended Complaint ("4AC"), plaintiff N.Y.,

24   who previously was a student attending San Ramon Valley High School ("SRVHS"),[2]

25   alleges he was deprived of his federal constitutional and state rights in connection with a

26   _____

27         [1]By order filed September 3, 2019, the Court took the matters under submission.

28         [2]N.Y. graduated in 2018.  (See 4AC ¶ 28.)

1  student election conducted in 2017 and events following the election.

2  Specifically, N.Y. alleges, in February 2017, when he was Junior Class President,

3  he ran for Associated Student Body ("ASB") President (see 4AC ¶¶ 29, 32, 35) and that,

4  shortly before the election, he and a "group of his friends," while at the home of one of

5  the friends, filmed a video that was intended to "increase N.Y.'s name recognition" (see

6  4AC ¶ 39), which video subsequently was uploaded to the "personal YouTube webpage"

7  of one of the friends (see 4AC ¶ 44). According to N.Y., the video depicted him "as a

8  James Bond-type hero who rescues a person kidnapped by two members of an extremist

9  group who attempted to force the victim to participate in a video game competition" (see

10 4AC ¶ 2), and that two of his friends, "who happen to be practicing Muslims, conceived

11 and developed the idea for the antagonists" and "voluntarily decided to play the

12 antagonists" (see 4AC ¶ 40).

13 The "Campaign Rules" applicable to the election included the following provision:

14 "Please have discretion when creating campaign signs and slogans, as any inappropriate

15 material will be removed and the candidate is subject to be pulled from the election."

16 (See 4AC ¶ 36.) N.Y. alleges defendants determined the video to be "inappropriate" (see

17 4AC ¶ 7) and, in light of such determination, "stripped him of his position as Junior Class

18 President" and "expelled" him from the school's "Leadership Class" (see 4AC ¶ 6);[3]

19 additionally, N.Y. alleges, defendants "disqualified him in the election for [ASB] President"

20 (see id.), even though he "received the most votes" (see 4AC ¶ 11).

21 N.Y. alleges that, thereafter, he "filed an ex parte petition for writ of mandamus" in

22 state court, which petition was "denied" for failure to meet the "requirements for writ

23 relief" (see 4AC ¶¶ 66-67), and that his counsel next "informed the District in writing that

24 N.Y. intended to file a lawsuit based on [d]efendants' unconstitutional acts" (see 4AC

25 ¶ 68). According to N.Y., although the District then "permitted" him to "return" to the

26

27 ───────────────
[3]N.Y. alleges the Leadership Class is a graded class for which students enrolled

28 therein receive "ten hours of credit toward graduation." (See 4AC ¶ 6, n.11.)

2

1  Leadership Class, "reinstated" him as Junior Class President, and stated he would be

2  "permitted" to serve as ASB President during his senior year (see 4AC ¶ 69), defendants

3  "retaliated" against him by, for example, "intentionally withholding N.Y.'s semester grades

4  throughout the summer of 2017" and "transferring" the ASB President's "powers and

5  privileges" to another student (see 4AC ¶ 134).

6       Based on the allegations set forth above, N.Y. asserts five claims arising under

7  federal law and five claims arising under state law.

8  **LEGAL STANDARD**

9       Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be

10  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

11  under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

12  699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of

13  the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v.

14  Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a

15  complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

16  allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his

17  entitlement to relief requires more than labels and conclusions, and a formulaic recitation

18  of the elements of a cause of action will not do." See id. (internal quotation, citation, and

19  alteration omitted).

20       In analyzing a motion to dismiss, a district court must accept as true all material

21  allegations in the complaint and construe them in the light most favorable to the

22  nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To

23  survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

24  as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.

25  662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be

26  enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555.

27  Courts "are not bound to accept as true a legal conclusion couched as a factual

28  allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

3

**DISCUSSION**

**A. Federal Claims**

The Administration Defendants seek dismissal of N.Y.'s federal claims, which claims the Court considers in turn.[4]

**1. Second Cause of Action**[5]

In the Second Cause of Action, N.Y. alleges Schmitt, Reimann, Steele, Keith, Ramos, and Phelan, in violation of 42 U.S.C. § 1983, deprived him of his First Amendment rights when they "punished" him for violating the campaign rule prohibiting the use of "inappropriate" material. (See 4AC ¶ 121.) According to N.Y., the Administration Defendants' imposition of punishment was in violation of the standard set forth in Tinker v. v. Des Moines Independent Community School Dist., 393 U.S. 503 (1969). (See 4AC ¶¶ 1, 105.)

In Tinker, the Supreme Court held schools cannot prohibit student speech, "even on controversial subjects," unless the speech "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." See Tinker, 393 U.S. at 512-13. The Administration Defendants do not contend N.Y. fails to state a claim if such standard applies. Rather, they argue, he fails to state a claim or, alternatively, they are entitled to qualified immunity, in light of a different standard, specifically, the standard set forth in Hazelwood School Dist. v. Kuhlmeier, 484 U.S. 260 (1988).

//

//

---

[4]Each of the federal claims is also asserted against Willford, who does not seek dismissal of any of those claims. Consequently, the Court, in its discussion of the federal claims, limits its discussion to the allegations made against the Administration Defendants.

[5]The 4AC does not have a First Cause of Action. As noted in the 4AC, the First Cause of Action "was dismissed by court order." (See 4AC at 36:13-15; Order, filed September 21, 2018 (dismissing without leave to amend First Cause of Action, as alleged in Second Amended Complaint).) Instead of renumbering his claims, N.Y. begins the 4AC with his former Second Cause of Action.

1    In Hazelwood, the Supreme Court considered the standard applicable to school

2    regulation of student speech "disseminated under [the school's] auspices," such as

3    speech in "school-sponsored publications," e.g., school newspapers, as well as speech in

4    "theatrical productions" and "other expressive activities that students, parents, and

5    members of the public might reasonably perceive to bear the imprimatur of the school."

6    See id. at 271.  In resolving that issue, the Supreme Court held "the standard articulated

7    in Tinker for determining when a school may punish student expression need not also be

8    the standard for determining when a school may refuse to lend its name and resources to

9    the dissemination of student expression"; in the latter situation, the Supreme Court

10   concluded, schools do not violate the First Amendment by "exercising editorial control

11   over the style and content of student speech . . . so long as their actions are reasonably

12   related to legitimate pedagogical concerns."  See id. at 272-73.

13   At this stage of the proceedings, the Court finds the Administration Defendants'

14   reliance on Hazelwood as a ground for dismissal is premature.  The instant motion

15   challenges the claims as pleaded, and the 4AC does not include facts sufficient to

16   support a finding that the video constitutes speech akin to that made in school-sponsored

17   newspapers or theatrical productions, or that persons who viewed the video reasonably

18   would have perceived the content therein to "bear the imprimatur of the school."  See id.

19   at 271.  Indeed, N.Y alleges the video was uploaded to the personal YouTube page of a

20   student (see 4AC ¶ 44), that it "[did] not feature [the] School's or the Leadership Class's

21   name, logo, or other indicia," that no "School property or equipment" was used to create

22   it, and that "neither the School nor the Leadership Class [were] mentioned" in it (see 4AC

23   ¶ 41).

24   The Administration Defendants next argue the 4AC includes no facts that could

25   support a finding either Schmitt, the Superintendent of the District, or Reimann, the

26   District's Director of Education Services, played any role in deciding N.Y. had violated the

27   campaign rule or in imposing punishment.

28   //

5

1    "A plaintiff must allege facts, not simply conclusions, that show that an individual

2    was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152

3    F.3d 1193, 1194 (9th Cir. 1998).  Consequently, "a plaintiff must plead that each

4    Government-official defendant, through the official's own individual actions, has violated

5    the Constitution." See Iqbal, 556 U.S. at 676; see also Barren, 152 F.3d at 1194

6    (affirming dismissal of § 1983 claim, where plaintiff "fail[ed] to allege any facts which

7    would support his allegations that the defendants had conspired to violate his [civil]

8    rights").

9    In his opposition, N.Y. points to no factual allegations that could support a finding

10   that Schmitt or Reimann engaged in the conduct on which the Second Cause of Action is

11   based, and the Court, having reviewed the 4AC, finds none.  Indeed, the 4AC includes no

12   factual allegations of any kind concerning Schmitt, other than an allegation that he is the

13   Superintendent (see 4AC ¶ 20), and the factual allegations against Reimann pertain

14   solely to conduct that, although asserted by N.Y. to be retaliatory in nature, occurred after

15   the District set aside SRVHS's decision to impose punishment (see 4AC ¶ 70).

16   Accordingly, although the Second Cause of Action is not subject to dismissal in its

17   entirety, such claim is subject to dismissal to the extent it is asserted against Schmitt and

18   Reimann.

19   **2. Third Cause of Action**

20   In the Third Cause of Action, N.Y. alleges Schmitt, Reimann, Steele, Krolikowski,

21   Keith, Ramos, and Phelan, in violation of § 1983, "retaliated" against him for creating and

22   uploading the video (see 4AC ¶ 135), as well as for his filing a "state court petition" and

23   notifying the Administration Defendants of "his intent" to file another action (see 4AC

24   ¶¶ 134-135).

25   The Administration Defendants argue the standard set forth in Hazelwood applies

26   to their consideration of the video, and, consequently, that N.Y. fails to state a retaliation

27   //

28   //

6

1   claim, or, alternatively, that they are entitled to qualified immunity.[6]  As set forth above,

2   such argument is premature.  As also set forth above, however, the 4AC includes no

3   facts about Schmitt, let alone that he engaged in any assertedly retaliatory acts.

4        Accordingly, the Third Cause of Action is subject to dismissal only to the extent it

5   is asserted against Schmitt.

6        **3.  Fourth Cause of Action**

7        In the Fourth Cause of Action, NY alleges Schmitt, Reimann, Steele, Keith,

8   Ramos, and Phelan, in violation of § 1983, deprived him of due process (1) by enforcing

9   the prohibition against "inappropriate" campaign speech, which prohibition, N.Y. alleges,

10  is vague and failed to give him notice of the speech in which he could not engage (see

11  4AC ¶¶ 142-143), and (2) by "suspending or expelling" him from the Leadership Class

12  without following procedures required by state law (see 4AC ¶¶ 147-148).

13       The Administration Defendants argue N.Y. fails to state a due process deprivation

14  claim because the "Campaign Rules had provided notice that removal from the course

15  was possible for violation of the Campaign Rules."  (See Admin. Defs.' Mot. at 14:1-2.)

16  The Fourth Cause of Action, however, is, as set forth above, based on the theory that the

17  Campaign Rules did not adequately give notice of the type of conduct that would give rise

18  to punishment and that a number of administrative procedural requirements were not

19  met, not that the Campaign Rules failed to give notice that a violation might result in the

20  imposition of a particular punishment.[7]

21       The Administration Defendants also argue that the 4AC's allegations only support

22  a finding that N.Y. was "briefly removed" from the Leadership Class, and, consequently,

23

24       [6]The Administration Defendants do not appear to argue Hazelwood bars the Third
     Cause of Action to the extent it is based on retaliation for N.Y.'s filing a lawsuit and his
25   stated intent to file another.  Indeed, a student's filing or stating an intent to file a civil
     action against a school cannot be understood to constitute student speech "disseminated
26   under [the school's] auspices."  See Hazelwood, 484 U.S. at 271.

27       [7]The Court notes, however, that the Campaign Rules, at least as set forth in the
     4AC, only provided that, if a student campaigned using "inappropriate material," the
28   student could be "pulled from the election."  (See 4AC ¶ 36.)

7

United States District Court
Northern District of California

1  that N.Y has failed to plead facts to support a finding that "he actually was 'suspended or

2  expelled' as those terms are defined by the California Education Code." (See id. at

3  13:26-27.)  Such argument is not persuasive.  As relevant thereto, N.Y. alleges he was

4  prohibited from attending the Leadership Class from March 10, 2017, to May 16, 2017.

5  (See 4AC ¶¶ 62, 69.)  Even assuming said period of approximately two months can be

6  described as "brief," a "suspension," under the Education Code, can include prohibiting a

7  student from attending a class for a period of as little as two days.  See, e.g., Cal. Educ.

8  Code § 48910(a) (setting forth procedure whereby teacher may "suspend any pupil from

9  class" for "the day of the suspension and the day following").

10  As to Schmitt and Reimann, however, given that the Fourth Cause of Action is

11  based on the decision to impose punishment for N.Y.'s alleged violation of a campaign

12  rule, such claim is subject to dismissal for the reasons set forth above with respect to the

13  Second Cause of Action.

14  Accordingly, the Fourth Cause of Action is subject to dismissal only to the extent it

15  is asserted against Schmitt and Reimann.

16  **4.  Fifth Cause of Action**

17  In the Fifth Cause of Action, N.Y. alleges Schmitt, Reimann, Steele, Keith, Ramos,

18  and Phelan, in violation of § 1983, deprived him of equal protection.  Specifically, N.Y.

19  alleges, other "students who created films and material that certain individuals would find

20  'inappropriate'" were not subjected to punishment.  (See 4AC ¶ 155; see also 4AC

21  ¶¶ 88-91, 94-98 (identifying content of arguably "inappropriate" videos and materials, and

22  describing game played on campus with "imitation guns").)  According to N.Y., the

23  defendants named in the Fifth Cause of Action punished N.Y., but not the other students,

24  because of "the content of his speech" (see 4AC ¶ 160) and N.Y.'s "race and religion"

25  (see id.), identified by N.Y. as Asian and Catholic (see 4AC ¶ 155).

26  The Administration Defendants argue the 4AC lacks factual allegations to support

27  a finding that any of them were involved in the decisions not to impose punishment on the

28  other students referenced by N.Y.  In his opposition, N.Y. identifies no such factual

8

1   allegations,[8] and the Court, having reviewed the 4AC, finds none.  Indeed, the 4AC

2   includes no factual allegations to support a finding that Schmitt, Reimann, Steele, Keith,

3   Ramos, or Phelan were even aware of the conduct of the other students.

4       Accordingly, the Fifth Cause of Action is subject to dismissal to the extent it is

5   asserted against Schmitt, Reimann, Steele, Keith, Ramos, and Phelan.[9]

6       **5. Sixth Cause of Action**

7       In the Sixth Cause of Action, plaintiff alleges the District, as well as Schmitt,

8   Reimann, Steele, Keith, Ramos, and Phelan, discriminated against him on the basis of

9   race, in violation of Title VI of the Civil Rights Act of 1964.[10]

10      Title VI "proscribes only those racial classifications that would violate the Equal

11  Protection Clause."  See Grutter v. Bollinger, 539 U.S. 306, 343 (2003) (internal

12  quotation, citation and alteration omitted).  Consequently, where a plaintiff's claim that he

13  was deprived of equal protection on account of his race fails, a Title VI claim based on

14  the same facts likewise fails.  See id.  Here, as noted, N.Y.'s equal protection claim

15  against the individual Administration Defendants is subject to dismissal but remains to the

16  extent alleged against Willford, and the Administration Defendants have not argued the

17  District cannot be held liable for the alleged actions of Willford.  See United States v.

18  County of Maricopa, 889 F.3d 648, 652 (9th Cir. 2018) (setting forth circumstances under

19  which "entity" can be held liable under Title VI for acts of "official" or for acts of any

20

21      [8]N.Y. does cite to allegations that refer generally to "[d]efendants" (see, e.g., 4AC
    ¶ 93 (alleging "[d]efendants did not punish the [other] students")), but such collective
22  allegations fail to set forth the requisite "individual actions" of any defendant alleged to
    have engaged in the challenged conduct.  See Iqbal, 556 U.S. at 676; see also Eunice v.
23  United States, 2013 WL 756168, at *3 (S.D. Cal. February 26, 2013) (holding "[l]umping
    all 'defendants' together" fails to "put a particular defendant on notice" as to grounds for
24  claim).

25      [9]As noted above, Willford did not move to dismiss N.Y.'s federal claims.

26      [10]Title VI provides:  "No person in the United States shall, on the ground of race,
    color, or national origin, be excluded from participation in, be denied the benefits of, or be
27  subjected to discrimination under any program or activity receiving Federal financial
    assistance."  See 42 U.S.C. § 2000d.  N.Y. alleges the District receives federal financial
28  assistance.  (See 4AC ¶ 164.)

9

1  employee taken pursuant to "official policy").

2       Accordingly, the Sixth Cause of Action is subject to dismissal to the extent it is

3  asserted against Schmitt, Reimann, Steele, Keith, Ramos, and Phelan.

4  **B.  State Law Claims**

5       In their respective motions, defendants seek dismissal of the state law claims,

6  which the Court next considers in turn.

7       **1.  Seventh Cause of Action**

8       In the Seventh Cause of Action, N.Y. alleges all defendants violated the Bane Act,

9  California Civil Code § 52.1, which Act prohibits any person from "interfer[ing] by threat,

10  intimidation, or coercion, or attempt[ing] to interfere by threat, intimidation, or coercion,

11  with the exercise or enjoyment by any individual . . . of the rights secured by [federal or

12  state law]."  See Cal. Civ. Code § 52.1(b); see also Cal. Civ. Code § 52.1(c) (providing

13  private cause action for violation of § 52.1(b)).  The rights on which N.Y. bases the

14  Seventh Cause of Action are his federal and state constitutional rights to free speech.

15  (See 4AC ¶¶ 173, 174.)

16       In her motion, Willford seeks dismissal of said claim in reliance on § 52.1(k), which

17  provides that "[s]peech alone is not sufficient to support an action [under the Bane Act],

18  except upon a showing that the speech itself threatens violence against a specific person

19  or group of persons[,] and the person or group of persons against whom the threat is

20  directed reasonably fears that, because of the speech, violence will be committed against

21  them or their property and that the person threatening violence had the apparent ability to

22  carry out the threat."  See Cal. Civ. Code § 52.1(j).

23       As clarified by N.Y. in his opposition, the Seventh Cause of Action, to the extent

24  asserted against Willford, is based on her sending N.Y. a text message (see 4AC ¶ 48

25  (alleging Willford "texted N.Y., stating that she wanted to 'protect' him, but that she

26  needed to view the [video] to do so")), making a proposal at a meeting (see 4AC ¶ 62

27  (alleging Willford, during a meeting with N.Y., his parents, and his attorney, "proposed

28  that N.Y. revise the Campaign Rules to remove [an] ambiguity as part of his

1  punishment")),[11] talking to other defendants (see 4AC ¶ 7 (alleging Willford

2  "recommended" to other defendants that they "punish[ ]" N.Y.)), and making statements

3  in a class she taught (see 4AC ¶¶ 27, 61 (alleging Willford requested students provide

4  her with their opinions of N.Y.'s video)).  As such alleged acts consist of speech only and

5  do not threaten violence, the Seventh Cause of Action, to the extent asserted against

6  Willford, fails.

7  The Administration Defendants likewise argue the Seventh Cause of Action is

8  subject to dismissal under § 52.1(k).  As N.Y. points out, however, the Administration

9  Defendants are alleged to have engaged in acts that cannot be characterized as "speech

10  alone," i.e., the decision to impose on him various punishments, namely, "expelling him

11  from Leadership Class, stripping him of his position as Junior Class President, [and]

12  preventing him from assuming the position of [ASB] President" (see 4AC ¶ 174) and

13  engaging in retaliatory conduct, such as "stripping him of the rights and privileges

14  afforded to the student elected to the position [of ASB President]" (see id.).  As a threat of

15  violence is only required when a Bane Act claim is based on "speech alone," the

16  Administration Defendants, with the exception of Schmitt and Reimann, have failed to

17  show the Seventh Cause of Action is subject to dismissal.  As to Schmitt, the claim is

18  subject to dismissal, given the absence of any factual allegations against him; as to

19  Reimann, the claim is subject to dismissal because the sole act of retaliation alleged is

20  his having "spoke[n] with the Leadership Class about N.Y."  (See 4AC ¶ 70.)

21  Accordingly, the Seventh Cause of Action is subject to dismissal only to the extent

22  it is asserted against Willford, Schmitt, and Reimann.

23  **2. Eighth Cause of Action**

24  In the Eighth Cause of Action, N.Y. alleges a second Bane Act claim, which claim

25  is based on the theory that all defendants deprived him of his statutory right to free

26  speech under the Education Code. See Cal. Educ. Code § 48950(a) (providing, subject

27

28  [11]N.Y. does not allege such proposed punishment was ever imposed.

11

1 | to specified exceptions, students have "right to exercise freedom of speech").

2 | Defendants seek dismissal of the Eighth Cause of Action for the same reasons

3 | they seek dismissal of the Seventh Cause of Action.

4 | Accordingly, for the reasons stated above with respect to the Seventh Cause of

5 | Action, the Eighth Cause of Action is subject to dismissal only to the extent it is asserted

6 | against Willford, Schmitt, and Reimann.

7 | **3. Ninth Cause of Action**

8 | In the Ninth Cause of Action, N.Y. asserts against all defendants a claim for

9 | "intentional infliction of emotion distress" ("IIED") (see 4AC ¶ 182), based on said parties

10 | allegedly having taken "deliberate steps to chill and punish N.Y. for exercising his

11 | constitutional rights" (see 4AC ¶ 183).

12 | In their respective motions, defendants argue the 4AC fails to include facts to

13 | support a finding they engaged in the type of "outrageous conduct" necessary for such a

14 | claim, i.e., conduct "so outrageous in character and so extreme in degree as to go

15 | beyond all possible bounds of decency and to be regarded as atrocious and utterly

16 | intolerable in a civilized community." See Melorich Builders, Inc. v. Superior Court, 160

17 | Cal. App. 3d 931, 936 (1984).

18 | As noted, N.Y. alleges, as his Fifth Cause of Action, an equal protection claim

19 | based on the theory that he was punished by reason of his race and religion, and, as his

20 | Sixth Cause of Action, that he was punished by reason of his race. As Willford has not

21 | challenged the sufficiency of the Fifth and Sixth Causes of Action as pleaded, and the

22 | California Supreme Court has held "discriminatory actions may constitute . . . outrageous

23 | conduct redressable under a theory of [IIED]," see Rojo v. Kliger, 52 Cal. 3d 65, 81

24 | (1990), the Ninth Cause of Action, to the extent asserted against Willford, is not subject to

25 | dismissal.

26 | With respect to the individual Administration Defendants, however, the Fifth and

27 | Sixth Causes of Action have been dismissed. Although the First Amendment claims

28 | against all said individuals other than Schmitt remain, and the Due Process claims

12

1    against all said individuals other than Schmitt and Reimann remain, N.Y. has not cited to

2    any authority holding a defendant's violation of the First Amendment and/or Due Process

3    Clause can, by itself, support an IIED claim.  Consequently, the Court next considers

4    whether the factual allegations made in support of such claims describe what can be

5    characterized as extreme and outrageous behavior.

6          As to Steele, who served as Principal of SRVHS at the time the punishment was

7    imposed, the 4AC alleges said defendant informed N.Y. that he would be punished and

8    that her decision was "final and not subject to review or appeal." (See 4AC ¶ 62)  As to

9    Keith, Ramos, and Phelan, all of whom were Assistant Principals at the time the

10   punishment was imposed, the 4AC alleges each said defendant questioned N.Y. for

11   several hours about the video, without informing his parents, and ultimately decided he

12   should be "expel[led" from the Leadership Class (see 4AC ¶¶ 56, 58); in addition, the

13   4AC alleges Keith, at a meeting with N.Y. and his parents, "alluded to the need to make

14   an example out of N.Y." (see 4AC ¶ 58).  As to Reimann, the 4AC alleges that, after the

15   District set aside the punishments imposed by SRVHS, said defendant spoke to the

16   Leadership Class and "implied" the punishments were set aside "solely to avoid litigation"

17   and not because of any "error" by the school.  (See 4AC ¶ 70.)  As to Krolikowski, who

18   became Principal after Steele had imposed the punishments, the 4AC alleges said

19   defendant "did nothing" to address either a "media frenzy" or "death threats" arising after

20   the District set aside the punishments (see 4AC ¶ 75) and that he caused "graffiti" on

21   N.Y.'s car to be "removed without documentation or investigation" (see 4AC ¶ 80).  The

22   Court finds the above-referenced allegations fall short of identifying conduct that is "so

23   extreme in degree as to go beyond all possible bounds of decency." See Melorich

24   Builders, 160 Cal. App. 3d at 936.

25         Lastly, with respect to the District, "[a] public entity is liable for injury proximately

26   caused by an act or omission of an employee of the public entity within the scope of his

27   employment if the act or omission would . . . have given rise to a cause of action against

28   that employee." See Cal. Gov't Code § 815.2(a).  As set forth above, the Ninth Cause of

1     Action is not subject to dismissal to the extent alleged against Willford, a District

2     employee, and, consequently is not subject to dismissal to the extent alleged against the

3     District.[12]

4          Accordingly, the Ninth Cause of Action is subject to dismissal to the extent it is

5     asserted against Schmitt, Reimann, Steele, Krolikowski, Keith, Ramos, and Phelan.

6          **4. Tenth Cause of Action**

7          In the Tenth Cause of Action, N.Y. asserts against all defendants a claim of

8     "negligent infliction of emotional distress," which, as N.Y. acknowledges in the 4AC (see

9     4AC ¶ 188), is a negligence claim. See Huggins v. Longs Drug Stores California, Inc., 6

10    Cal. 4th 124, 129 (1993) (holding "[n]egligent infliction of emotional distress is a form of

11    the tort of negligence")

12         The Administration Defendants argue N.Y. has failed to allege facts to support a

13    finding that any of them engaged in a negligent act. As set forth below, the Court agrees.

14         The Tenth Cause of Action alleges "[d]efendants" failed to comply with two duties,

15    specifically, "the duty not to disseminate N.Y.'s personal and private information to third

16    parties" and "the duty not to interfere with [N.Y.'s] right to exercise free speech." (See

17    4AC ¶¶ 189-190.) As set forth below with respect to the Eleventh Cause of Action,

18    however, the 4AC fails to include facts to support a finding that any individual defendant

19    disseminated N.Y.'s personal and private information to third parties. Although the 4AC

20    does allege the individual Administration Defendants either punished N.Y. for the video

21    and/or engaged in acts of retaliation in response to N.Y.'s alleged free speech activities,

22    the 4AC includes no facts to support a finding that any of those acts was negligent as

23    opposed to intentional and/or retaliatory. See Hawaiian Pineapple Co. v. Industrial Acc.

24    Comm'n, 40 Cal. 2d 656, 663 (1953) (holding "serious and willful misconduct is basically

25    the antithesis of negligence" and that those "two types of behavior are mutually

26

27         [12]The Administration Defendants have not argued the 4AC fails to sufficiently
      allege Willford was acting within the scope of her employment when she engaged in the
28    challenged conduct.

                                              14

1  exclusive").

2        Next, although Willford does not expressly request dismissal of the Tenth Cause of

3  Action, the claim against Willford is subject to dismissal for the same reasons as stated

4  above with respect to the Administration Defendants. See Silverton v. Dep't of Treasury,

5  644 F.2d 1341, 1345 (9th Cir. 1981) (holding, where court grants motion to dismiss

6  complaint as to one defendant, court may dismiss complaint against non-moving

7  defendant "in a position similar to that of moving defendants").

8        Accordingly, the Tenth Cause of Action is subject to dismissal.

9  **5. Eleventh Cause of Action**

10        In the Eleventh Cause of Action, titled "invasion of privacy," N.Y. alleges all

11  defendants "disclos[ed] or ratif[ied] the disclosure of N.Y.'s personal and private

12  information" to "third parties." (See 4AC ¶ 194-195.)

13        In their respective motions, defendants argue the 4AC fails to allege facts to

14  support a finding that any of them disclosed or ratified the disclosure of any of N.Y.'s

15  personal and private information.

16        The Eleventh Cause of Action does not itself identify the nature of the subject

17  personal and private information. In his oppositions to the motions, N.Y., citing

18  paragraphs 72-80 of the 4AC, each of which is incorporated by reference in the Eleventh

19  Cause of Action, states the personal and private information is "his identity and discourse

20  with the District regarding the [video]." (See Pl.'s Opp. to Willford Mot. at 10:4-5; Pl.'s

21  Opp. to Adm. Defs.' Mot. at 21:14-15.) The portions of paragraphs 72-80 that arguably

22  refer to any such assertedly personal and private information are as follows:

23        (1) Karen Pearce, a parent of a student at SRVHS, posted a message on

24  Facebook in which she stated she "heard from students" that the "parents of a junior who

25  ran for SRVHS ASB President using a racially offensive 'joke' video" had "changed their

26  (losing) lawsuit to a freedom of speech lawsuit and asked for big $$$," and that the

27  District then "caved" and allowed him to be the "new ASB President" (see 4AC ¶ 72);

28  //

1      (2) Karen Pearce posted a similar message on Instagram, stating "the parents of a

2  SRVHS student who used a racially insensitive video against Muslims" had 'brought

3  multiple suits against the District," which caused the District to "cave[ ]" and "forc[ed]" the

4  school "to have this boy as their role model and leader next year" (see 4AC ¶ 73);

5      (3) "N.Y.'s attorney and the attorney for the District only discussed the fact that

6  N.Y.'s parents were considering further legal action" and, "[s]omehow, [d]efendants

7  transmitted, or allowed it to be transmitted to, [Karen] Pearce" (see 4AC ¶ 74; see also

8  4AC ¶ 66-67); and

9      (4) "[d]efendants and other District officials (with the help of [Karen] Pierce and

10  others) . . . allow[ed] N.Y.'s personal information to be released" (see 4AC ¶ 75).

11      The portions of the 4AC on which N.Y. relies do not include facts alleging any

12  defendant disclosed N.Y.'s identity to anyone, and the Court has located no other section

13  of the 4AC that does.  Nor does the 4AC include any facts to show any defendant

14  disclosed to anyone the nature of N.Y.'s discourse with the District, other than

15  "defendants" alleged disclosure that N.Y.'s parents were considering further legal action.

16  As to that one alleged disclosure, N.Y. cites no authority, and the Court has located none,

17  supporting the proposition that disclosing an attorney's threat to file a lawsuit against a

18  school district is the type of "personal and private information" that school district

19  employees are precluded from disclosing.  Moreover, even if disclosure of such a threat

20  could be considered an invasion of privacy, the 4AC fails to allege a cognizable claim

21  against any of the individual defendants, as N.Y. does not allege which of the defendants

22  conveyed such information to Karen Pearce or anyone else, but, rather, lumps all eight of

23  them together. See Iqbal, 556 U.S. at 676 (holding, where plaintiff alleged federal civil

24  rights claim, plaintiff failed to state claim against government officials in absence of

25  factual allegations showing each official, "through the official's own individual actions,"

26  violated law).

27      Accordingly, the Eleventh Cause of Action is subject to dismissal.

28  //

**C. Prayer for Relief**

1

2          In seeking entry of judgment against all defendants, N.Y. includes a request for

3    "punitive" damages.  (See 4AC, Prayer ¶ B.)  The Administration Defendants argue such

4    prayer for relief, to the extent asserted against them, should be dismissed.[13]

5          In that regard, the Administration Defendants contend the 4AC "cannot sustain a

6    prayer for punitive damages against any of the [individual Administration] Defendants for

7    the simple fact that they have not violated any of [N.Y.'s] federally protected rights as a

8    matter of law."  (See Admin. Defs.' Mot. at 20:1-3.)  As to Schmitt, such argument is well-

9    taken; as to the other individual Administration Defendants, however, the argument is

10   premature, in that various claims against them remain.  To the extent the Administration

11   Defendants argue they cannot be liable for punitive damages for the additional reason

12   that they are entitled to qualified immunity under the principles set forth in Hazelwood,

13   said argument, for the reasons stated above, likewise is premature.

14         The Administration Defendants also argue the 4AC has "technical omissions,"

15   specifically, the absence of a legal conclusion that any of them had an "evil motive or

16   intent" or, alternatively, that any of them acted with "reckless or callous indifference to the

17   federally protected rights of others."  See Smith v. Wade, 461 U.S. 30, 56 (1983) (setting

18   forth alternative bases for award of punitive damages in § 1983 actions).  Assuming,

19   arguendo, a prayer for punitive damages requires the addition of such a conclusory

20   allegation, the 4AC alleges the functional equivalent thereof, specifically, that defendants

21   "knew their conduct violated N.Y's clearly established rights at all relevant times" (see

22   4AC ¶ 128) and "undertook their conduct knowingly, intentionally, and maliciously, for the

23   purpose of harassment, oppression, and retaliation against N.Y., in reckless, wanton, and

24   callous disregard for his safety, security, and constitutional rights" (see 4AC ¶ 185).

25

26         _____
              [13]In their motion, the Administration Defendants also assert that, under state law, a
27   plaintiff may not seek punitive damages against a public entity, such as the District.  As
     N.Y. clarifies in his opposition, however, he does not seek such damages against the
28   District.  (See Pl.'s Opp. to Admin. Defs.' Mot. at 24:27-28.)

1       Accordingly, the prayer for punitive damages is subject to dismissal only to the

2 extent it is asserted against Schmitt.

3 **D. Leave to Amend**

4       The deficiencies addressed herein were raised by defendants for the first time in

5 the instant motions to dismiss.[14]  Under such circumstances, and because the

6 deficiencies are potentially curable, the Court will afford N.Y. further leave to amend, for

7 the sole purpose of curing, if he can do so, any one or more of those deficiencies.

8 **CONCLUSION**

9       For the reasons stated above, defendants' motions to dismiss are hereby

10 GRANTED in part and DENIED in part, as follows:

11       1.  The Second Cause of Action is DISMISSED to the extent it is asserted against

12 Schmitt and Reimann.

13       2.  The Third Cause of Action is DISMISSED to the extent it is asserted against

14 Schmitt.

15       3.  The Fourth Cause of Action is DISMISSED to the extent it is asserted against

16 Schmitt and Reimann.

17       4.  The Fifth Cause of Action is DISMISSED to the extent it is asserted against

18 Schmitt, Reimann, Steele, Keith, Ramos, and Phelan.

19       5.  The Sixth Cause of Action is DISMISSED to the extent it is asserted against

20 Schmitt, Reimann, Steele, Keith, Ramos, and Phelan.

21       6.  The Seventh Cause of Action is DISMISSED to the extent it is asserted against

22 Willford, Schmitt, and Reimann.

23       7.  The Eighth Cause of Action is DISMISSED to the extent it is asserted against

24 Willford, Schmitt, and Reimann.

25       8.  The Ninth Cause of Action is DISMISSED to the extent it is asserted against

26

27       [14]As the state law claims were asserted for the first time in the 4AC, challenges thereto could not have been brought previously.  The deficiencies in the federal claims,

28 however, appear to have existed in prior versions of the complaint.

18

United States District Court
Northern District of California

1    Schmitt, Reimann, Steele, Krolikowski, Keith, Ramos, and Phelan.

2         9.  The Tenth Cause of Action is DISMISSED.

3         10.  The Eleventh Cause of Action is DISMISSED.

4         11.  The prayer for punitive damages is DISMISSED to the extent it is asserted

5    against Schmitt.

6         12.  In all other respects, the motions are DENIED.

7         If N.Y. wishes to file a Fifth Amended Complaint, solely for purposes of amending

8    the deficiencies identified above, he shall do so no later than November 22, 2019.

9         **IT IS SO ORDERED.**

10

11   Dated: November 6, 2019

MAXINE M. CHESNEY
United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19